REDACTED

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In Re:  AUTOMOTIVE PARTS ANTITRUST LITIGATION | 12-md-02311 Honorable Marianne O. Battani Hon. Mona Majzoub |

| | |
|---|---|
| In re:  HID BALLASTS | ) ) ) |
| | ) 2:13-cv-01702-MOB-MKM |
| | ) |
| THIS RELATES TO: | ) CONSOLIDATED AMENDED ) CLASS ACTION COMPLAINT |
| | ) |
| ALL DEALERSHIP ACTIONS | ) |
| | ) <u>JURY TRIAL DEMANDED</u> |
| | ) |

Plaintiffs Martens Cars of Washington, Inc. ("Plaintiff Martens"), Landers Auto Group No. 1, Inc., d/b/a Landers Toyota ("Plaintiff Landers"), Hammett Motor Company, Inc. ("Plaintiff Hammett"), Superstore Automotive, Inc. ("Plaintiff Superstore"), Lee Pontiac-Oldsmobile-GMC Truck, Inc. ("Plaintiff Lee"), V.I.P. Motor Cars Ltd. ("Plaintiff V.I.P."), Desert European Motorcars, Ltd.  ("Plaintiff Desert"), Dale Martens Nissan Subaru, Inc. ("Plaintiff Dale Martens"), Green Team of Clay Center Inc. ("Plaintiff Green Team"), McGrath Automotive Group, Inc. ("Plaintiff McGrath"), Table Rock Automotive, Inc., d/b/a Todd Archer Hyundai ("Plaintiff Table Rock"), Archer-Perdue, Inc., d/b/a/ Archer-Perdue Suzuki ("Plaintiff Archer-Perdue"), Bonneville and Son, Inc. ("Plaintiff Bonneville"), Holzhauer Auto and Truck Sales, Inc. ("Plaintiff Holzhauer"), Pitre, Inc., d/b/a/ Pitre Buick GMC ("Plaintiff Pitre"), Patsy Lou Chevrolet, Inc. ("Plaintiff Patsy Lou"),  John Greene Chrysler Dodge Jeep, LLC ("Plaintiff John Greene"), SLT Group II, Inc., d/b/a Planet Nissan Subaru of Flagstaff ("Plaintiff Planet Nissan"), Herb Hallman Chevrolet, Inc., d/b/a/ Champion Chevrolet ("Plaintiff Champion"), Charles Daher's Commonwealth Motors, Inc., d/b/a Commonwealth Chevrolet, Commonwealth Kia, Commonwealth Honda ("Plaintiff Commonwealth Motors"), Commonwealth Volkswagen, Inc.,

REDACTED

d/b/a Commonwealth Volkswagen ("Plaintiff Commonwealth Volkswagen"), Commonwealth Nissan, Inc., d/b/a Commonwealth Nissan ("Plaintiff Commonwealth Nissan"), Ramey Motors, Inc. ("Plaintiff Ramey"), Thornhill Superstore, Inc.,  d/b/a Thornhill GM Superstore ("Plaintiff Thornhill"), Dave Heather Corporation, d/b/a Lakeland Toyota Honda Mazda Subaru ("Plaintiff Lakeland"), Central Salt Lake Valley GMC Enterprises, LLC, d/b/a Salt Lake Valley Buick GMC ("Plaintiff Salt Lake Valley"), Capitol Chevrolet Cadillac, Inc. ("Plaintiff Capitol Chevrolet"), Capitol Dealerships, Inc., d/b/a Capitol Toyota ("Plaintiff Capitol Toyota"), Beck Motors, Inc. ("Plaintiff Beck"), Stranger Investments d/b/a Stephen Wade Toyota ("Plaintiff Wade"), John O'Neil Johnson Toyota, LLC ("Plaintiff Johnson"), Hartley Buick GMC Truck, Inc. ("Plaintiff Hartley"), Lee Oldsmobile-Cadillac, Inc. d/b/a Lee Honda ("Plaintiff Lee Honda"), Lee Auto Malls-Topsham, Inc. d/b/a Lee Toyota of Topsham ("Plaintiff Topsham"), Landers of Hazelwood, LLC d/b/a Landers Toyota of Hazelwood ("Plaintiff Hazelwood"), , Cannon Chevrolet – Oldsmobile – Cadillac – Nissan, Inc.  ("Plaintiff Cannon"), Cannon Nissan of Jackson, LLC ("Plaintiff Cannon Nissan"), Hudson Charleston Acquisition, LLC d/b/a Hudson Nissan ("Plaintiff Hudson Nissan"), Shearer Automotive Enterprises III, Inc. ("Plaintiff Shearer"), Apex Motor Corporation ("Plaintiff Apex"), HC Acquisition, LLC d/b/a Toyota of Bristol ("Plaintiff Bristol Toyota"), Hodges Imported Cars, Inc. d/b/a Hodges Subaru ("Plaintiff Hodges"), Scotland Car Yard Enterprises d/b/a San Rafael Mitsubishi ("Plaintiff San Rafael"), Empire Nissan of Santa Rosa, LLC ("Plaintiff Empire Nissan"), Panama City Automotive Group, Inc. d/b/a John Lee Nissan ("Plaintiff John Lee") (collectively "Plaintiffs"), file this Consolidated Class Complaint on behalf of themselves and all others similarly situated (the "Classes" as defined below).

REDACTED

Plaintiffs bring this class action for damages, injunctive relief, and other relief pursuant to federal antitrust laws and state unjust enrichment, antitrust, unfair competition, and consumer protection laws, demand a trial by jury, and allege as follows:

## NATURE OF ACTION

1.      This lawsuit is brought as a proposed class action against Defendants DENSO Corporation, DENSO International America, Inc. (together, the "Denso Defendants" or "DENSO"); Ichikoh Industries, Ltd. ("Ichikoh"); Panasonic Corporation and Panasonic Corporation of North America (together, the "Panasonic Defendants" or "Panasonic"); Stanley Electric Co., Ltd., Stanley Electric U.S. Co., Inc., II Stanley Co., Inc. (together, the "Stanley Electric Defendants" or "Stanley"); Koito Manufacturing Co., Ltd., North American Lighting, Inc. (together, the "Koito Defendants" or "Koito"); Mitsubishi Electric Corporation, Mitsubishi Automotive America, Inc., Mitsubishi Electric US Holdings, Inc. (together, the "Mitsubishi Defendants" or "Mitsubishi") (collectively, "Defendants"), and unnamed co-conspirators, manufacturers and/or suppliers of automotive high intensity discharge ballasts (referred to herein as "HID Ballasts" and defined below) for engaging in a long-running conspiracy to unlawfully fix, artificially raise, maintain and/or stabilize prices, rig bids for, and allocate the market and customers in the United States for HID Ballasts.

2.      Plaintiffs seek to represent all automobile dealers, during the period from and including July 1, 1998 through the present (the "Class Period"), purchased vehicles which included one or more HID Ballast(s) as a component part, or purchased one or more HID Ballast(s) as a replacement part, which were manufactured or sold by Defendants, any current or former subsidiary of Defendants or any co-conspirator of Defendants.

REDACTED

3.      An "HID Ballast" is an electrical device that limits the amount of electrical current flowing to an HID headlamp, which would otherwise rise to destructive levels due to the HID headlamp's negative resistance.

4.      Defendants manufacture, market, and sell HID Ballasts throughout and into the United States.  Defendants and other co-conspirators (as yet unknown) agreed, combined, and conspired to fix, raise, maintain, and/or stabilize prices, rig bids and allocate market shares for HID Ballasts.

5.      The U.S. Department of Justice's ("DOJ") Antitrust Division is currently conducting a broad criminal investigation into illegal price fixing and bid rigging in the automotive parts industry.  As part of its criminal investigation, the DOJ is seeking information about unlawful anticompetitive conduct in the market for a number of different but related automotive parts, and the Federal Bureau of Investigation ("FBI") has participated in raids, pursuant to search warrants, carried out in the offices of a number of major competitors in the automotive parts industry.  The automotive parts investigation is the largest criminal investigation the Antitrust Division has ever pursued, both in terms of its scope and the potential volume of commerce affected by the alleged illegal conduct.  The ongoing cartel investigation of price-fixing and bid-rigging in the automotive parts industry has yielded approximately $2.3 billion in criminal fines, already surpassing the total amount in criminal fines obtained by the DOJ's Antitrust Division for all of last fiscal year.

6.      On July 18, 2013, the DOJ announced that Panasonic Corporation agreed to plead guilty and pay a $45.8 million criminal fine for its role in a conspiracy to fix prices of automotive parts, including HID Ballasts, installed in automobiles sold in the United States and elsewhere.

REDACTED

7.      On September 26, 2013, the DOJ announced that Defendant Mitsubishi Electric Corporation had agreed to plead guilty and to pay a $190 million criminal fine for their role in a conspiracy to rig bids for, and to fix, stabilize, and maintain prices of certain automotive parts installed in automobiles manufactured and sold in the United States and elsewhere.

8.      Defendant Mitsubishi Electric Corporation's guilty plea defines automotive parts to include, among other parts, HID Ballasts.  Pursuant to its guilty plea, Defendant Mitsubishi Electric Corporation and its subsidiaries have pledged to cooperate in the DOJ's automotive parts investigation, including with respect to HID Ballasts.  Mitsubishi Electric Corporation's guilty plea further provides that in exchange for it and its subsidiaries' cooperation in the DOJ's automotive parts investigation, including with respect to HID Ballasts, the DOJ will refrain from criminally prosecuting the Mitsubishi Electric Corporation and its subsidiaries for price-fixing certain automotive parts, including HID Ballasts.

9.      On November 27, 2013, the DOJ announced that Stanley Electric Co., Ltd. agreed to plead guilty and pay a $1.44 million criminal fine for its role in a conspiracy to fix prices of HID Ballasts installed in automobiles sold in the United States and elsewhere.

10.     On January 16, 2014, the DOJ announced that Koito Manufacturing Co., Ltd. agreed to plead guilty and pay a $56.6 million criminal fine for its role in a conspiracy to fix prices of automotive parts, including HID Ballasts, installed in automobiles sold in the United States and elsewhere.

11.     Competition authorities in Japan and elsewhere have also been investigating a conspiracy in the market for various automotive parts since at least July 2011 and the Japanese Fair Trade Commission ("JFTC") has raided the offices of Stanley Electric Co., Ltd. and Koito.

REDACTED

The European Commission Competition Authority ("EC") has also conducted dawn raids at the European offices of several automotive parts manufacturers.

12.     Defendants and their co-conspirators participated in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, HID Ballasts sold to automobile manufacturers and others in the United States.  The combination and conspiracy engaged in by Defendants and their co-conspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1, state antitrust, unfair competition and consumer protection laws and the state common law of unjust enrichment.

13.     As a direct result of the anti-competitive and unlawful conduct alleged herein, Plaintiffs and the Classes (as defined below) paid artificially inflated prices for HID Ballasts during the Class Period and have thereby suffered antitrust injury to their business or property.

## JURISDICTION AND VENUE

14.     Plaintiffs bring this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure equitable and injunctive relief against Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1).   Plaintiffs also assert claims for actual and exemplary damages pursuant to state antitrust, unfair competition, and consumer protection laws, and the state common law of unjust enrichment, and seek to obtain restitution, recover damages and secure other relief against Defendants for violations of those state laws.  Plaintiffs and the Classes also seek attorneys' fees, costs, and other expenses under federal and state law.

15.     This Court has jurisdiction over the subject matter of this action pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26), Section 1 of the Sherman Act (15 U.S.C. § 1), and 28 U.S.C. §§ 1331 and 1337.  This Court has subject matter jurisdiction of the state law claims pursuant to 28 U.S.C. §§ 1332(d) and 1367, in that: (i) this is a class action in which the

REDACTED

matter or controversy exceeds the sum of $5,000,000, exclusive of interests and costs, and in which some members of the proposed Classes are citizens of a state different from Defendants; and (ii) Plaintiffs' state law claims form part of the same case or controversy as their federal claims under Article III of the United States Constitution.

16.     Venue is proper in this District pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22 and 28 U.S.C. §§ 1391 (b), (c), and (d)) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District, and Defendants reside, are licensed to do business in, are doing business in, had agents in, or are found or transact business in this District.

17.     This Court has *in personam* jurisdiction over Defendants because Defendants, either directly or through the ownership and/or control of their subsidiaries, *inter alia*: (a) transacted business in the United States, including in this District; (b) directly or indirectly sold or marketed substantial quantities of HID Ballasts throughout the United States, including in this District, designed for vehicles to be sold in the United States; (c) had substantial aggregate contacts with the United States as a whole, including in this District; (d) targeted customers in the United States including in this District; or (e) were engaged in an illegal price-fixing conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this District.  Defendants also conduct business throughout the United States, including in this District, and have purposefully availed themselves of the laws of the United States.

REDACTED

18.     Defendants engaged in conduct both inside and outside of the United States that caused direct, substantial and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States and import commerce into the United States.

19.     The activities of Defendants and their co-conspirators were within the flow of, were intended to, and did have a substantial effect on interstate commerce of the United States. Defendants' products are sold in the flow of interstate commerce.

20.     HID Ballasts manufactured abroad by Defendants and sold for use in automobiles in the United States are goods brought into the United States for sale and therefore constitute import commerce.  To the extent any HID Ballasts are purchased in the United States and such HID Ballasts do not constitute import commerce, Defendants' unlawful activities with respect thereto, as more fully alleged herein during the Class Period, had, and continue to have, a direct, substantial and reasonably foreseeable effect on United States commerce.  The anticompetitive conduct, and its effect on United States commerce described herein, proximately caused antitrust injury to Plaintiffs and members of the Classes in the United States.

21.     By reason of the unlawful activities hereinafter alleged, Defendants substantially affected commerce throughout the United States, causing injury to Plaintiffs and members of the Classes.  Defendants, directly and through their agents, engaged in activities affecting all states, to fix, raise, maintain, and/or stabilize prices, rig bids and allocate the market and customers in the United States for HID Ballasts, which conspiracy unreasonably restrained trade and adversely affected the market for HID Ballasts.

22.     Defendants' conspiracy and wrongdoing described herein adversely affected automobile dealers in the United States.

REDACTED

# PARTIES

## Plaintiffs

23.      Plaintiff Hammett is a Mississippi corporation with its principal place of business in Durant, Mississippi.  Plaintiff Hammett is an authorized Ford dealer who bought Ford-brand vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators, during the Class Period.

24.      During the Class Period, Plaintiff Hammett purchased vehicles containing HID Ballasts manufactured by Defendants or their co-conspirators.  Plaintiff Hammett also purchased HID Ballasts, manufactured by Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Hammett purchased and received both the afore-mentioned vehicles and HID Ballasts in Mississippi.  Plaintiff Hammett has also displayed, sold, serviced, and advertised its vehicles in Mississippi during the Class Period.

25.      Plaintiff Landers is an Arkansas corporation with its principal place of business in Little Rock, Arkansas.  Plaintiff Landers is an authorized Toyota dealer who bought Toyota-brand vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators, during the Class Period.

26.      During the Class Period, Plaintiff Landers purchased vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators.  Plaintiff Landers also purchased HID Ballasts, manufactured by the Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Landers purchased and received both the afore-mentioned vehicles and HID Ballasts in Arkansas.  Plaintiff Landers has also displayed, sold, serviced, and advertised its vehicles in Arkansas during the Class Period.

REDACTED

27.     Plaintiff Superstore is a Minnesota company, with its principal place of business in White Bear Lake, Minnesota.  Plaintiff Superstore is an authorized Buick/GMC dealer, doing business under the name White Bear Lake Superstore.  Plaintiff Superstore bought Buick- and GMC-brand vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators during the Class Period.

28.     During the Class Period, Plaintiff Superstore purchased vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators.  Plaintiff Superstore also purchased HID Ballasts, manufactured by the Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Superstore purchased and received both the afore-mentioned vehicles and HID Ballasts in Minnesota.  Plaintiff Superstore has also displayed, sold, serviced, and advertised its vehicles in Minnesota during the Class Period.

29.     Plaintiff Lee is a Florida corporation, with its principal place of business in Fort Walton Beach, Florida.  Plaintiff Lee is presently an authorized GMC dealer.  During the Class Period, Plaintiff Lee was also an authorized Pontiac, Oldsmobile and Jeep dealer.  Plaintiff Lee buys GMC-brand vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators. During the Class Period, Plaintiff Lee bought Pontiac-, Oldsmobile-, and Jeep-brand vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators.

30.     During the Class Period, Plaintiff Lee purchased vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators.  Plaintiff Lee also purchased HID Ballasts, manufactured by the Defendants or their co-conspirators, for its repair and service

REDACTED

business, during the Class Period. Plaintiff Lee purchased and received both the afore-mentioned vehicles and HID Ballasts in Florida. Plaintiff Lee has also displayed, sold, serviced, and advertised its vehicles in Florida during the Class Period.

31.     Plaintiff V.I.P. is a California company with its principal place of business in Palm Springs, California. Plaintiff VIP is an authorized Mercedes, BMW, Infiniti, and Hyundai dealer who bought Mercedes-, BMW-, Infiniti-, and Hyundai-brand vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators during the Class Period.

32.     During the Class Period, Plaintiff V.I.P. purchased vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators. Plaintiff V.I.P. also purchased HID Ballasts, for its repair and service business, during the Class Period. Plaintiff V.I.P. purchased and received both the afore-mentioned vehicles and HID Ballasts in California. Plaintiff V.I.P. has also displayed, sold, serviced, and advertised its vehicles in California during the Class Period.

33.     Plaintiff Desert is a California company, with its principal place of business in Rancho Mirage, California. Plaintiff Desert is an authorized Rolls Royce, Bentley, Aston Martin, Maserati, Porsche, Jaguar, Land Rover, Audi, Lotus, and Spyker dealer who bought Rolls Royce-, Bentley-, Aston Martin-, Maserati-, Porsche-, Jaguar-, Land Rover-, Audi-, Lotus-, and Spyker-brand vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators during the Class Period.

34.     During the Class Period, Plaintiff Desert purchased vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators. Plaintiff Desert also

11

REDACTED

purchased HID Ballasts, manufactured by the Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Desert purchased and received both the afore-mentioned vehicles and HID Ballasts in California. Plaintiff Desert has also displayed, sold, serviced, and advertised its vehicles in California during the Class Period.

35. Plaintiff Dale Martens was a Kansas corporation, with its principal place of business in Lawrence, Kansas during the Class Period. Plaintiff Dale Martens was an authorized Nissan and Subaru dealer during the Class Period, who, during the Class Period, bought Nissan- and Subaru-brand vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators.

36. During the Class Period, Plaintiff Dale Martens purchased vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators. Plaintiff Dale Martens also purchased HID Ballasts, manufactured by the Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Dale Martens purchased and received both the afore-mentioned vehicles and HID Ballasts in Kansas. Plaintiff Dale Martens has also displayed, sold, serviced, and advertised its vehicles in Kansas during the Class Period.

37. Plaintiff Green Team is a Kansas corporation, with its principal place of business in Clay Center, Kansas. Plaintiff Green Team is an authorized Chrysler, Jeep, Dodge, and Ram dealer, who bought Chrysler-, Jeep-, Dodge-, and Ram-brand vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators, during the Class Period.

38. During the Class Period, Plaintiff Green Team purchased vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators. Plaintiff Green Team also purchased HID Ballasts, manufactured by the Defendants or their co-conspirators, for its repair

REDACTED

and service business, during the Class Period.  Plaintiff Green Team purchased and received both

the afore-mentioned vehicles and HID Ballasts in Kansas.  Plaintiff Green Team has also

displayed, sold, serviced, and advertised its vehicles in Kansas during the Class Period.

39.     Plaintiff McGrath is a Delaware corporation, with its principal place of business

in Cedar Rapids, Iowa.  Plaintiff McGrath is an authorized Buick, GMC, Chevrolet, Chrysler,

Dodge, Jeep, Ram, Kia, and Cadillac dealer, who bought Buick-, GMC-, Chevrolet-, Chrysler-,

Dodge-, Jeep-, Ram-, Kia-, and Cadillac-brand cars containing HID Ballasts manufactured by the

Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or

their co-conspirators during the Class Period.

40.     During the Class Period, Plaintiff McGrath purchased vehicles containing HID

Ballasts manufactured by the Defendants or their co-conspirators.  Plaintiff McGrath also

purchased HID Ballasts, manufactured by the Defendants or their co-conspirators, for its repair

and service business, during the Class Period.  Plaintiff McGrath purchased and received both

the afore-mentioned vehicles and HID Ballasts in Iowa.  Plaintiff McGrath has also displayed,

sold, serviced, and advertised its vehicles in Iowa during the Class Period.

41.     Plaintiff Table Rock is a Nebraska corporation, with its principal place of

business in Bellevue, Nebraska.  Plaintiff Table Rock is an authorized Hyundai dealer, who

bought Hyundai-brand cars containing HID Ballasts manufactured by the Defendants or their co-

conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators,

during the Class Period.

42.     During the Class Period, Plaintiff Table Rock purchased vehicles containing HID

Ballasts manufactured the Defendants or their co-conspirators.  Plaintiff Table Rock also

purchased HID Ballasts, manufactured by the Defendants or their co-conspirators, for its repair

REDACTED

and service business, during the Class Period.  Plaintiff Table Rock purchased and received both the afore-mentioned vehicles and HID Ballasts in Nebraska.  Plaintiff Table Rock has also displayed, sold, serviced, and advertised its vehicles in Nebraska during the Class Period.

43.     Plaintiff Archer-Perdue is a Nebraska corporation, with its principal place of business in Omaha, Nebraska.  Plaintiff Archer-Perdue is an authorized Suzuki dealer, who, during the Class Period, has bought Suzuki-brand cars containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators.

44.     During the Class Period, Plaintiff Archer-Perdue purchased vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators.  Plaintiff Archer-Perdue also purchased HID Ballasts, manufactured by the Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Archer-Perdue purchased and received both the afore-mentioned vehicles and HID Ballasts in Nebraska.  Plaintiff Archer-Perdue has also displayed, sold, serviced, and advertised its vehicles in Nebraska during the Class Period.

45.     Plaintiff Bonneville is a New Hampshire corporation, with its principal place of business in Manchester, New Hampshire.  Plaintiff Bonneville is an authorized Dodge, Chrysler, Jeep, and Ram dealer, who bought Chrysler-, Dodge-, Jeep-, and Ram-brand vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators during the Class Period.

46.     During the Class Period, Plaintiff Bonneville purchased vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators.  Plaintiff Bonneville also purchased HID Ballasts, manufactured by the Defendants or their co-conspirators, for its repair

14

REDACTED

and service business, during the Class Period.  Plaintiff Bonneville purchased and received both

the afore-mentioned vehicles and HID Ballasts in New Hampshire.  Plaintiff Bonneville has also

displayed, sold, serviced, and advertised its vehicles in New Hampshire during the Class Period.

47.     Plaintiff Holzhauer is a Delaware corporation, with its principal place of business

in Nashville, Illinois.  Plaintiff Holzhauer is an authorized Dodge, Chrysler, and Jeep dealer, who

bought Dodge-, Chrysler-, and Jeep-brand vehicles containing HID Ballasts manufactured by the

Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or

their co-conspirators during the Class Period.

48.     During the Class Period, Plaintiff Holzhauer purchased vehicles containing HID

Ballasts manufactured by the Defendants or their co-conspirators.  Plaintiff Holzhauer also

purchased HID Ballasts, manufactured by the Defendants or their co-conspirators, for its repair

and service business, during the Class Period.  Plaintiff Holzhauer purchased and received both

the afore-mentioned vehicles and HID Ballasts in Illinois.  Plaintiff Holzhauer has also

displayed, sold, serviced, and advertised its vehicles in Illinois during the Class Period.

49.     Plaintiff Pitre is a New Mexico corporation, with its principal place of business in

Albuquerque, New Mexico.  Plaintiff Pitre is an authorized Buick and GMC dealer, who bought

Buick- and GMC-brand vehicles containing HID Ballasts manufactured by the Defendants or

their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-

conspirators, during the Class Period.

50.     During the Class Period, Plaintiff Pitre purchased vehicles containing HID

Ballasts manufactured by the Defendants or their co-conspirators.  Plaintiff Pitre also purchased

HID Ballasts, manufactured by the Defendants or their co-conspirators, for its repair and service

business, during the Class Period.  Plaintiff Pitre purchased and received both the afore-

REDACTED

mentioned vehicles and HID Ballasts in New Mexico.  Plaintiff Pitre has also displayed, sold, serviced, and advertised its vehicles in New Mexico during the Class Period.

51.     Plaintiff Patsy Lou is a Michigan corporation, with its principal place of business in Flint, Michigan.  Plaintiff Patsy Lou is an authorized Chevrolet dealer, who bought Chevrolet-brand vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators, during the Class Period.

52.     During the Class Period, Plaintiff Patsy Lou purchased vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators.  Plaintiff Patsy Lou also purchased HID Ballasts, manufactured by the Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Patsy Lou purchased and received both the afore-mentioned vehicles and HID Ballasts in Michigan.  Plaintiff Patsy Lou has also displayed, sold, serviced, and advertised its vehicles in Michigan during the Class Period.

53.     Plaintiff John Greene is a North Carolina corporation, with its principal place of business in Morganton, North Carolina.  Plaintiff John Greene is an authorized Chrysler, Dodge, Jeep, and Ram dealer, who bought Chrysler-, Dodge-, Jeep-, and Ram-brand vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators during the Class Period.

54.     During the Class Period, Plaintiff John Greene purchased vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators.  Plaintiff John Greene also purchased HID Ballasts, manufactured by the Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff John Greene purchased and received both

REDACTED

the afore-mentioned vehicles and HID Ballasts in North Carolina.  Plaintiff John Greene has also

displayed, sold, serviced, and advertised its vehicles in North Carolina during the Class Period.

55.     Plaintiff Planet Nissan is an Arizona corporation, with its principal place of

business in Flagstaff, Arizona.  Plaintiff Planet Nissan is an authorized Nissan and Subaru dealer,

who bought Nissan- and Subaru-brand vehicles containing HID Ballasts manufactured by the

Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or

their co-conspirators during the Class Period.

56.     During the Class Period, Plaintiff Planet Nissan purchased vehicles containing

HID Ballasts manufactured by the Defendants or their co-conspirators.  Plaintiff Planet Nissan

also purchased HID Ballasts, manufactured by the Defendants or their co-conspirators, for its

repair and service business, during the Class Period.  Plaintiff Planet Nissan purchased and

received both the afore-mentioned vehicles and HID Ballasts in Arizona.  Plaintiff Planet Nissan

has also displayed, sold, serviced, and advertised its vehicles in Arizona during the Class Period.

57.     Plaintiff Champion is a Nevada corporation, with its principal place of business in

Reno, Nevada.  Plaintiff Champion is an authorized Chevrolet dealer, who bought Chevrolet-

brand vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators,

as well as HID Ballasts manufactured by the Defendants or their co-conspirators during the Class

Period.

58.     During the Class Period, Plaintiff Champion purchased vehicles containing HID

Ballasts manufactured by the Defendants or their co-conspirators.  Plaintiff Champion also

purchased HID Ballasts, manufactured by the Defendants or their co-conspirators, for its repair

and service business, during the Class Period.  Plaintiff Champion purchased and received both

REDACTED

the afore-mentioned vehicles and HID Ballasts in Nevada.  Plaintiff Champion has also

displayed, sold, serviced, and advertised its vehicles in Nevada during the Class Period.

59.     Plaintiff Commonwealth Motors is a Delaware corporation, with its principal

place of business in Lawrence, Massachusetts.  Plaintiff Commonwealth Motors is an authorized

Chevrolet, Honda, and Kia dealer, who bought Chevrolet-, Honda-, and Kia-brand vehicles

containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID

Ballasts manufactured by the Defendants or their co-conspirators during the Class Period.

60.     During the Class Period, Plaintiff Commonwealth Motors purchased vehicles

containing HID Ballasts manufactured by the Defendants or their co-conspirators.  Plaintiff

Commonwealth Motors also purchased HID Ballasts, manufactured by the Defendants or their

co-conspirators, for its repair and service business, during the Class Period.  Plaintiff

Commonwealth Motors purchased and received both the afore-mentioned vehicles and HID

Ballasts in Massachusetts.  Plaintiff Commonwealth Motors has also displayed, sold, serviced,

and advertised its vehicles in Massachusetts during the Class Period.

61.     Plaintiff Commonwealth Volkswagen is a Massachusetts corporation with its

principal place of business in Lawrence, Massachusetts.  Plaintiff Commonwealth Volkswagen is

an authorized Volkswagen dealer, who bought Volkswagen-brand vehicles containing HID

Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts

manufactured by the Defendants or their co-conspirators during the Class Period.

62.     During the Class Period, Plaintiff Commonwealth Volkswagen purchased

vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators.

Plaintiff Commonwealth Volkswagen also purchased HID Ballasts, manufactured by the

Defendants or their co-conspirators, for its repair and service business, during the Class Period.

REDACTED

Plaintiff Commonwealth Volkswagen purchased and received both the afore-mentioned vehicles and HID Ballasts in Massachusetts. Plaintiff Commonwealth Volkswagen has also displayed, sold, serviced and advertised its vehicles in Massachusetts during the Class Period.

63. Plaintiff Commonwealth Nissan is a Massachusetts corporation with its principal place of business in the Lawrence, Massachusetts. Plaintiff Commonwealth Nissan is an authorized Nissan dealer, who bought Nissan-brand vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators during the Class Period.

64. During the Class Period, Plaintiff Commonwealth Nissan purchased vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators. Plaintiff Commonwealth Nissan also purchased HID Ballasts, manufactured by the Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Commonwealth Nissan purchased and received both the afore-mentioned vehicles and HID Ballasts in Massachusetts. Plaintiff Commonwealth Nissan has also displayed, sold, serviced, and advertised its vehicles in Massachusetts during the Class Period.

65. Plaintiff Ramey is a West Virginia company with its principal place of business in Princeton, West Virginia. Plaintiff Ramey is an authorized Toyota, Chrysler, Dodge, Jeep, and Ram dealer, who bought Toyota-, Chrysler-, Dodge-, Jeep-, and Ram-brand vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators during the Class Period.

66. During the Class Period, Plaintiff Ramey purchased vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators. Plaintiff Ramey also purchased HID Ballasts, manufactured by the Defendants or their co-conspirators, for its repair

REDACTED

and service business, during the Class Period.  Plaintiff Ramey purchased and received both the afore-mentioned vehicles and HID Ballasts in West Virginia.  Plaintiff Ramey has also displayed, sold, serviced, and advertised its vehicles in West Virginia during the Class Period.

67.     Plaintiff Thornhill is a West Virginia corporation, with its principal place of business in Chapmanville, West Virginia.  Plaintiff Thornhill is an authorized Chevrolet, Buick, and GMC dealer, who bought Chevrolet-, Buick-, and GMC-brand vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators during the Class Period.

68.     During the Class Period, Plaintiff Thornhill purchased vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators.  Plaintiff Thornhill also purchased HID Ballasts, manufactured by the Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Thornhill purchased and received both the afore-mentioned vehicles and HID Ballasts in West Virginia.  Plaintiff Thornhill has also displayed, sold, serviced, and advertised its vehicles in West Virginia during the Class Period.

69.     Plaintiff Lakeland is a Wisconsin corporation with its principal place of business in Sheboygan, Wisconsin.  Plaintiff Lakeland is an authorized Toyota, Honda, Mazda, and Subaru dealer who bought Toyota- Honda-, Mazda-, and Subaru-brand vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators during the Class Period.

70.     During the Class Period, Plaintiff Lakeland purchased vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators.  Plaintiff Lakeland also purchased HID Ballasts, manufactured by the Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Lakeland purchased and received both

REDACTED

the afore-mentioned vehicles and HID Ballasts in Wisconsin.  Plaintiff Lakeland has also displayed, sold, serviced, and advertised its vehicles in Wisconsin during the Class Period.

71.     Plaintiff Salt Lake Valley is a Utah company, with its principal place of business in Salt Lake City, Utah.  Plaintiff Salt Lake Valley is an authorized Buick and GMC dealer, who bought Buick- and GMC-brand vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators during the Class Period.

72.     During the Class Period, Plaintiff Salt Lake Valley purchased vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators.  Plaintiff Salt Lake Valley also purchased HID Ballasts, manufactured by the Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Salt Lake Valley purchased and received both the afore-mentioned vehicles and HID Ballasts in Utah.  Plaintiff Salt Lake Valley has also displayed, sold, serviced, and advertised its vehicles in Utah during the Class Period.

73.     Plaintiff Capitol Chevrolet is an Oregon corporation, with its principal place of business in Salem, Oregon.  Plaintiff Capitol Chevrolet is an authorized Chevrolet, Cadillac, and Subaru dealer, who bought Chevrolet-, Cadillac-, and Subaru-brand vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators during the Class Period.

74.     During the Class Period, Plaintiff Capitol Chevrolet purchased vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators.  Plaintiff Capitol Chevrolet also purchased HID Ballasts, manufactured by the Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Capitol

21

REDACTED

Chevrolet purchased and received both the afore-mentioned vehicles and HID Ballasts in Oregon. Plaintiff Capitol Chevrolet has also displayed, sold, serviced, and advertised its vehicles in Oregon during the Class Period.

75.     Plaintiff Capitol Toyota is an Oregon corporation with its principal place of business in Salem, Oregon. Plaintiff Capitol Toyota is an authorized Toyota dealer, who bought Toyota-brand vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators during the Class Period.

76.     During the Class Period, Plaintiff Capitol Toyota purchased vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators. Plaintiff Capitol Toyota also purchased HID Ballasts, manufactured by the Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Capitol Toyota purchased and received both the afore-mentioned vehicles and HID Ballasts in Oregon. Plaintiff Capitol Toyota has also displayed, sold, serviced, and advertised its vehicles in Oregon during the Class Period.

77.     Plaintiff Beck is a South Dakota corporation, with its principal place of business in Pierre, South Dakota. Plaintiff Beck is an authorized Chevrolet and Cadillac dealer, who bought Chevrolet- and Cadillac-brand vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators during the Class Period.

78.     During the Class Period, Plaintiff Beck purchased vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators. Plaintiff Beck also purchased HID Ballasts, manufactured by the Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Beck purchased and received both the afore-

REDACTED

mentioned vehicles and HID Ballasts in South Dakota.  Plaintiff Beck has also displayed, sold, serviced, and advertised its vehicles in South Dakota during the Class Period.

79.    Plaintiff Martens is a Maryland corporation that had its principal place of business in the District of Columbia during the Class Period.  During the Class Period Plaintiff Martens was an authorized Volvo and Volkswagen dealer who sold Volvo- and Volkswagen-brand vehicles containing HID Ballasts manufactured by one or more of the Defendants or their co-conspirators, as well as HID Ballasts manufactured by one or more of the Defendants or their co-conspirators.

80.    During the Class Period Plaintiff Martens purchased vehicles containing HID Ballasts manufactured by one or more of the Defendants or their co-conspirators.  Plaintiff Martens also purchased HID Ballasts, manufactured by one or more of the Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Martens purchased and received both the afore-mentioned vehicles and HID Ballasts in the District of Columbia.  Plaintiff Martens has also displayed, sold, serviced, and advertised its vehicles in the District of Columbia during the Class Period.

81.    Plaintiff Wade is a Utah corporation, with its principal place of business in St. George, Utah.  Plaintiff Wade is an authorized Toyota dealer, who bought Toyota-brand cars containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators during the Class Period.

82.    During the Class Period, Plaintiff Wade purchased vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators.  Plaintiff Wade also purchased HID Ballasts, manufactured by the Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Wade purchased and received both the afore-

REDACTED

mentioned vehicles and HID Ballasts in Utah.  Plaintiff Wade has also displayed, sold, serviced, and advertised its vehicles in Utah during the Class Period.

83.     Plaintiff Johnson is a Mississippi limited liability company, with its principal place of business in Meridian, Mississippi.  Plaintiff Johnson is an authorized Toyota dealer, who bought Toyota-brand cars containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators during the Class Period.

84.     During the Class Period, Plaintiff Johnson purchased vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators.  Plaintiff Johnson also purchased HID Ballasts manufactured by the Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Johnson purchased and received both the afore-mentioned vehicles and HID Ballasts in Mississippi.  Plaintiff Johnson has also displayed, sold, serviced, and advertised its vehicles in Mississippi during the Class Period.

85.     Plaintiff Hartley is a New York corporation, with its principal place of business in Jamestown, New York.  During the Class Period, Plaintiff Hartley has been an authorized Honda, Buick, Pontiac, and GM dealer, who bought Honda-, Buick-, Pontiac-, and GM-brand cars containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators.

86.     During the Class Period, Plaintiff Hartley purchased vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators.  Plaintiff Hartley also purchased HID Ballasts manufactured by the Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Hartley purchased and received both the

REDACTED

afore-mentioned vehicles and HID Ballasts in New York.  Plaintiff Hartley has also displayed, sold, serviced, and advertised its vehicles in New York during the Class Period.

87.     Plaintiff Lee Honda is a Maine corporation, with its principal place of business in Auburn, Maine.  Plaintiff Lee Honda is an authorized Honda dealer, who bought Honda-brand cars containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators during the Class Period.

88.     During the Class Period, Plaintiff Lee Honda purchased vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators.  Plaintiff Lee Honda also purchased HID Ballasts manufactured by the Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Lee Honda purchased and received both the afore-mentioned vehicles and HID Ballasts in Maine.  Plaintiff Lee Honda has also displayed, sold, serviced, and advertised its vehicles in Maine during the Class Period.

89.     Plaintiff Topsham is a Maine corporation, with its principal place of business in Topsham, Maine.  Plaintiff Topsham is an authorized Toyota dealer, who bought Toyota-brand cars containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators during the Class Period.

90.     During the Class Period, Plaintiff Topsham purchased vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators.  Plaintiff Topsham also purchased HID Ballasts manufactured by the Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Topsham purchased and received both the afore-mentioned vehicles and HID Ballasts in Maine.  Plaintiff Topsham has also displayed, sold, serviced, and advertised its vehicles in Maine during the Class Period.

REDACTED

91.     Plaintiff Hazelwood is an Arkansas corporation, with its principal place of business in Hazelwood, Missouri.  Plaintiff Hazelwood is an authorized Toyota dealer, who bought Toyota-brand cars containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators during the Class Period.

92.     During the Class Period, Plaintiff Hazelwood purchased vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators.   Plaintiff Hazelwood also purchased HID Ballasts manufactured by the Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Hazelwood purchased and received both the afore-mentioned vehicles and HID Ballasts in Missouri.  Plaintiff Hazelwood has also displayed, sold, serviced, and advertised its vehicles in Missouri during the Class Period.

93.     Plaintiff Cannon is a Mississippi corporation, with its principal place of business in Greenwood, Mississippi.  Plaintiff Cannon is an authorized Chevrolet and Cadillac dealer, who bought Chevrolet- and Cadillac-brand cars containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators during the Class Period.

94.     During the Class Period, Plaintiff Cannon purchased vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators.  Plaintiff Cannon also purchased HID Ballasts manufactured by the Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Cannon purchased and received both the afore-mentioned vehicles and HID Ballasts in Mississippi.  Plaintiff Cannon has also displayed, sold, serviced, and advertised its vehicles in Mississippi during the Class Period.

REDACTED

95.     Plaintiff Cannon Nissan is a Mississippi limited liability company with its principal place of business in Jackson, Mississippi.  Plaintiff Cannon is an authorized Nissan dealer, who bought Nissan-brand cars containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators during the Class Period.

96.     During the Class Period, Plaintiff Cannon Nissan purchased vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators.  Plaintiff Cannon Nissan also purchased HID Ballasts, manufactured by the Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Cannon purchased and received both the afore-mentioned vehicles and HID Ballasts in Mississippi.  Plaintiff Cannon has also displayed, sold, serviced, and advertised its vehicles in Mississippi during the Class Period.

97.     Plaintiff Hudson Nissan is a South Carolina limited liability company with its principal place of business in North Charleston, South Carolina.  Plaintiff Hudson Nissan is an authorized Nissan dealer, who bought Nissan-brand cars containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators during the Class Period.

98.     During the Class Period, Plaintiff Hudson Nissan purchased vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators.  Plaintiff Hudson Nissan also purchased HID Ballasts, manufactured by the Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Hudson Nissan purchased and received both the afore-mentioned vehicles and HID Ballasts in South Carolina.  Plaintiff Hudson Nissan has also displayed, sold, serviced, and advertised its vehicles in South Carolina during the Class Period.

REDACTED

99.     Plaintiff Shearer is a Vermont corporation with its principal place of business in Rutland, Vermont.  Plaintiff Shearer is an authorized Honda dealer, who bought Honda-brand vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators during the Class Period.

100.     During the Class Period, Plaintiff Shearer purchased vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators.  Plaintiff Shearer also purchased HID Ballasts manufactured by the Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Shearer purchased and received both the afore-mentioned vehicles and HID Ballasts in Vermont.  Plaintiff Shearer has also displayed, sold, serviced and advertised its vehicles in Vermont during the Class Period.

101.     Plaintiff Apex is a Vermont corporation with its principal place of business in South Burlington, Vermont.  Plaintiff Apex is an authorized Acura dealer, who bought Acura-brand vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators during the Class Period.

102.     During the Class Period, Plaintiff Apex purchased vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators.  Plaintiff Apex also purchased HID Ballasts, manufactured by the Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Apex purchased and received both the afore-mentioned vehicles and HID Ballasts in Vermont.  Plaintiff Apex has also displayed, sold, serviced and advertised its vehicles in Vermont during the Class Period.

REDACTED

103.   Plaintiff Bristol Toyota is a Tennessee limited liability company with its principal place of business in Bristol, Tennessee.  Plaintiff Bristol Toyota is an authorized Toyota dealer that purchased Toyota-brand cars containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators during the Class Period.

104.   During the Class Period Plaintiff Bristol Toyota purchased vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators.  Plaintiff Bristol Toyota also purchased HID Ballasts, manufactured by the Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Bristol Toyota purchased and received both the afore-mentioned vehicles and HID Ballasts in Tennessee.  Plaintiff Bristol Toyota has also displayed, sold, serviced, and advertised its vehicles in Tennessee during the Class Period.

105.   Plaintiff Hodges is a Michigan corporation with its principal place of business in Ferndale, Michigan. Plaintiff Hodges is an authorized Subaru dealer that purchased Subaru-brand cars containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators during the Class Period.

106.   During the Class Period Plaintiff Hodges purchased vehicles containing HID Ballasts manufactured by the Defendants or their co-conspirators.  Plaintiff Hodges also purchased HID Ballasts, manufactured by the Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Hodges purchased and received both the afore-mentioned vehicles and HID Ballasts in Michigan.  Plaintiff Hodges has also displayed, sold, serviced, and advertised its vehicles in Michigan during the Class Period.

REDACTED

107.     Plaintiff San Rafael is a California corporation with its principal place of business in San Rafael, California.  Plaintiff San Rafael is an authorized Mitsubishi dealer that purchased Mitsubishi-brand cars containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators during the Class Period.

108.     During the Class Period Plaintiff San Rafael purchased vehicles containing HID Ballasts manufactured by one or more Defendants or their co-conspirators.  Plaintiff San Rafael also purchased HID Ballasts, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff San Rafael purchased and received both the afore-mentioned vehicles and HID Ballasts in California.  Plaintiff San Rafael has also displayed, sold, serviced, and advertised its vehicles in California during the Class Period.

109.     Plaintiff Empire Nissan is a California limited liability company with its principal place of business in Santa Rosa, California.  Plaintiff Empire Nissan is an authorized Nissan dealer that purchased Nissan -brand cars containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators during the Class Period.

110.     During the Class Period Plaintiff Empire Nissan purchased vehicles containing HID Ballasts manufactured by one or more Defendants or their co-conspirators.  Plaintiff Empire Nissan also purchased HID Ballasts, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Empire Nissan purchased and received both the afore-mentioned vehicles and HID Ballasts in California.

REDACTED

Plaintiff Empire Nissan has also displayed, sold, serviced, and advertised its vehicles in California during the Class Period.

111.    Plaintiff John Lee is a Florida corporation with its principal place of business in Panama City, Florida. Plaintiff John Lee is an authorized Nissan dealer that purchased Nissan-brand cars containing HID Ballasts manufactured by the Defendants or their co-conspirators, as well as HID Ballasts manufactured by the Defendants or their co-conspirators during the Class Period.

112.    During the Class Period Plaintiff John Lee purchased vehicles containing HID Ballasts manufactured by one or more Defendants or their co-conspirators. Plaintiff John Lee also purchased HID Ballasts, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff John Lee purchased and received both the afore-mentioned vehicles and HID Ballasts in Florida. Plaintiff John Lee has also displayed, sold, serviced, and advertised its vehicles in Florida during the Class Period.

**Defendants**

113.    Defendant DENSO Corporation is a Japanese company with its principal place of business in Kariya, Japan. Defendant DENSO Corporation – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed, and/or sold HID Ballasts that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such HID Ballasts to Plaintiffs and Class members.

114.    Defendant DENSO International America, Inc. is a Delaware corporation with its principal place of business in Southfield, Michigan.  It is a subsidiary of and wholly owned and/or controlled by its parent, DENSO Corporation.  DENSO International America, Inc. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured,

31

REDACTED

marketed, and/or sold HID Ballasts that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such HID Ballasts to Plaintiffs and/or Class members. According to DENSO's website, DENSO International America, Inc. is "DENSO's North American regional headquarters and parent company for its North American operations, original equipment (OE) sales, product engineering and technical support to OE sales and finance." At all times during the Class Period, the activities of DENSO International America, Inc. were under the control and direction of DENSO Corporation which controlled its policies, sales, and finances.

115.    A number of Denso America's executives work or have worked for Denso Corporation. Kazumasa Kimura, the COO of Denso America, served as one of Denso Corporation's executive directors. Kimura is also the former director of the Global Sales and Business Development Division of Denso Corporation. Similarly, Hikaru "Howard" Sugi, the CEO of Denso America, is a board member of Denso Corporation.

116.    Defendant Ichikoh is a Japanese corporation with its principal place of business in Kanagawa-ken, Japan. Ichikoh – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed, and/or sold HID Ballasts that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such HID Ballasts to Plaintiffs and/or Class members. Ichikoh's main customers include Toyota, Subaru, Nissan, and Honda. During the Class Period, Ichikoh manufactured, marketed, and/or sold HID Ballasts in the United States through its wholly owned subsidiaries, Ichikoh Manufacturing and Ichikoh Mistuba, both of which were located in Shelbyville, Kentucky. At all times during the Class Period, the activities of these subsidiaries were under the control and direction of Ichikoh Industries, Ltd. which controlled their policies, sales, and

REDACTED

finances. Ichikoh has a comprehensive business alliance with Valeo Sylvania, a business located in Seymour, Indiana, which sells HID Ballasts throughout the United States.

117.    Defendant Panasonic Corporation is a Japanese company with its principal place of business in Osaka, Japan.  Panasonic Corporation – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold HID Ballasts that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such HID Ballasts to Plaintiffs and/or Class members.

118.    Defendant Panasonic Corporation of North America is a Delaware corporation with its principal place of business in Secaucus, New Jersey.  It is a subsidiary of and wholly owned and/or controlled by its Japanese parent, Panasonic Corporation.  Panasonic Corporation of North America manufactured marketed and/or sold HID Ballasts that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such HID Ballasts to Plaintiffs and/or Class members.  Specifically, Panasonic Automotive Systems Company of America, a registered assumed name of Panasonic Corporation of North America, is a division of Panasonic Corporation of North America and supplies automotive parts, including HID Ballasts, to the North America automotive industry.  Panasonic Automotive Systems Company of America is headquartered in Peachtree City, Georgia and has its main sales office in Farmington Hills, Michigan. At all times during the Class Period its activities were under the control and direction of Panasonic Corporation which controlled its policies, sales, and finances.

119.    Defendant Stanley Electric Co., Ltd. is a Japanese corporation with its principal place of business in Tokyo, Japan.  Stanley Electric Co., Ltd. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold HID

REDACTED

Ballasts that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such HID Ballasts to Plaintiffs and Class members. In 2011, Stanley had net sales of $2.98 billion, including net sales in North America of $396 million.

120.    Defendant Stanley Electric U.S. Co., Inc. is an Ohio corporation with its principal place of business in Ohio. It is a subsidiary of and wholly-owned and/or controlled by its parent, Stanley Electric Co., Ltd. Stanley Electric U.S. Co., Inc. manufactured, marketed, and/or sold HID Ballasts that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such HID Ballasts to Plaintiffs and/or Class members. At all times during the Class Period the activities of Stanley Electric U.S. Co. were under the control and direction of Stanley Electric Co., Ltd. which controlled its policies, sales, and finances.

121.    Defendant II Stanley Co., Inc. is a Michigan corporation with its principal place of business in Michigan. It is a subsidiary of and wholly-owned and/or controlled by its parent, Stanley Electric Co., Ltd. II Stanley Co., Inc. manufactured, marketed, and/or sold HID Ballasts that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such HID Ballasts to Plaintiffs and/or Class members. At all times during the Class period the activities of II Stanley Co., Inc. were under the control and direction of Stanley Electric Co., Ltd. which controlled its policies, sales, and finances.

122.    Defendant Koito Manufacturing Co., Ltd. is a Japanese corporation with its principal place of business in Tokyo, Japan. Koito Manufacturing Co., Ltd – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold HID Ballasts that were purchased throughout the United States, including in this

34

REDACTED

District, during the Class Period, including by firms that sold such HID Ballasts to Plaintiffs and/or Class members.  In 2011 Koito Manufacturing Co., Ltd. had net sales of $5.16 billion, including net sales in North America of $550 million.

123.    Defendant North American Lighting, Inc. is a Michigan corporation with its principal place of business in Illinois.  It is a subsidiary of and wholly-owned and/or controlled by its parent, Koito Manufacturing, Co., Ltd.  North American Lighting, Inc. manufactured, marketed, and/or sold HID Ballasts that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such HID Ballasts to Plaintiffs and/or Class members.  At all times during the Class period the activities of North American Lighting, Inc. were under the control and direction of Koito Manufacturing Co., Ltd. which controlled its policies, sales, and finances.

124.    Defendant Mitsubishi Electric Corporation is a Japanese corporation with its principal place of business in Tokyo, Japan.  Mitsubishi Electric Corporation – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold HID Ballasts that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such HID Ballasts to Plaintiffs and/or Class members.

125.    Defendant Mitsubishi Electric US Holdings, Inc. is a Delaware corporation with its principal place of business in Cypress, California.  It is a subsidiary of and wholly owned and/or controlled by its parent, Mitsubishi Electric Corporation.  Mitsubishi Electric US Holdings, Inc. – directly and or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold HID Ballasts that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such HID

35

REDACTED

Ballasts to Plaintiffs and/or Class members. At all times during the Class period the activities of Mitsubishi Electric US Holdings, Inc. were under the control and direction of Mitsubishi Electric Corporation which controlled its policies, sales, and finances.

126.   Defendant Mitsubishi Electric Automotive America, Inc. is a Delaware corporation with its principal place of business in Mason, Ohio. It is a subsidiary of and wholly owned and/or controlled by its parent, Mitsubishi Electric US Holdings, Inc. Mitsubishi Electric Automotive America, Inc. manufactured, marketed and/or sold HID Ballasts that were purchased throughout the United States, including in this District, during the Class Period, including by firms that sold such HID Ballasts to Plaintiffs and/or Class members. At all times during the Class period the activities of Mitsubishi Electric Automotive America, Inc. were under the control and direction of Mitsubishi Electric Corporation which controlled its policies, sales, and finances

## AGENTS AND CO-CONSPIRATORS

127.   Each Defendant acted as the principal of or agent for each other Defendant with respect to the acts, violations, and common course of conduct alleged herein.

128.   Various persons, partnerships, sole proprietors, firms, corporations, and individuals not named as defendants in this lawsuit and individuals, the identities of which are presently unknown, have participated as co-conspirators with Defendants in the offenses alleged in this Complaint and have performed acts and made statements in furtherance of the conspiracy or in furtherance of the anti-competitive conduct.

129.   Whenever in this Complaint reference is made to any act, deed, or transaction of any corporation or limited liability entity, the allegation means that the corporation or limited liability entity engaged in the act, deed, or transaction by or through its officers, directors, agents,

36

REDACTED

employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the corporation's or limited liability entity's business or affairs.

## FACTUAL ALLEGATIONS

### A.     <u>The HID Ballasts Industry</u>

130.    An HID Ballast is an electrical device that limits the amount of electrical current flowing to an HID headlamp, which would otherwise rise to destructive levels due to the HID headlamp's negative resistance.  An HID Ballast manufactured by the Panasonic Defendants is shown below.



REDACTED



131.    HID Ballasts are installed by original equipment manufacturers ("OEMs") in new cars as part of the automotive manufacturing process.  They are also installed by OEMs in cars to replace worn out, defective or damaged HID Ballasts.

132.    For new cars, the OEMs—mostly large automotive manufacturers such as Toyota, Mazda and Nissan —purchase HID Ballasts directly from the.  HID Ballasts may also be purchased by component manufacturers who then supply such systems to OEMs.

133.    When purchasing HID Ballasts, OEMs issue Requests for Quotation ("RFQs") to automotive parts suppliers on a model-by-model basis for model specific parts.  Automotive parts suppliers submit quotations, or bids, to OEMs in response to RFQs, and the OEMs usually award the business to the selected automotive parts supplier for the lifespan of the model, which is usually four to six years.  Typically, the bidding process for a particular model begins approximately three years prior to the start of production of a new model.  OEMs procure parts for U.S.-manufactured vehicles both in Japan and the United States.

134.    Suppliers, including Defendants, supply OEMs with both HID Ballasts to be installed in vehicles and HID Ballasts to be used for replacement purposes.

REDACTED

135.    Replacement HID Ballasts sold by OEMs to dealerships are the same as the HID Ballasts installed in vehicles and are made by the same manufacturer who made the HID Ballasts originally installed – that is the purpose of an OEM part, made by the OEM supplier.  Such replacement parts are not the same as aftermarket parts, which are made by different manufacturers than those who manufactured the original parts.  The prices of replacement HID Ballasts were inflated by Defendants' collusion.

136.    The Defendants and their co-conspirators supplied HID Ballasts to OEMs for installation in vehicles manufactured and sold in the United States and elsewhere.  The Defendants and their co-conspirators sold HID Ballasts (a) in the United States and elsewhere for installation in vehicles manufactured and sold in the United States, (b) in Japan and elsewhere for export to the United States and installation in vehicles manufactured and sold in the United States, and (c) in Japan and elsewhere for installation in vehicles manufactured in Japan, some of which were then exported to and sold in the United States.

137.    Plaintiffs and members of the proposed Classes purchased HID Ballasts indirectly from the Defendants or their co-conspirators.  By way of example, an automobile dealer indirectly purchases one or more HID Ballasts from the Defendants or their co-conspirators as part of purchasing a new vehicle.  An automobile dealer also indirectly purchases for replacement one or more HID Ballasts from the Defendants or their co-conspirators when repairing a damaged vehicle or where one or more of the vehicle's HID Ballasts are defective.

**B.    Defendants Increased Prices for HID Ballasts in the Face of Declining Demand During the Class Period**

138.    The Producer Price Index ("PPI") measures the average change over time in the prices received by domestic producers for their output.  The chart below (see Figure 1) provides a 1998-2012 illustration of vehicular lighting equipment pricing.  Because HID Ballasts are part

REDACTED

of a vehicle's lighting equipment, the PPI for vehicular lighting equipment is a good indicator of the change over time in the prices received by domestic producers of HID Ballasts.

139.    The PPI for vehicular lighting equipment indicates that the prices for HID Ballasts generally held steady or increased during the Class Period.



Figure 1.

REDACTED

140.    Meanwhile, according to data from Bloomberg, demand for automobiles in the United States generally decreased during the same period.  From 2007 to 2009, at the height of the recession, the auto industry experienced a very significant 35% drop in demand.  See Figure 2.  The PPI for vehicle electrical and electronic equipment for the very same time period indicates that prices for HID Ballasts increased.  According to the law of supply and demand, prices during this period should have fallen, but instead they increased (see Figure 1).



Figure 2.

141.    In a competitive market, falling demand would lead to decreased prices because competitors would need to lower prices in order to attract customers and increase demand.  In a market where competitors have engaged in a conspiracy to fix prices, however, competitors do

41

REDACTED

not lower prices even when faced with decreasing demand.  Such price decreases are

unnecessary because the conspirators know that they will not lose sales to lower priced

competitors.

    142.    The price of vehicle electrical and electronic equipment – and by extension HID

Ballasts – increased during the Class Period, even during periods when demand decreased.  In a

competitive market, falling or steady demand should not have resulted in rising (see the 2004-

2007 period in Figure 1 as well) prices for HID Ballasts.  Such anticompetitive price increases

have resulted in Plaintiffs and members of the Classes paying supracompetitive prices.

        C.      **The Structure and Characteristics of the HID Ballasts Market Render the
Conspiracy More Plausible**

    143.    The structure and other characteristics of the HID Ballasts market in the United

States are conducive to a price-fixing agreement and have made collusion particularly attractive

in this market.  Specifically, the HID Ballasts market has (1) high barriers to entry and (2)

inelasticity of demand.

        1.      **The HID Ballasts Market Has High Barriers to Entry**

    144.    A collusive arrangement that raises product prices above competitive levels

would, under basic economic principles, attract new entrants seeking to benefit from the supra-

competitive pricing.  Where, however, there are significant barriers to entry, new entrants are

less likely.  Thus, barriers to entry help to facilitate the formation and maintenance of a cartel.

    145.    There are substantial barriers that preclude, reduce, or make more difficult entry

into the HID Ballasts market.  A new entrant into the business would face costly and lengthy

start-up costs, including multi-million dollar costs associated with manufacturing plants and

equipment, energy, transportation, distribution infrastructure, and long-standing customer

relationships.

REDACTED

146.    The Defendants own multiple patents related to the manufacture of HID Ballasts. These patents place a significant and costly burden on potential new entrants, who must avoid infringing on the patents when entering the market with a new product.

147.    In addition, an OEM cannot freely change its supplier of HID Ballasts because the OEMs design the features of their vehicles so that the HID Ballasts they purchase for a vehicle are then integrated with the other components of the particular vehicle model.  Thus, the design must be synergized between HID Ballast manufacturers and OEMS.  It would be difficult for a new competitor to enter the market after a vehicle has been specifically designed to be integrated with a particular HID Ballasts.

### 2.    There is Inelasticity of Demand for HID Ballasts

148.    "Elasticity" is a term used to describe the sensitivity of supply and demand to changes in one or the other.  For example, demand is said to be "inelastic" if an increase in the price of a product results in only a small decline in the quantity sold of that product, if any.  In other words, customers have nowhere to turn for alternative, cheaper products of similar quality and so continue to purchase despite a price increase.

149.    For a cartel to profit from raising prices above competitive levels, demand must be relatively inelastic at competitive prices.  Otherwise, increased prices would result in declining sales, revenues, and profits as customers purchased substitute products or declined to buy altogether.  Inelastic demand is a market characteristic that facilitates collusion, allowing producers to raise their prices without triggering customer substitution and lost sales revenue.

150.    Demand for HID Ballasts is highly inelastic because there are no close substitutes for these products.  Additionally, customers must purchase HID Ballasts as an essential part of a vehicle, regardless of whether prices are kept at supra-competitive levels.  Customers wanting to purchase a car simply have no choice but to purchase HID Ballasts

REDACTED

### D.   Government Investigations

151.    A globally coordinated antitrust investigation is taking place in the United States, Europe, and Japan aimed at suppliers of automotive parts.  A JFTC official told a leading legal publication that automotive parts supplier investigations by the JFTC, DOJ, and EC would continue to widen because the automotive industry as a whole comprises many sub-industries. He characterized the investigations being conducted by the U.S., European, and Japanese antitrust authorities as "large and broad," and he declined to deny that this "would be history's largest case."

152.    The DOJ Antitrust Division's broad criminal investigation into illegal price-fixing and bid-rigging in the automotive parts industry is the largest criminal investigation the Antitrust Division has ever pursued.  The ongoing cartel investigation of price-fixing and bid-rigging in the automobile parts industry has yielded approximately $2.3 billion in criminal fines, already surpassing the total amount in criminal fines obtained by the DOJ's Antitrust Division for all of last fiscal year.

153.    In 2011, the JFTC began investigating various automotive parts manufacturers, probing allegations that these manufacturers were allocating contracts to each other to avoid competing for supply contracts with Honda, Nissan Motor Co., Ltd., Suzuki Motor Co., and Fuji Heavy Industries, Ltd., the owner of Subaru.  The probe found that some of the automotive parts manufacturers had collusively agreed to split into varying groups for the differing purchasers and the differing parts.

154.    The JFTC raided offices of Defendants as part of the spreading investigation of suspected price-fixing of automotive parts.  The companies raided included DENSO.  According to its 2011 Annual Report, DENSO was investigated on July 20, 2011 at various locations, including in Kariya, Aichi, and some other sales branches in Japan.

44

REDACTED

155.    On November 22, 2012, the JFTC handed down fines totaling $41.3 million against various automotive parts manufacturers.  On November 22, 2012, the JFTC also announced cease-and-desist orders against the violating companies, requiring them to (i) immediately pass resolutions that they would terminate any illegal conduct; (ii) contact any automobile maker who may have purchased their parts through collusive bidding processes; and (iii) implement employee compliance programs.  According to the JFTC, DENSO violated antitrust laws, but did not receive a cease-and-desist order.

156.    The companies rigged the bidding process for supply contracts with automobile makers for automotive parts by pre-selecting the winners and losers.  The JFTC explained that these companies "substantially restrained competition in the fields of each product ordered by each automobile company, by designating successful bidders."

159.    On March 21, 2013, the JFTC announced that it had levied fines totaling $49.1 million, including a $13.1 million fine against Defendant Ichikoh for violating antitrust laws by forming a cartel to fix prices for automotive lamps.  Certain automotive lamps, including those sold by Defendant Ichikoh, contain HID Ballasts as a component part.

160.    On March 21, 2013, the JFTC also announced the imposition of cease-and-desist orders against Defendant Ichikoh, requiring it to (i) immediately pass resolutions that they would

REDACTED

terminate any illegal conduct in the automotive lamps industry, (ii) contact any automobile maker who may have purchased their Automotive Lamps through collusive bidding processes, (iii) refrain from engaging in such illegal conduct in the future; and (iv) implement employee antitrust compliance programs.

161.    On July 18, 2013, the DOJ announced that Defendant Panasonic Corporation agreed to pay a $45.8 million criminal fine and to plead guilty to a three-count criminal information charging it with participating in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of automotive parts, including HID Ballasts sold to Honda Motor Company, Ltd. and American Honda Motor Company, Inc. (collectively "Honda"), Mazda Motor Corporation and Mazda Motor of America, Inc. (collectively "Mazda"), and Nissan Motor Company Ltd. Nissan North America, Inc. (collectively "Nissan") for installation in vehicles manufactured and sold in the United States and elsewhere from at least as early as July 1998 and continuing until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1.

162.    According to the Information filed July 18, 2013, Defendant Panasonic Corporation and its co-conspirators carried out the HID Ballasts conspiracy by:

(a)    participating in meetings, conversations, and communications in Japan to discuss the bids and price quotations to be submitted to Honda, Mazda, and Nissan in the United States and elsewhere;

(b)    agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to Honda, Mazda, and Nissan in Japan;

REDACTED

(c)     agreeing, during those meetings, conversations, and communications, to allocate the supply of HID Ballasts sold to automobile manufacturers in the United States and elsewhere on a model-by-model basis;

(d)     agreeing, during those meetings, conversations, and communications, to coordinate price adjustments requested by Honda, Mazda, and Nissan in Japan;

(e)     submitting bids, price quotations, and price adjustments to Honda, Mazda and Nissan in Japan in accordance with the agreements reached;

(f)     selling HID Ballasts to Honda, Mazda, and Nissan in the United States and elsewhere at collusive and noncompetitive prices;

(g)     accepting payment for HID Ballasts sold to Honda, Mazda, and Nissan in the United States and elsewhere at collusive and noncompetitive prices;

(h)     engaging in meetings, conversations, and communications in the United States and elsewhere for the purpose of monitoring and enforcing adherence to the agreed-upon bid-rigging and price-fixing scheme; and

(i)     employing measures to keep their conduct secret, including, but not limited to, using code names and meeting at remote locations.

163.     According to the Plea Agreement filed August 5, 2013, between July 1998 and February 2010, Defendant Panasonic Corporation's relevant sales of HID Ballasts for Honda, Mazda, and Nissan totaled approximately $51.4 million.

164.     The Plea Agreement also states that Defendant Panasonic Corporation sold/and or supplied HID Ballasts to or for American Honda Motor Company, Inc., Mazda Motor of America, Inc. and Nissan North America, Inc. by Panasonic Corporation's United States subsidiary, which is located in the Eastern District of Michigan.

REDACTED

165.    On September 26, 2013, the DOJ announced that Mitsubishi Electric Corporation agreed to plead guilty and to pay a $190 million criminal fine for its role in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of certain automotive parts sold to automobile manufacturers, including Ford Motor Company, General Motors LLC, Chrysler Group, LLC, Fuji Heavy Industries, Ltd., Nissan Motor Company Ltd., Honda Motor Company Ltd., and certain of their subsidiaries, in the United States and elsewhere from at least as early as January 2000 to and continuing to at least February 2010 in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

166.    According to the Information filed by the DOJ, Defendant Mitsubishi Electric Corporation and its co-conspirators carried out the automotive parts conspiracy by:

(a)    participating in meetings, conversations, and communications in the United States and elsewhere to discuss the bids and price quotations to be submitted to automobile manufacturers in the United States and elsewhere;

(b)    agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to automobile manufacturers in the United States and elsewhere;

(c)    agreeing, during those meetings, conversations, and communications, to allocate the supply of certain automotive parts sold to automobile manufacturers in the United States and elsewhere;

(d)    agreeing, during those meetings, conversations, and communications, to coordinate price adjustments requested by automobile manufacturers in the United States and elsewhere;

REDACTED

      (e)     submitting bids, price quotations, and price adjustments to automobile manufacturers in the United States and elsewhere in accordance with the agreements reached;

      (f)     selling automotive parts to automobile manufacturers in the United States and elsewhere at collusive and noncompetitive prices;

      (g)     accepting payment for certain automobile parts sold to automobile manufacturers in the United States and elsewhere at collusive and noncompetitive prices;

      (h)     engaging in meetings, conversations, and communications in the United States and elsewhere for the purpose of monitoring and enforcing adherence to the agreed-upon bid-rigging and price-fixing scheme; and

      (i)     employing measures to keep their conduct secret, including, but not limited to, using code names and meeting at remote locations.

167.    Mitsubishi Electric Corporation's guilty plea defines automotive parts to include, among other parts, HID Ballasts. Pursuant to its guilty plea, Defendant Mitsubishi Electric Corporation and its subsidiaries have pledged to cooperate in the DOJ's automotive parts investigation, including with respect to HID Ballasts. Mitsubishi Electric Corporation's guilty plea further provides that in exchange for it and its subsidiaries' cooperation in the DOJ's automotive parts investigation, including with respect to HID Ballasts, the DOJ will refrain from criminally prosecuting Mitsubishi Electric Corporation and its subsidiaries for price-fixing certain automotive parts, including HID Ballasts.

168.    On November 27, 2013, the DOJ announced that Defendant Stanley Electric Co., Ltd. agreed to pay a $1.44 million criminal fine and plead guilty to a one-count criminal information charging it with participating in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix,

REDACTED

stabilize, and maintain the prices of HID Ballasts sold to automobile manufacturers in the United States and elsewhere, from at least as early as July 1998 and continuing until at least February 2010, in violation of the Sherman Act, 15 U.S.C. § 1.

169.    According to the Information filed by the DOJ, Defendant Stanley Electric Co., Ltd. and its co-conspirators carried out the HID Ballasts conspiracy by:

(a)    participating in meetings, conversations, and communications in Japan to discuss the bids and price quotations to be submitted to automobile manufacturers in the United States and elsewhere;

(b)    agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to automobile manufacturers;

(c)    agreeing, during those meetings, conversations, and communications, to allocate the supply of HID Ballasts sold to certain automobile manufacturers in the United States and elsewhere on a model-by-model basis;

(d)    agreeing, during those meetings, conversations, and communications, to coordinate price adjustments requested by certain automobile manufacturers in Japan;

(e)    submitting bids, price quotations, and price adjustments to certain automobile manufacturers in Japan in accordance with the agreements reached;

(f)    selling automotive parts to certain automobile manufacturers in the United States and elsewhere at collusive and noncompetitive prices;

(g)    accepting payment for HID Ballasts sold to certain automobile manufacturers in the United States and elsewhere at collusive and noncompetitive prices;

REDACTED

(h)     engaging in meetings, conversations, and communications in Japan for the purpose of monitoring and enforcing adherence to the agreed-upon bid-rigging and price-fixing scheme; and

(i)     employing measures to keep their conduct secret, including using code names and choosing meeting places and times to avoid detection.

170.    According to the Plea Agreement filed January 23, 2014, Defendant Stanley Electric Co., Ltd participated in an agreement to allocate the supply of, rig bids for, and to fix, stabilize, and maintain the prices, including coordinating price adjustments requested by purchasers, of HID Ballasts sold to Toyota Motor Corporation, Honda Motor Company, Ltd., Nissan Motor Co., Ltd., Fuji Heavy Industries, Ltd. (Subaru), Mazda Motor Corporation, and/or certain of their United States subsidiaries in the United States and elsewhere.

171.    On January 16, 2014, the DOJ announced that Defendant Koito Manufacturing Co., Ltd. agreed to pay a $56.6 million criminal fine and to plead guilty to a two-count criminal information charging it with participating in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, to allocate the supply of, and to fix, stabilize, and maintain the prices of automotive parts, including HID Ballasts, sold to automobile manufacturers in the United States and elsewhere, from at least as early as July 1998 and continuing until at least February 2010, in violation of the Sherman Act, 15 U.S.C. § 1.

172.    According to the Information filed by the DOJ, Defendant Koito Manufacturing Co., Ltd. and its co-conspirators carried out the HID Ballasts conspiracy by:

REDACTED

       (a)      participating in meetings, conversations, and communications in Japan to discuss the bids and price quotations to be submitted to automobile manufacturers in the United States and elsewhere;

       (b)      agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to automobile manufacturers;

       (c)      agreeing, during those meetings, conversations, and communications, to allocate the supply of HID Ballasts sold to certain automobile manufacturers in the United States and elsewhere on a model-by-model basis;

       (d)      agreeing, during those meetings, conversations, and communications, to coordinate price adjustments requested by certain automobile manufacturers in Japan;

       (e)      submitting bids, price quotations, and price adjustments to certain automobile manufacturers in Japan in accordance with the agreements reached;

       (f)      selling automotive parts to certain automobile manufacturers in the United States and elsewhere at collusive and noncompetitive prices;

       (g)      accepting payment for HID Ballasts sold to certain automobile manufacturers in the United States and elsewhere at collusive and noncompetitive prices;

       (h)      engaging in meetings, conversations, and communications in Japan for the purpose of monitoring and enforcing adherence to the agreed-upon bid-rigging and price-fixing scheme; and

       (i)      employing measures to keep their conduct secret, including using code names and choosing meeting places and times to avoid detection.

### E.    <u>Existence of a Cooperating Defendant</u>

173.    The Antitrust Criminal Penalty Enhancement and Reform Act ("ACPERA") provides leniency benefits for a participant in a price-fixing conspiracy that voluntarily discloses

REDACTED

its conduct to the Department of Justice.  In most recent cases in which guilty pleas for price-fixing conduct have been obtained, there has been a cooperating party that has been accepted into the DOJ's ACPERA program as an "amnesty applicant."  One of the leniency benefits for a conspirator that is accepted into the ACPERA program is that it is not charged with a criminal offense and is not required to plead guilty to criminal charges.

174.    In light of the guilty plea in this case, guilty pleas in related automotive parts antitrust cases, and the DOJ's ongoing investigation into the industry, it is reasonable for this Court to infer that there is an ACPERA "amnesty applicant" in this case.

### F.    Guilty Pleas in Related Markets in the Automotive Industry

175.    On September 29, 2011, the DOJ announced that Furukawa Electric Co. Ltd. ("Furukawa") had agreed to plead guilty and to pay a $200 million fine for its role in a criminal price-fixing and bid-rigging conspiracy involving the sale of automotive wire harnesses to automobile manufacturers.

176.    In the press release announcing the fine against Furukawa, Sharon A. Pozen, at the time the Acting Assistant Attorney General in charge of the Department of Justice's Antitrust Division, said that "[a]s a result of this international price-fixing and bid-rigging conspiracy, automobile manufacturers paid noncompetitive and higher prices for parts in cars sold to U.S. consumers."  Ms. Pozen also stated that "[t]his cartel harmed an important industry in our nation's economy, and the Antitrust Division with the Federal Bureau of Investigation will continue to work together to ensure that these kinds of conspiracies are stopped."

177.    Three of Furukawa's executives also pleaded guilty to the same conspiracy.  The court sentenced two of the executives to 15 and 18 month prison sentences, to be served in the United States.

REDACTED

178.    On January 30, 2012, the DOJ announced that Yazaki Corporation ("Yazaki") and DENSO Corporation ("DENSO") had agreed to plead guilty and to pay a total of $548 million in criminal fines for their involvement in multiple price-fixing and bid-rigging conspiracies in the sale of automotive parts to automotive manufacturers in the United States.  According to the three-count felony charge against Yazaki, it engaged in the following three conspiracies: (1) participating in a combination and conspiracy with its co-conspirators to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, automotive wire harnesses and related products sold to automobile manufacturers in the United States and elsewhere from at least as early as January 2000 and continuing until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1; (2) participating in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, instrument panel clusters sold to automobile manufacturers in the United States and elsewhere, from at least as early as December 2002 until at least February 2010, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1; and (3) participating in a combination and conspiracy with its co-conspirators to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of fuel senders sold to automobile manufacturers in the United States and elsewhere from at least as early as March 2004 and continuing until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1.

179.    According to the two-count felony charge against DENSO, it engaged in conspiracies to rig bids for and to fix, stabilize, and maintain the prices of electric control units and heater control panels.

REDACTED

180.    In the press release announcing the fines against Yazaki and DENSO, FBI Special Agent in Charge Andrew G. Arena said that "[t]his criminal activity has a significant impact on the automotive manufacturers in the United States, Canado, Japan and Europe and has been occurring for at least a decade.  The conduct had also affected commerce on a global scale in almost every market where automobiles are manufactured and/or sold[.]"

181.    In addition to Yazaki, executives from the company (all Japanese nationals) – Tsuneaki Hanamura, Ryoji Kawai, Shigeru Ogawa, Kazuhiko Kashimoto and Hisamitsu Takada – pleaded guilty to their participation in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of automotive wire harnesses sold to automobile manufacturers in the United States and elsewhere in violation of the Sherman Act, 15 U.S.C. § 1.  These Yazaki executives will each pay a $20,000 criminal fine and serve prison time ranging from 15 months to two years.  The two-year sentences would be the longest term of imprisonment imposed on a foreign national voluntarily submitting to U.S. jurisdiction for a Sherman Act antitrust violation.

182.    On March 26, 2012, the DOJ announced that Norihiro Imai, an executive of Defendant DENSO Corporation, agreed to serve one year and one day in a U.S. prison, pay a $20,000 criminal fine, and plead guilty to a one-count criminal Information charging him with engaging in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of heater control panels sold to customers in the United States.

183.    On April 26, 2012, the DOJ announced that Makoto Hattori, another executive of Defendant DENSO Corporation, agreed to serve fourteen month in a U.S. prison, pay a $20,000 criminal fine, and plead guilty to a one-count criminal Information charging him with engaging

REDACTED

in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of heater control panels sold to a customer in the United States and elsewhere.

184.    On May 21, 2013, the DOJ announced that Yuji Suzuki, yet another executive of Defendant DENSO Corporation, agreed to serve sixteen months in a U.S. prison, pay a $20,000 criminal fine, and plead guilty to a two-count criminal Information for his role in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of electronic control units and heater control panels sold in the United States and elsewhere.

185.    On July 10, 2013, the European Commission fined four wire harness suppliers, Yazaki, S-Y Systems, Furukawa Electric and Leoni, a total of $182 million for taking part in cartels that affected Toyota, Nissan, Honda and Renault.

186.    On July 16, 2013, the DOJ announced that Diamond Electric Mfg. Co. Ltd. ("Diamond Electric") had agreed to plead guilty and to pay a $19 million criminal fine for its role in a conspiracy to fix prices of ignition coils installed in automobiles sold in the United States and elsewhere.

187.    In the press release announcing the fine against Diamond Electric, Robert D. Foley, III, Agent in Charge, FBI Detroit Division said "[t]hose who engage in price fixing, bid rigging and other fraudulent schemes harm the automotive industry by driving up costs for vehicle makers and buyers."

188.    Defendant Panasonic Corporation on July 18, 2013 agreed to plead guilty, paying a total of $45.8 in criminal fines, for its involvement in two other conspiracies to fix prices of various automotive parts including HID Ballasts, switches, and steering angle sensors installed in automobiles sold in the United States and elsewhere.

REDACTED

189.    On September 11, 2013, two Fujikura, Ltd. executives were indicted for conspiring to fix the price of wire harness assemblies to Fuji Heavy Industries, the maker of Subaru automobiles.

190.    On September 24, 2013, the DOJ announced that a grand jury returned an indictment against Shinichi Kotani, an executive of Defendant Panasonic Corporation, for his role in an international conspiracy to fix prices of automotive parts including switches and steering angle sensors sold in the United States and elsewhere.

191.    On September 26, 2013, nine additional Japanese automotive suppliers and two more executives agrees to plead guilty to conspiracy charges and pay more than $740 million in fines for their roles in rigging the prices of 30 products.

192.    On October 9, 2013, Takata Corporation announced that it had agreed to pay $71.3 million to settle antitrust charges brought by United States federal prosecutors for its role in a conspiracy to price-fix seatbelts.

193.    On November 26, 2013, the DOJ announced that Toyo Tire & Rubber Co. Ltd had agreed to plead guilty and to pay a $120 million criminal fine for its role in two separate conspiracies to fix the prices of automotive components involving anti-vibration rubber and driveshaft parts installed in automobiles sold in the United States and elsewhere.

194.    On November 27, 2013, the DOJ announced that Defendant Stanley Electric Co. Ltd. had agreed to plead guilty and to pay a $1.44 million criminal fine for its participation in a conspiracy to fix prices of HID Ballasts and automobile lighting fixtures installed in cars sold in the United States and elsewhere.

195.    On January 16, 2014, the DOJ announced that Defendant Koito Manufacturing Co., Ltd. had agreed to plead guilty and to pay a $56.6 million criminal fine for its roles in price-

REDACTED

fixing conspiracies involving HID Ballasts and automobile lighting fixtures installed in cars sold in the United States and elsewhere.

196.    On February 3, 2014, the DOJ announced that Aisan Industry Co. Ltd. had agreed to plead guilty and to pay a $6.86 million criminal fine for its role in a price-fixing conspiracy involving electronic throttle bodies sold to automobile manufacturers in the United States and elsewhere.

197.    On February 13, 2014, the DOJ announced that Bridgestone Corp. had agreed to plead guilty and to pay a $425 million criminal fine for its role in a conspiracy to fix prices of automotive anti-vibration rubber parts installed in automobiles sold in the United States and elsewhere.

198.    On February 20, 2014, the DOJ announced that Kazuaki Fujutani, a former executive of Defendant DENSO Corporation, agreed to serve one year and one day in a U.S. prison and plead guilty to a one-count criminal Information charging him with obstruction of justice for deleting numerous e-mails and electronic documents upon learning the FBI was executing a search warrant on Defendant DENSO International America, Inc., in connection with the DOJ's investigation into a conspiracy to fix the prices of heater control panels installed in automobiles sole in the United States and elsewhere.

199.    On April 23, 2014, the DOJ announced that Showa Corp. had agreed to plead guilty and to pay a $19.9 million criminal fine for its role in a conspiracy to fix prices and rig bids for pinion-assist type electric powered steering assemblies installed in cars sold in the United States and elsewhere.

200.    The number of companies which have pleaded guilty to fixing the prices of various automotive parts (including automotive wire harnesses;  instrument panel clusters; fuel senders;

58

REDACTED

heater control panels; occupant safety restraint systems; automotive bearings; windshield wipers; starters; radiators; alternators; Steering Angle Sensors; anti-vibration rubber parts; air conditioning systems; automatic transmission fluid warmers; fan motors; and automotive lamps) is staggering.  Along with those already mentioned in this Complaint, these companies include: Fujikura Ltd.; GS Electech, Inc.; TRW Deutschland Holding GmbH; Autoliv, Inc.; Nippon Seiki Co., Ltd.; JTEKT Corporation; Mitsuba Corporation; Mitsubishi Electric Corporation; Mitsubishi Heavy Industries, Ltd.; NSK Ltd.; Panasonic Corporation; T. RAD Co., Ltd.; Tokai Rika Co.; Valeo Japan Co., Ltd.; and Yamashita Rubber Co., Ltd.  The majority of these violators pleaded guilty to engaging in bid-rigging, price-fixing, and market allocation during the same time period as the Defendants with multiple OEMs as their targets, including Toyota, Honda, Nissan, Suzuki, Mazda, Mitsubishi, Subaru, Chrysler, German manufacturers and unnamed automobile manufacturers.

201.    To date, twenty-seven companies and thirty-five executives have been charged in the Antitrust Division's ongoing investigation into price fixing and bid rigging in the auto parts industry.  Each of the twenty-seven companies has agreed to plead guilty, and altogether they have agreed to pay approximately $2.3 billion in criminal fines.  Twenty-four of the thirty-five executives have been sentenced to serve time in U.S. prisons or have entered into plea agreements.

202.    The U.S. government has said its automotive parts cartel criminal investigation will continue and other suppliers could be charged.

203.    "This criminal activity has a significant impact on the automotive manufacturers in the United States, Canada, Japan and Europe and has been occurring for at least a decade.  The

REDACTED

conduct had also affected commerce on a global scale in almost every market where automobiles are manufactured and/or sold," said FBI's Special Agent in Charge Andrew G. Arena.

204.    "When companies partner to control and price fix bids or contracts, it undermines the foundation of the United States' economic system," Arena also said. "The FBI is committed to aggressively pursuing any company involved in antitrust crimes."

205.    On February 15, 2013, Scott Hammond, the Deputy Assistant Attorney General in the Antitrust Division, discussed the DOJ's ongoing automotive parts investigation in a Thomson Reuters article.  He said "[t]he investigation is broader than what we've announced so far . . . . [The investigation] is still very much ongoing, but it already appears to be the biggest criminal antitrust investigation that we've ever encountered. *I say the biggest with respect to the impact on U.S. businesses and consumers, and the number of companies and executives that are subject to the investigation*."  (emphasis added).

206.    On September 26, 2013, United States Attorney General Eric Holder presented the DOJ's most recent findings in the ongoing automotive parts investigation.  He stated "[t]hese international price-fixing conspiracies affected more than $5 billion in automobile parts sold to U.S. car manufacturers.  In total, more than 25 million cars purchased by American consumers were affected by the illegal conduct."  The Attorney General also described how the conspiracies worked:  "[c]ompany executives met face to face in the United States and Japan – and talked on the phone – to reach collusive agreements to rig bids, fix prices and allocate the supply of auto parts sold to U.S. car companies.  In order to keep their illegal conduct secret, they used code names and met in remote locations.  Then they followed up with each other regularly to make sure the collusive agreements were being adhered to."  Attorney General Holder explained that

REDACTED

the automotive parts conspiracies "targeted U.S. manufacturing, U.S. businesses, and U.S. consumers."

207.    The diagram below, which was prepared ty the DOJ, illustrates the multiple guilty pleas and the corresponding automotive parts to which the various manufacturers have admitted price

fixing:



REDACTED

## DAMAGE TO PLAINTIFFS AND OTHER AUTOMOBILE DEALERS CAUSED BY DEFENDANTS' ILLEGAL ACTIVITIES

208.    Defendants' conspiracy resulted in Defendants charging inflated prices to firms who directly purchased HID Ballasts from them and in those purchasers raising their prices to subsequent purchasers.

209.    Having paid higher prices for components of the cars they sold to Plaintiffs and the Classes and the HID Ballasts they sold to Plaintiffs and the Classes, firms who sold such HID Ballasts and vehicles passed Defendants' overcharges on to Plaintiffs and the Classes.

210.    Plaintiffs and the Classes are entitled to the overcharges they paid for HID Ballasts.

211.    Plaintiffs have standing and have suffered damage compensable by indirect purchaser laws and they and members of the classes they seek to represent have sustained significant damage and injury as a result of Defendants' conspiracy.

## CLASS ACTION ALLEGATIONS

212.    Plaintiffs bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief on behalf of the following class (the "Nationwide Class"):

> All automobile dealers that, during the Class Period, (a) indirectly purchased HID Ballasts manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof or any co-conspirator, or (b) purchased vehicles containing HID Ballasts manufactured or sold by a Defendant or any current or former subsidiary, affiliate thereof or co-conspirator.

213.    Plaintiffs also bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to the antitrust, unfair competition, unjust enrichment, and consumer protection laws of the states whose laws are set forth in the Second and Third Claims below, as well as the unjust enrichment

REDACTED

laws of Missouri, Massachusetts and Illinois.  The states whose laws are set forth in the Second

and Third Claims below, as well as Missouri, Massachusetts, and Illinois, are collectively

referred to as the "Indirect Purchaser States."  These claims are brought by Plaintiffs on behalf of

themselves and entities in the Indirect Purchaser States listed in the Second, Third and Fourth

Claims as follows (the "Damages Class"):

> All automobile dealers, in the Indirect Purchaser States, that,
> during the Class Period (a) indirectly purchased HID Ballasts
> manufactured or sold by one of Defendants or any current or
> former subsidiary or affiliate thereof, or any co-conspirator or (b)
> purchased vehicles containing HID Ballasts manufactured or sold
> by one of Defendants or any current or former subsidiary, affiliate
> or co-conspirator thereof.

214.    The Nationwide Class and the Damages Class are referred to herein as the

"Classes."  Excluded from the Classes are Defendants, their parent companies, subsidiaries and

affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal

government, states and their subdivisions, agencies and instrumentalities, any judicial officer

presiding over this matter, persons who purchased HID Ballasts directly, and persons in the End-

Payor Class, as defined in the End-payor complaint.

215.    While Plaintiffs do not know the exact number of the members of the Classes,

Plaintiffs believe there are (at least) thousands of members in each Class.

216.    Common questions of law and fact exist as to all members of the Classes.  This is

particularly true given the nature of Defendants' and their co-conspirators' conspiracy, which

was generally applicable to all the members of both Classes, thereby making appropriate relief

with respect to the Classes as a whole.  Such questions of law and fact common to the Classes

include, but are not limited to:

> (a)    Whether Defendants and their co-conspirators engaged in a combination
> and conspiracy among themselves to fix, raise, maintain or stabilize the
> prices of HID Ballasts sold in the United States;

63

REDACTED

(b)     The identity of the participants of the alleged conspiracy;

(c)     The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

(d)     Whether the alleged conspiracy violated the Sherman Act, as alleged in the First Claim for Relief;

(e)     Whether the alleged conspiracy violated state antitrust and unfair competition law, and/or state consumer protection law, as alleged in the Second and Third Claims for Relief;

(f)     Whether Defendants unjustly enriched themselves to the detriment of the Plaintiffs and the members of the Classes, thereby entitling Plaintiffs and the members of the Classes to disgorgement of all benefits derived by Defendants, as alleged in the Fourth Claim for Relief;

(g)     Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiffs and the members of the Classes;

(h)     The effect of the alleged conspiracy on the prices of HID Ballasts sold in the United States during the Class Period;

(i)     Whether Plaintiffs and the members of the Classes had any reason to know or suspect the conspiracy, or any means to discover the conspiracy;

(j)     Whether Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from Plaintiffs and the members of the Classes;

(k)     The appropriate injunctive and related equitable relief for the Nationwide Class; and

(l)     The appropriate class-wide measure of damages for the Damages Class.

217.   Plaintiffs' claims are typical of the claims of the members of the Classes, and Plaintiffs will fairly and adequately protect the interests of the Classes.  Plaintiffs and all members of the Classes are similarly affected by Defendants' wrongful conduct in that they paid artificially inflated prices for HID Ballasts purchased indirectly from Defendants and/or their co-conspirators.

REDACTED

218.     Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes. Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Classes. Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

219.     The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

220.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

221.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

### PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY

222.     Defendants' price-fixing conspiracy had the following effects, among others:

(a)     Price competition has been restrained or eliminated with respect to HID Ballasts;

(b)     The prices of HID Ballasts have been fixed, raised, maintained, or stabilized at artificially inflated levels;

REDACTED

    (c)    Indirect purchasers of HID Ballasts have been deprived of free and open competition;

    (d)    Defendants charged direct purchasers of their HID Ballasts inflated prices as a result of their conspiracy;

    (e)    Having paid higher prices for components of the cars they sold to Plaintiffs and the Classes and the HID Ballasts they sold to Plaintiffs and the Classes, firms who sold Defendants' HID Ballasts and vehicles to Plaintiffs and the Classes passed Defendants' overcharges on to them;

    (f)    Defendants' overcharges passed through each level of distribution as they traveled to Plaintiffs and the Classes; and

    (g)    Automobile dealers purchasing HID Ballasts and vehicles containing HID Ballasts have been deprived of free and open competition.

    (h)    Indirect purchasers of HID Ballasts paid artificially inflated prices.

223.    During the Class Period, Plaintiffs and the members of the Classes paid supracompetitive prices for HID Ballasts, as a result of Defendants' conspiracy.

224.    An increase in the prices of HID Ballasts caused an increase in the price of vehicles during the Class Period.

225.    The markets for HID Ballasts and vehicles are inextricably linked and intertwined because the market for HID Ballasts exists to serve the vehicle market. Without the vehicles, the HID Ballasts have little to no value because they have no independent utility and must be inserted into vehicles to serve any function. Indeed, the demand for vehicles creates the demand for HID Ballasts. As stated in the 2010 Annual Report of Lear Corporation, an automobile parts supplier: "Our sales are driven by the number of vehicles produced by the automotive manufacturers, which is ultimately dependent on consumer fleet demand for automotive vehicles."

226.    HID Ballasts are identifiable, discrete physical products that remain essentially unchanged when incorporated into a vehicle. As a result, HID Ballasts follow a traceable

REDACTED

physical chain of distribution from Defendants to Plaintiffs and the members of the Classes, and any costs attributable to HID Ballasts can be traced through the chain of distribution to Plaintiffs and the members of the Classes.

227.    Just as HID Ballasts can be physically traced through the supply chain, so can their price be traced to show that changes in the prices paid by direct purchasers of HID Ballasts affect prices paid by indirect purchasers of new motor vehicles containing HID Ballasts and HID Ballasts purchased for repair purposes.

228.    The HID Ballasts subject to Defendants' conspiracy and at issue in this lawsuit only have one use: to be inserted into vehicles.  Whether HID Ballasts are sold by themselves or in vehicles, their purpose is to be inserted into vehicles.

229.    The purpose of the conspiratorial conduct of Defendants and their co- conspirators was to raise, fix, rig or stabilize the price of HID Ballasts and, as a direct and foreseeable result, the price of new motor vehicles containing HID Ballasts and the price of HID Ballasts purchased for repair purposes.  Economists have developed techniques to isolate and understand the relationship between one "explanatory" variable and a "dependent" variable in those cases when changes in the dependent variable are explained by changes in a multitude of variables, even when all such variables may be changing simultaneously.  That analysis - called regression analysis - is commonly used in the real world and in litigation to determine the impact of a price increase on one cost in a product (or service) that is an assemblage of costs.  Thus, an economist can isolate and identify only the impact of an increase in the price of HID Ballasts on prices for new motor vehicles even though such products contain a number of other components whose prices may be changing over time.  A regression model can explain how variation in the price of HID Ballasts affects changes in the price of new motor vehicles.  In such models, the price of

67

REDACTED

HID Ballasts would be treated as an independent or explanatory variable. The model can isolate how changes in the price of HID Ballasts impact the price of new motor vehicles containing HID Ballasts while controlling for the impact of other price-determining factors.

230. The precise amount of the overcharge impacting the prices of new motor vehicles containing HID Ballasts can be measured and quantified.

231. By reason of the violations of the antitrust law alleged herein, Plaintiffs and the members of the Classes have sustained injury to their businesses or property, having paid higher prices for HID Ballasts than they would have paid in the absence of Defendants' and their co-conspirators' illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount presently undetermined. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent, and Plaintiffs' and Class members' damages are measurable.

### PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

A. **The Statute of Limitations Did Not Begin to Run Because Plaintiffs Did Not And Could Not Discover Their Claims**

232. Plaintiffs repeat and re-allege the allegations set forth above.

233. Plaintiffs and the members of the Classes had no knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein, until (at the earliest) July 18, 2013, the date that the DOJ publicly announced the Defendant Panasonic Corporation's anticipated guilty plea.[1]

---

[1] With respect to Defendant Stanley, Plaintiffs had no knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein, until (at the earliest), November 27, 2013, the date the DOJ announced Defendant Stanley Electric Co., Ltd.'s anticipated guilty plea. No information in the public domain was available to the Plaintiffs and the members of the Classes prior to November 27, 2013, the date that the DOJ publicly announced Defendant Stanley Electric Co., Ltd.'s anticipated guilty plea, that revealed sufficient information to suggest that Stanley was involved in a conspiracy to price

REDACTED

234.    Plaintiffs and the members of the Classes are automobile dealers who purchased automobiles or purchased HID Ballasts to replace or repair damaged or defective HID Ballasts.

235.    They had no direct contact or interaction with Defendants in this case and had no means from which they could have discovered the combination and conspiracy described in this Complaint before July 18, 2013, the date that the DOJ publicly announced Defendant Panasonic Corporation's anticipated guilty plea.

236.    No information in the public domain was available to the Plaintiffs and the members of the Classes prior to July 18, 2013, the date that the DOJ publicly announced Defendant Panasonic Corporation's anticipated guilty plea, that revealed sufficient information to suggest that Defendants were involved in a criminal conspiracy to price-fix and rig bids for HID Ballasts.  Plaintiffs and the members of the Classes had no means of obtaining any facts or information concerning any aspect of Defendants' dealings with OEMs or other direct purchasers, much less the fact that they and their co-conspirators had engaged in the combination and conspiracy alleged herein.

---

fix HID Ballasts.  Therefore, with respect to Defendant Stanley, the statute of limitations did not begin to run because Plaintiffs did not and could not discover their claims, or in the alternative, because fraudulent concealment tolled the statute of limitations, until November 27, 2013.

With respect to Defendant Koito, Plaintiffs had no knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein, until (at the earliest), January 16, 2014, the date the DOJ publicly announced Defendant Koito Manufacturing Co., Ltd.'s anticipated guilty plea.  No information in the public domain was available to the Plaintiffs and the members of the Classes prior to January 16, 2014, the date the DOJ publicly announced Defendant Koito Manufacturing Co., Ltd.'s anticipated guilty plea, that revealed sufficient information to suggest that Koito was involved in a conspiracy to price fix HID Ballasts.  Therefore, with respect to Defendant Koito, the statute of limitations did not begin to run because Plaintiffs did not and could not discover their claims, or in the alternative, because fraudulent concealment tolled the statute of limitations, until January 16, 2014.

REDACTED

237.    For these reasons, the statute of limitations as to Plaintiffs' and the Classes' claims did not begin to run, and has been tolled with respect to the claims that Plaintiffs and the members of the Classes have alleged in this Complaint.

## B.    Fraudulent Concealment Tolled the Statute of Limitations

238.    In the alternative, application of the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted herein by Plaintiffs and the Classes.  Plaintiffs and the members of the Classes did not discover, and could not discover through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until July 18, 2013, the date that the DOJ publicly announced Defendant Panasonic Corporation's anticipated guilty plea.[2]

239.    Because Defendants' agreements, understandings, and conspiracies were kept secret until July 18, 2013, Plaintiffs and members of the Classes were unaware before that time of Defendants' unlawful conduct, and they did not know before then that they were paying supracompetitive prices for HID Ballasts throughout the United States during the Class Period. No information, actual or constructive, was ever made available to Plaintiffs and the members of the Classes that indicated to Plaintiffs that they were being injured by Defendants' unlawful conduct.

240.    The affirmative acts of Defendants alleged herein, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

241.    Defendants had secret communications to collusively fix prices, rig bids, and allocate markets for HID Ballasts.

242.    As Attorney General Eric Holder has explained, the Defendants and other auto-parts manufacturers "employ[ed] measures to keep their conduct secret, including, but not

---

[2] *See* footnote 1.

REDACTED

limited to, using code names and meeting at remote locations." This is confirmed by the Informations filed against Defendants Panasonic Corporation, Stanley Electric Co., Ltd., and Koito Manufacturing Co., Ltd, which reports these Defendants all employed "measures to keep their conduct secret, including using code names and choosing meeting places and times to avoid detection." Also, as stated in the Information filed against Defendant Mitsubishi Electric Corporation, the Defendants and their co-conspirators employed "measures to keep their conduct secret, including, but not limited to, using code names and meeting at remote locations."

243.    Defendants also concealed their conspiracy by submitting bids to OEMs, to give the appearance of competition, despite having already determined among themselves who would win each bid.

244.    Additionally, Defendant Mitsubishi Electric Corporation admitted to destroying and/or altering documents in an effort to cover up its unlawful activity.

245.    According to Defendant Mitsubishi Electric Corporation's plea agreement, in February 2010, Mitsubishi Electric Corporation's employees became aware of the criminal investigation into the price-fixing of automotive parts, including Alternators, when one of its co-conspirators was searched by law enforcement officers in the United States. Upon learning of the searches, Mitsubishi Electric Corporation's employees took steps to destroy evidence of their criminal activity, which was approved by their senior managers in Japan. This evidence included files and paper documents in the United States and Japan.

246.    By its very nature, the Defendants' and their co-conspirators' anticompetitive conspiracy was inherently self-concealing. HID Ballasts are not exempt from antitrust regulation, and thus, before July 18, 2013, Plaintiffs reasonably considered it to be a competitive

REDACTED

industry.  Accordingly, a reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of Defendants' HID Ballasts prices before July 18, 2013.

247.    Plaintiffs and the members of the Classes could not have discovered the alleged contract, conspiracy or combination at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by the Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination, or conspiracy.

248.    Because the alleged conspiracy was both self-concealing and affirmatively concealed by the Defendants and their co-conspirators, Plaintiffs and members of the Classes had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed until July 18, 2013, the date that the DOJ publicly announced Defendant Panasonic Corporation's anticipated guilty plea.

249.    As a result of Defendants' fraudulent concealment of their conspiracy, the running of any statute of limitations has been tolled with respect to the claims of Plaintiffs and the members of the Classes, and did not begin to run until July 18, 2013..

**FIRST CLAIM FOR RELIEF**
**Violation of Section 1 of the Sherman Act**
**(on behalf of Plaintiffs and the Nationwide Class)**

250.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

251.    Defendants and unnamed co-conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

252.    The acts done by Defendants as part of, and in furtherance of, their and their co-conspirators' contract, combination, or conspiracy were authorized, ordered, or done by their

REDACTED

officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

253.    At least as early as July 1998, and continuing until at least the filing of this Complaint, the exact dates being unknown to Plaintiffs, Defendants and their co-conspirators entered into a continuing agreement, understanding and conspiracy in restraint of trade to artificially fix, raise, stabilize, and control prices for HID Ballasts, thereby creating anticompetitive effects.

254.    The anticompetitive acts were intentionally directed at the United States market for HID Ballasts and had a substantial and foreseeable effect on interstate commerce by raising and fixing prices for HID Ballasts throughout the United States.

255.    The conspiratorial acts and combinations have caused unreasonable restraints in the market for HID Ballasts.

256.    As a result of Defendants' unlawful conduct, Plaintiffs and other similarly situated indirect purchasers in the Nationwide Class who purchased HID Ballasts have been harmed by being forced to pay inflated, supracompetitive prices for HID Ballasts and vehicles containing HID Ballasts.

257.    In formulating and carrying out the alleged agreement, understanding and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

258.    Defendants' and their co-conspirators' conspiracy had the following effects, among others:

    (a)    Price competition in the market for HID Ballasts has been restrained, suppressed, and/or eliminated in the United States;

REDACTED

   (b)   Prices for HID Ballasts sold by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and

   (c)   Plaintiffs and members of the Nationwide Class who purchased HID Ballasts indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

259.   Plaintiffs and members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for HID Ballasts and vehicles containing HID Ballasts than they would have paid and will pay in the absence of the conspiracy.

260.   Plaintiffs and members of the Nationwide Class will continue to be subject to Defendants' price-fixing, bid-rigging, and market allocations, which will deprive Plaintiffs and members of the Nationwide Class of the benefits of free competition, including competitively-priced HID Ballasts and vehicles containing HID Ballasts.

261.   Plaintiffs and members of the Nationwide Class will continue to lose funds due to overpayment for HID Ballasts and vehicles containing HID Ballasts because they are required to purchase vehicles and HID Ballasts to continue to operate their businesses.

262.   Vehicles and HID Ballasts continue to be sold at inflated and supracompetitive prices.

263.   The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

264.   Plaintiffs and members of the Nationwide Class will be at the mercy of Defendants' unlawful conduct until the Court orders an injunction.

265.   Plaintiffs and members of the Nationwide Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

REDACTED

## SECOND CLAIM FOR RELIEF
### Violation of State Antitrust Statutes
### (on behalf of Plaintiffs and the Damages Class)

266.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

267.    From as early as July 1998 until at least the filing of this Complaint, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy with respect to the sale of HID Ballasts in unreasonable restraint of trade and commerce and in violation of the various state antitrust statutes set forth below.

268.    The contract, combination, or conspiracy consisted of an agreement among Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supracompetitive prices, HID Ballasts, and to allocate customers for HID Ballasts in the United States.

269.    In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

      (a)    participating in meetings and conversations among themselves in the United States during which they agreed to price HID Ballasts at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to HID Ballasts sold in the United States;

      (b)    allocating customers and markets for HID Ballasts in the United States in furtherance of their agreements; and

      (c)    participating in meetings and conversations among themselves in the United States to implement, adhere to, and police the unlawful agreements they reached.

270.    Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate customers with respect to HID Ballasts.

REDACTED

271.    Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

272.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Arizona Revised Statutes, §§ 44-1401, *et seq*.

(a)    Defendants' and their co-conspirators' combinations or conspiracies had the following effects:  (1) HID Ballasts price competition was restrained, suppressed, and eliminated throughout Arizona; (2) HID Ballasts prices were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HID Ballasts and vehicles containing HID Ballasts.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq*.

273.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the California Business and Professions Code, §§ 16700, *et seq*.

(a)    During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professions Code.  Defendants,

REDACTED

each of them, have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices

of, and allocate markets for, HID Ballasts at supracompetitive levels.

(b)     The aforesaid violations of Section 16720, California Business and

Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of

action among Defendants and their co-conspirators, the substantial terms of which were to fix,

raise, maintain, and stabilize the prices of, and to allocate markets for, HID Ballasts.

(c)     For the purpose of forming and effectuating the unlawful trust, Defendants

and their co-conspirators have done those things which they combined and conspired to do,

including but in no way limited to the acts, practices and course of conduct set forth above and

the following:  (1) Fixing, raising, stabilizing, and pegging the price of HID Ballasts; and (2)

Allocating among themselves the production of HID Ballasts.

(d)     The combination and conspiracy alleged herein has had, inter alia, the

following effects:  (1) Price competition in the sale of HID Ballasts has been restrained,

suppressed, and/or eliminated in the State of California; (2) Prices for HID Ballasts sold by

Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at

artificially high, non-competitive levels in the State of California and throughout the United

States; and (3) Those who purchased HID Ballasts or vehicles containing HID Ballasts

manufactured by Defendants and their co-conspirators have been deprived of the benefit of free

and open competition.

(e)     As a direct and proximate result of Defendants' unlawful conduct,

Plaintiffs and members of the Damages Class have been injured in their business and property in

that they paid more for HID Ballasts than they otherwise would have paid in the absence of

Defendants' unlawful conduct.  As a result of Defendants' violation of Section 16720 of the

REDACTED

California Business and Professions Code, Plaintiffs and members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

274.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the District of Columbia Code Annotated §§ 28-4501, *et seq.*

(a)    Defendants' and their co-conspirators' combinations or conspiracies had the following effects:  (1) HID Ballasts price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) HID Ballasts prices were raised, fixed, maintained and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and members of the Damages Class, including those who resided in the District of Columbia and/or purchased HID Ballasts or vehicles in the District of Columbia, were deprived of free and open competition, including in the District of Columbia; and (4) Plaintiffs and members of the Damages Class, including those who resided in the District of Columbia and/or purchased HID Ballasts or vehicles in the District of Columbia, paid supracompetitive, artificially inflated prices for HID Ballasts, including in the District of Columbia.

(b)    During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.*

REDACTED

Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

275.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Hawaii Revised Statutes Annotated §§ 480-1, et seq.

(a)    Defendants' unlawful conduct had the following effects: (1) HID Ballasts' price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) HID Ballasts' prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for HID Ballasts and vehicles containing HID Ballasts.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Hawaii Revised Statutes Annotated §§ 480-4, et seq.  Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Hawaii Revised Statutes Annotated §§ 480-4, et seq.

276.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Illinois Antitrust Act, 740 Illinois Compiled Statutes 10/1, et seq.

(a)    Defendants' combinations or conspiracies had the following effects: (1) HID Ballasts price competition was restrained, suppressed, and eliminated throughout Illinois; (2)

REDACTED

HID Ballasts prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Illinois; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HID Ballasts and vehicles containing HID Ballasts.

(b)      During the Class Period, Defendants' illegal conduct substantially affected Illinois commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of 740 Illinois Compiled Statutes 10/1, et seq.  Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under 740 Illinois Compiled Statutes 10/1, *et seq.*[3]

277.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Iowa Code §§ 553.1, *et seq.*

(a)      Defendants' and their co-conspirators' combinations or conspiracies had the following effects:  (1) HID Ballasts price competition was restrained, suppressed, and eliminated throughout Iowa; (2) HID Ballasts prices were raised, fixed, maintained and stabilized at artificially high levels throughout Iowa; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class

---

[3] Dealership Plaintiffs recognize that their claims under the Illinois Antitrust Act were dismissed in the *Wire Harness* action.  Dealership Plaintiffs assert this claim here, individually and collectively, to preserve it for appeal

REDACTED

paid supracompetitive, artificially inflated prices for HID Ballasts and vehicles containing HID Ballasts.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq.*

278.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Kansas Statutes Annotated, §§ 50-101, *et seq.*

(a)     Defendants' and their co-conspirators' combinations or conspiracies had the following effects:  (1) HID Ballasts price competition was restrained, suppressed, and eliminated throughout Kansas; (2) HID Ballasts prices were raised, fixed, maintained and stabilized at artificially high levels throughout Kansas; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HID Ballasts and vehicles containing HID Ballasts.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.

REDACTED

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

279.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

(a)     Defendants' and their co-conspirators' combinations or conspiracies had the following effects:  (1) HID Ballasts price competition was restrained, suppressed, and eliminated throughout Maine; (2) HID Ballasts prices were raised, fixed, maintained and stabilized at artificially high levels throughout Maine; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HID Ballasts and vehicles containing HID Ballasts.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*  Accordingly,

REDACTED

Plaintiffs and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

280.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Michigan Compiled Laws Annotated §§ 445.771, *et seq.*

(a)   Defendants' and their co-conspirators' combinations or conspiracies had the following effects:  (1) HID Ballasts price competition was restrained, suppressed, and eliminated throughout Michigan; (2) HID Ballasts prices were raised, fixed, maintained and stabilized at artificially high levels throughout Michigan; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HID Ballasts and vehicles containing HID Ballasts.

(b)   During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

(c)   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)   By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq.*

281.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Minnesota Annotated Statutes §§ 325D.49, *et seq.*

REDACTED

(a)     Defendants' and their co-conspirators' combinations or conspiracies had the following effects:  (1) HID Ballasts price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) HID Ballasts prices were raised, fixed, maintained and stabilized at artificially high levels throughout Minnesota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HID Ballasts and vehicles containing HID Ballasts.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq.*

282.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Mississippi Code Annotated §§ 75-21-1, *et seq.*

(a)     Defendants' and their co-conspirators' combinations or conspiracies had the following effects:  (1) HID Ballasts price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) HID Ballasts prices were raised, fixed, maintained and stabilized at artificially high levels throughout Mississippi; (3) Plaintiffs and members of the Damages Class, including those who resided in Mississippi and/or purchased HID Ballasts or

84

REDACTED

vehicles in Mississippi were deprived of free and open competition, including in Mississippi, and (4) Plaintiffs and members of the Damages Class, including those who resided in Mississippi and/or purchased HID Ballasts or vehicles in Mississippi paid supracompetitive, artificially inflated prices for HID Ballasts, including in Mississippi.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. § 75-21-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Mississippi Code Ann. § 75-21-1, *et seq.*

283.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nebraska Revised Statutes §§ 59-801, *et seq.*

(a)     Defendants' and their co-conspirators' combinations or conspiracies had the following effects: (1) HID Ballasts price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) HID Ballasts prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nebraska; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HID Ballasts and vehicles containing HID Ballasts.

REDACTED

   (b) During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

   (c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

   (d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

 284. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nevada Revised Statutes Annotated §§ 598A.010, *et seq.*

   (a) Defendants' and their co-conspirators' combinations or conspiracies had the following effects:  (1) HID Ballasts price competition was restrained, suppressed, and eliminated throughout Nevada; (2) HID Ballasts prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nevada; 3) Plaintiffs and members of the Damages Class, including those who resided in Nevada and/or purchased HID Ballasts or vehicles in Nevada, were deprived of free and open competition including in Nevada; and (4) Plaintiffs and members of the Damages Class, including those who resided in Nevada and/or purchased HID Ballasts or vehicles in Nevada, paid supracompetitive, artificially inflated prices for HID Ballasts and vehicles containing HID Ballasts, including in Nevada.

   (b) During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

REDACTED

(a)     As a direct and proximate result of Defendants' unlawful conduct,
Plaintiffs and members of the Damages Class have been injured in their business and property
and are threatened with further injury.

(b)     By reason of the foregoing, Defendants have entered into agreements in
restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.* Accordingly,
Plaintiffs and members of the Damages Class seek all relief available under Nevada Rev. Stat.
Ann. §§ 598A.010, *et seq.*

285.   Defendants have entered into an unlawful agreement in restraint of trade in
violation of the New Hampshire Revised Statutes §§ 356:1, *et seq*.

(a)     Defendants' and their co-conspirators' combinations or conspiracies had
the following effects:  (1) HID Ballasts price competition was restrained, suppressed, and
eliminated throughout New Hampshire; (2) HID Ballasts prices were raised, fixed, maintained
and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs and members
of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and
members of the Damages Class paid supracompetitive, artificially inflated prices for HID
Ballasts and vehicles containing HID Ballasts.

(b)     During the Class Period, Defendants' illegal conduct substantially affected
New Hampshire commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct,
Plaintiffs and members of the Damages Class have been injured in their business and property
and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in
restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq.* Accordingly,

87

REDACTED

Plaintiffs and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq.*

286.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, *et seq.*

(a)    Defendants' and their co-conspirators' combinations or conspiracies had the following effects:  (1) HID Ballasts price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) HID Ballasts prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HID Ballasts and vehicles containing HID Ballasts.

(b)    During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Mexico Stat. Ann. §§ 57-1-1, *et seq.*

287.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the New York General Business Laws §§ 340, *et seq.*

REDACTED

      (a)     Defendants' and their co-conspirators' combinations or conspiracies had the following effects:  (1) HID Ballasts price competition was restrained, suppressed, and eliminated throughout New York; (2) HID Ballasts prices were raised, fixed, maintained and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class, including those who resided in New York and/or purchased HID Ballasts or vehicles in New York, were deprived of free and open competition, including in New York; and (4) Plaintiffs and members of the Damages Class, including those who resided in New York and/or purchased HID Ballasts or vehicles in New York, paid supracompetitive, artificially inflated prices for HID Ballasts when they purchased, including in New York, HID Ballasts or vehicles containing HID Ballasts, or purchased vehicles and HID Ballasts that were otherwise of lower quality than they would have been absent Defendants' and their co-conspirators' illegal acts, or were unable to purchase HID Ballasts or vehicles that they would have otherwise have purchased absent the illegal conduct.

      (b)     During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

      (c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

      (d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq*.  The conduct set forth above is a *per se* violation of the Act.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq*.

REDACTED

288.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Carolina General Statutes §§ 75-1, *et seq*.

(a)    Defendants' and their co-conspirators' combinations or conspiracies had the following effects:  (1) HID Ballasts price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) HID Ballasts prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class, including those who resided in North Carolina and/or purchased HID Ballasts or vehicles in North Carolina, were deprived of free and open competition, including in North Carolina; and (4) Plaintiffs and members of the Damages Class, including those who resided in North Carolina and/or purchased HID Ballasts or vehicles in North Carolina, paid supracompetitive, artificially inflated prices for HID Ballasts or vehicles containing HID Ballasts, including in North Carolina.

(b)    During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(c)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et. seq*.

289.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Dakota Century Code §§ 51-08.1-01, *et seq*.

REDACTED

(a)     Defendants' and their co-conspirators' combinations or conspiracies had the following effects:  (1) HID Ballasts price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) HID Ballasts prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HID Ballasts and vehicles containing HID Ballasts.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq*.

290.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Oregon Revised Statutes §§ 646.705, *et seq*.

(a)     Defendants' and their co-conspirators' combinations or conspiracies had the following effects:  (1) HID Ballasts price competition was restrained, suppressed, and eliminated throughout Oregon; (2) HID Ballasts prices were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of

91

REDACTED

the Damages Class paid supracompetitive, artificially inflated prices for HID Ballasts and

vehicles containing HID Ballasts.

(b)      During the Class Period, Defendants' illegal conduct had a substantial

effect on Oregon commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct,

Plaintiffs and members of the Damages Class have been injured in their business and property

and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in

restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq.*  Accordingly,

Plaintiffs and members of the Damages Class seek all relief available under Oregon Revised

Statutes §§ 646.705, *et seq.*

291.    Defendants have entered into an unlawful agreement in restraint of trade in

violation of the South Dakota Codified Laws §§ 37-1-3.1, *et seq.*

(a)      Defendants' and their co-conspirators' combinations or conspiracies had

the following effects:  (1) HID Ballasts price competition was restrained, suppressed, and

eliminated throughout South Dakota; (2) HID Ballasts prices were raised, fixed, maintained and

stabilized at artificially high levels throughout South Dakota; (3) Plaintiffs and members of the

Damages Class, including those who resided in South Dakota and/or purchased HID Ballasts or

vehicles in South Dakota, were deprived of free and open competition, including in South

Dakota; and (4) Plaintiffs and members of the Damages Class, including those who resided in

South Dakota and/or purchased HID Ballasts or vehicles in South Dakota, paid supracompetitive,

artificially inflated prices for HID Ballasts and vehicles containing HID Ballasts, including in

South Dakota.

92

REDACTED

(b)      During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq*.

292.      Defendants have entered into an unlawful agreement in restraint of trade in violation of the Tennessee Code Annotated §§ 47-25-101, *et seq*.

(a)      Defendants' and their co-conspirators' combinations or conspiracies had the following effects:  (1) HID Ballasts price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) HID Ballasts prices were raised, fixed, maintained and stabilized at artificially high levels throughout Tennessee; (3) Plaintiffs and members of the Damages Class, including those who resided in Tennessee and/or purchased HID Ballasts or vehicles in Tennessee, were deprived of free and open competition, including in Tennessee; and (4) Plaintiffs and members of the Damages Class, including those who resided in Tennessee and/or purchased HID Ballasts or vehicles in Tennessee, paid supracompetitive, artificially inflated prices for HID Ballasts and vehicles containing HID Ballasts, including in Tennessee.

(b)      During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce.

93

REDACTED

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq.*

293.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Utah Code Annotated §§ 76-10-911, *et seq.*

(a)     Defendants' and their co-conspirators' combinations or conspiracies had the following effects:  (1) HID Ballasts price competition was restrained, suppressed, and eliminated throughout Utah; (2) HID Ballasts prices were raised, fixed, maintained and stabilized at artificially high levels throughout Utah; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HID Ballasts and vehicles containing HID Ballasts.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-911, *et seq.*  Accordingly,

94

REDACTED

Plaintiffs and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-911, *et seq.*

294.    Defendants have entered into an unlawful agreement in restraint of trade in violation of 9 Vermont Stat. Ann. § 2453, *et seq.*

(a)    Defendants' and their co-conspirators' combinations or conspiracies had the following effects:  (1) HID Ballasts price competition was restrained, suppressed, and eliminated throughout Vermont; (2) HID Ballasts prices were raised, fixed, maintained and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HID Ballasts and vehicles containing HID Ballasts.

(b)    During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of 9 Vermont Stat. Ann. § 2453, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under 9 Vermont Stat. Ann. § 2453, *et seq.*  Plaintiffs are entitled to relief pursuant to 9 Vermont Ann. Stat. § 2465 and any other applicable authority.

295.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the West Virginia Code §§ 47-18-1, *et seq.*

REDACTED

(a)     Defendants' and their co-conspirators' combinations or conspiracies had the following effects:  (1) HID Ballasts price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) HID Ballasts prices were raised, fixed, maintained and stabilized at artificially high levels throughout West Virginia; (3) Plaintiffs and members of the Damages Class, including those who resided in West Virginia and/or purchased HID Ballasts or vehicles in West Virginia, were deprived of free and open competition including in West Virginia; and (4) Plaintiffs and members of the Damages Class, including those who resided in West Virginia and/or purchased HID Ballasts or vehicles in West Virginia, paid supracompetitive, artificially inflated prices for HID Ballasts and vehicles containing HID Ballasts, including in West Virginia.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia §§ 47-18-1, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under West Virginia §§ 47-18-1, *et seq.*

296.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01, *et seq.*

(a)     Defendants' and their co-conspirators' combinations or conspiracies had the following effects:  (1) HID Ballasts price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) HID Ballasts prices were raised, fixed, maintained and

REDACTED

stabilized at artificially high levels throughout Wisconsin; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HID Ballasts and vehicles containing HID Ballasts.

(b)      During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq.*

297.   Plaintiffs and members of the Damages Class in each of the above states have been injured in their business and property by reason of Defendants' and their co-conspirators' unlawful combination, contract, conspiracy and agreement. Plaintiffs and members of the Damages Class have paid more for HID Ballasts than they otherwise would have paid in the absence of Defendants' unlawful conduct. This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

298.   In addition, Defendants have profited significantly from the aforesaid conspiracy. Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of the Plaintiffs and the members of the Damages Class.

REDACTED

299.     Accordingly, Plaintiffs and the members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

### THIRD CLAIM FOR RELIEF
**Violation of State Consumer Protection Statutes**
**(on behalf of Plaintiffs and the Damages Class)**

300.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

301.     Defendants knowingly engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

302.     Defendants have knowingly entered into an unlawful agreement in restraint of trade in violation of the Arkansas Code Annotated, § 4-88-101.

(a)     Defendants knowingly agreed to, and did in fact act in, restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which HID Ballasts were sold, distributed, or obtained in Arkansas and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     The aforementioned conduct on the part of Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10).

(c)     Defendants' unlawful conduct had the following effects: (1) HID Ballasts price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) HID Ballasts prices were raised, fixed, maintained, and stabilized at artificially high levels throughout

REDACTED

Arkansas; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supracompetitive, artificially inflated prices for HID Ballasts and vehicles containing HID Ballasts.

(d)     During the Class Period, Defendants' illegal conduct substantially affected Arkansas commerce and consumers.

(e)     As a direct and proximate result of the unlawful conduct of Defendants, Plaintiffs and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

(f)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10) and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

303.     Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of California Business and Professions Code § 17200, *et seq.*

(a)     During the Class Period, Defendants committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

(b)     During the Class Period, Defendants' illegal conduct substantially affected California commerce and consumers.

(c)     This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

REDACTED

(d)     Defendants' conduct as alleged herein violated Section 17200.  The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.*, including, but not limited to, the following:  (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, *et seq.*, of the California Business and Professions Code, set forth above;

(e)     Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of Section 16720, *et seq.*, of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

(f)     Defendants' acts or practices are unfair to purchasers of HID Ballasts (or vehicles containing them) in the State of California within the meaning of Section 17200, California Business and Professions Code; and

(g)     Defendants' unlawful conduct had the following effects: (1) HID Ballasts price competition was restrained, suppressed, and eliminated throughout California; (2) HID Ballasts prices were raised, fixed, maintained, and stabilized at artificially high levels throughout California; (3) Plaintiffs and members of the Damages Class, including those who resided in California and/ or purchased HID Ballasts or vehicles in California, were deprived of free and open competition, including in California; and (4) Plaintiffs and members of the Damages Class, including those who resided in California and/or purchased HID Ballasts or vehicles in

REDACTED

California, paid supracompetitive, artificially inflated prices for HID Ballasts and vehicles containing HID Ballasts, including in California.

(h)     Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

(i)     Plaintiffs and members of the Damages Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices.

(j)     The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

(k)     As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition.  Plaintiffs and the members of the Damages Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

304.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*.

(a)     Defendants' unlawful conduct had the following effects:  (1) HID Ballasts price competition was restrained, suppressed, and eliminated throughout Florida; (2) HID Ballasts prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Plaintiffs and members of the Damages Class were deprived of free and open

REDACTED

competition; (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HID Ballasts.

(b)        During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and purchasers of HID Ballasts and vehicles in Florida.

(c)        As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

(d)        Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq*., and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

305.        Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, *et seq*.

(a)        Defendants and their co-conspirators agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at non-competitive and artificially inflated levels, the prices at which HID Ballasts were sold, distributed or obtained in New Mexico and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)        Plaintiffs were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged.  There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for HID Ballasts.  Defendants had the sole power to set that price and Plaintiffs had no power to negotiate a lower price.  Moreover, Plaintiffs lacked any meaningful choice in purchasing HID Ballasts because they were unaware of the unlawful overcharge and because

102

REDACTED

they had to purchase HID Ballasts in order to be able to operate their vehicles.  Defendants'
conduct with regard to sales of HID Ballasts, including their illegal conspiracy to secretly fix the
price of HID Ballasts at supracompetitive levels and overcharge consumers, was substantively
unconscionable because it was one-sided and unfairly benefited Defendants at the expense of
Plaintiffs and the public.  Defendants took grossly unfair advantage of Plaintiffs.

(c)     The aforementioned conduct on the part of Defendants constituted
"unconscionable trade practices," in violation of N.M.S.A. Stat. § 57-12-3, in that such conduct,
*inter alia*, resulted in a gross disparity between the value received by Plaintiffs and the members
of the Damages Class and the prices paid by them for HID Ballasts as set forth in N.M.S.A., §
57-12-2E, due to the inflated prices paid by Plaintiffs and Class members for vehicles and HID
Ballasts.

(d)     Defendants' unlawful conduct had the following effects:  (1) HID Ballasts
price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) HID
Ballasts prices were raised, fixed, maintained, and stabilized at artificially high levels throughout
New Mexico; (3) Plaintiffs and the members of the Damages Class were deprived of free and
open competition; and (4) Plaintiffs and the members of the Damages Class paid
supracompetitive, artificially inflated prices for HID Ballasts and vehicles containing HID
Ballasts.

(e)     During the Class Period, Defendants' illegal conduct substantially affected
New Mexico commerce and consumers.

(f)     As a direct and proximate result of the unlawful conduct of Defendants,
Plaintiffs and the members of the Damages Class have been injured and are threatened with
further injury.

103

REDACTED

(g)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*, and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

306.     The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*

(a)     The Defendants and their co-conspirators agree to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which HID Ballasts were sold, distributed or obtained in New York and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     Defendants deceptively led purchasers, such as Plaintiffs and Class members, to believe that the HID Ballasts they had purchased as replacements and inside vehicles had been sold at legal competitive prices, when they had in fact been sold at collusively obtained inflated prices, that were passed on to them.

(c)     The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in injuries to purchasers and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

(d)     The Defendants' unlawful conduct had the following effects:  (1) HID Ballasts price competition was restrained, suppressed, and eliminated throughout New York; (2) HID Ballasts prices were raised, fixed, maintained, and stabilized at artificially high levels

104

REDACTED

throughout New York; (3) Plaintiffs and members of the Damages Class, including those who resided in New York and/or purchased HID Ballasts or vehicles in New York, were deprived of free and open competition, including in New York; and (4) Plaintiffs and members of the Damages Class, including those who resided in New York and/or purchased HID Ballasts or vehicles in New York, paid supracompetitive, artificially inflated prices for HID Ballasts, including in New York.

(e)     Because of Defendants' unlawful trade practices in the State of New York, New York purchasers who indirectly purchased HID Ballasts were misled to believe that they were paying a fair price for HID Ballasts or the price increases for HID Ballasts were for valid business reasons; and similarly situated purchasers were affected by Defendants' conspiracy.

(f)     During the Class Period, the Defendants' illegal conduct substantially affected New York commerce and New York purchasers.

(g)     During the Class Period, the Defendants directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed HID Ballasts in New York.

(h)     Defendants knew that their unlawful trade practices with respect to pricing Occupant Safety Restraint Systems would have a broad impact, causing class members who indirectly purchased HID Ballasts to be injured by paying more for HID Ballasts than they would have paid in the absence of Defendants' unlawful trade acts and practices.

(i)     Plaintiffs and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349 (h).

REDACTED

307.      The Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*

(a)      The Defendants and their co-conspirators agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which HID Ballasts were sold, distributed or obtained in North Carolina and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)      The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in injury to purchasers and broad adverse impact on the public at large, and harmed the public interest of North Carolina purchasers in an honest marketplace in which economic activity is conducted in a competitive manner.

(c)      The Defendants' unlawful conduct had the following effects:  (1) HID Ballasts price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) HID Ballasts prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class, including those who resided in North Carolina and/or purchased HID Ballasts or vehicles in North Carolina were deprived of free and open competition, including in North Carolina; and (4) Plaintiffs and members of the Damages Class, including those who resided in North Carolina and/or purchased HID Ballasts or vehicles in North Carolina, paid supracompetitive, artificially inflated prices for HID Ballasts, including in North Carolina.

106

REDACTED

(d)     During the Class Period, the Defendants' illegal conduct substantially affected North Carolina commerce and purchasers in North Carolina.

(e)     Defendants deceptively concealed their unlawful activities by conducting meetings and conversations in secret.

(f)     During the Class Period, the Defendants directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed HID Ballasts in North Carolina.

(g)     Plaintiffs and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury.  The Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

308.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, et seq.

(a)     Defendants' combinations or conspiracies had the following effects: (1) HID Ballasts price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) HID Ballasts prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HID Ballasts and vehicles containing HID Ballasts.

REDACTED

(b)     During the Class Period, Defendants' illegal conduct had a substantial

effect on South Carolina commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct,

Plaintiffs and members of the Damages Class have been injured in their business and property

and are threatened with further injury.

(d)     Defendants have engaged in unfair competition or unfair or deceptive acts

or practices in violation of S.C. Code Ann. §§ 39-5-10, et seq., and, accordingly, Plaintiffs and

the members of the Damages Class seek all relief available under that statute.

309.    Defendants have engaged in unfair competition or unfair, unconscionable, or

deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*

(a)     Defendants and their co-conspirators agreed to, and did in fact, act in

restraint of trade or commerce in a market that includes Vermont by affecting, fixing,

controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which HID

Ballasts were sold, distributed, or obtained in Vermont.

(b)     Defendants deliberately failed to disclose material facts to Plaintiffs and

members of the Damages Class concerning their unlawful activities and artificially inflated

prices for HID Ballasts.  Defendants owed a duty to disclose such facts, and breached that duty

by their silence.  Defendants misrepresented to all purchasers during the Class Period that their

HID Ballasts prices were competitive and fair.

(c)     Defendants' unlawful conduct had the following effects:  (1) HID Ballasts

price competition was restrained, suppressed, and eliminated throughout Vermont; (2) HID

Ballasts prices were raised, fixed, maintained, and stabilized at artificially high levels throughout

Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open

REDACTED

competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HID Ballasts and vehicles containing HID Ballasts.

(d)     As a direct and proximate result of Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above.  That loss was caused by Defendants' willful and deceptive conduct, as described herein.

(e)     Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of HID Ballasts, misled purchasers acting reasonably under the circumstances to believe that they were purchasing HID Ballasts at prices set by a free and fair market.  Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

### FOURTH CLAIM FOR RELIEF
**Unjust Enrichment**
**(on behalf of Plaintiffs and the Damages Class)**

310.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

311.     Plaintiffs bring this claim under the laws of all states listed in the Second and Third Claims, *supra*.  Plaintiffs also bring this claim under the laws of Missouri, Massachusetts, and Illinois on behalf of the Plaintiffs who have their primary places of business in those three states and the class members in those three states.

312.     As a result of their unlawful conduct described above, Defendants have been, and will continue to be, unjustly enriched.  Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of HID Ballasts.

REDACTED

313.     Defendants have benefited from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiffs or the members of the Damages Class for HID Ballasts.

314.     Plaintiffs and the members of the Damages Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiffs and the members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiffs and the members of the Damages Class may make claims on a *pro rata* basis.

315.     Pursuit of any remedies against the firms from whom Plaintiffs and the Class members purchased HID Ballasts and vehicles containing HID Ballasts subject to Defendants' conspiracy would have been futile, given that those firms did not take part in Defendants' conspiracy.

## PRAYER FOR RELIEF

Accordingly, Plaintiffs respectfully request that:

A.     The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Classes;

B.     That the unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed:

(a)     An unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

(b)     A *per se* violation of Section 1 of the Sherman Act;

REDACTED

        (c)     An unlawful combination, trust, agreement, understanding and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein; and

        (d)     Acts of unjust enrichment by Defendants as set forth herein.

C.     Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiffs and the members of the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

D.     Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

E.     Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

F.     Plaintiffs and the members of the Damages Class be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and unjust enrichment;

REDACTED

G.      Plaintiffs and the members of the Classes be awarded pre- and post- judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

H.      Plaintiffs and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

I.      Plaintiffs and members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

### JURY DEMAND

Plaintiffs demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

DATED:  June 20, 2014.

Respectfully submitted,

/s/  *Gerard V. Mantese*
Gerard V. Mantese
(Michigan Bar No. P34424)
David Hansma
(Michigan Bar No. P71056)
Brendan Frey
(Michigan Bar No. P70893)
Mantese Honigman Rossman and
Williamson, P.C.
1361 E. Big Beaver Road
Troy, Michigan 48083
Telephone: (248) 457-9200
gmantese@manteselaw.com
dhansma@manteselaw.com
bfrey@manteselaw.com

REDACTED

Don Barrett
Brian Herrington
David McMullan
Barrett Law Group, P.A.
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Jonathan W. Cuneo
Joel Davidow
Daniel Cohen
Victoria Romanenko
Yifei Li
Cuneo Gilbert & LaDuca, LLP
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
danielc@cuneolaw.com
vicky@cuneolaw.com
evelyn@cuneolaw.com

Shawn M. Raiter
Paul A. Sand
Larson • King, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
sraiter@larsonking.com
psand@larsonking.com

Michael J. Flannery
Cuneo Gilbert & LaDuca, LLP
300 North Tucker
Suite 801
St. Louis, MO 63101
Telephone: (314) 226-1015
mflannery@cuneolaw.com

Phillip Duncan
Richard Quintus
Duncan Firm, P.A.
900 S. Shackleford, Suite 725
Little Rock, AR 72211
Telephone: (501) 228-7600
phillip@duncanfirm.com
richard@duncanfirm.com

Thomas P. Thrash
Marcus Bozeman
Thrash Law Firm, P.A.
1101 Garland Street
Little Rock, AR 72201
Telephone: (501) 374-1058
tomthrash@sbcglobal.net
bozemanmarcus@sbcglobal.net

Dewitt Lovelace
Valerie Nettles
Lovelace & Associates, P.A.
Suite 200
12870 US Hwy 98 West
Miramar Beach, FL 32550
Telephone: (850) 837-6020
dml@lovelacelaw.com
alex@lovelacelaw.com

Charles Barrett
Charles Barrett, P.C.
6518 Highway 100
Suite 210
Nashville, Tennessee 37205
Telephone: (615) 515-3393
charles@cfbfirm.com

Gregory Johnson
G. Johnson Law, PLLC

REDACTED

6688 145th Street West,
Apple Valley, MN 55124
Telephone: (952) 930-2485
greg@gjohnsonlegal.com

*Attorneys for Dealership Plaintiffs*