**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In Re: HID BALLASTS | |
| This Document Relates to: DEALERSHIP ACTIONS END-PAYOR ACTIONS | 2:13-cv-01702-MOB-MKM 2:13-cv-01703-MOB-MKM **Oral Argument Requested** |

**DEFENDANT ICHIKOH INDUSTRIES, LTD.'S MOTION TO DISMISS**
**PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINTS**
**FOR LACK OF PERSONAL JURISDICTION**

PLEASE TAKE NOTICE that, by its counsel listed below, Defendant Ichikoh Industries, Ltd. moves this Court for an Order pursuant to Federal Rule of Civil Procedure 12(b)(2) dismissing with prejudice the Consolidated Amended Class Action Complaints ("CACs")[1] in their entirety for lack of personal jurisdiction.[2]  This motion is based on the supporting memorandum of law, the declarations of Tatsuaki Watanabe and Edward T. Grenda, oral argument of counsel, and such other material as the Court may consider.  The Court should grant this motion because the Court lacks personal jurisdiction over Ichikoh under any theory.  Ichikoh has no direct contact with the United States.  Ichikoh is a Japanese automotive parts company that has never had a physical presence in the United States, has never conducted business in the United States, and has never manufactured or sold any products in the United States.

---

[1] The CACs are the Consolidated Amended Class Action Complaints for the Auto Dealer Actions (Case No. 1702, Doc. No. 25) ("AD Compl.") and the End-Payor Actions (Case No. 1703, Doc. No. 9) ("EP Compl.").

[2] Ichikoh also moves to dismiss the CACs on other grounds by virtue of its joinder in the Defendants' Joint Motion to Dismiss Plaintiffs' State Law Claims, also filed this day.

As required by Local Rule 7.1(a), counsel for Ichikoh sought concurrence from counsel for the Auto Dealer and End-Payor Plaintiffs on September 4, 2014, via telephone conference. During that call, counsel for Ichikoh explained the nature of this motion and its legal basis and requested, but did not obtain, concurrence in the relief sought (*i.e.*, dismissal of the CACs).

WHEREFORE, Defendant Ichikoh Industries, Ltd. respectfully requests that the Court issue an order GRANTING this Motion to Dismiss with prejudice and awarding Ichikoh such other and further relief as the Court deems just.

Dated: September 19, 2014

Respectfully submitted,

*/s/ Marguerite M. Sullivan*
Marguerite M. Sullivan
William H. Rawson
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004-1304
Tel.: (202) 637-2200
Fax: (202) 637-2201
marguerite.sullivan@lw.com
william.h.rawson@lw.com

Daniel M. Wall
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Tel.: (415) 391-0600
Fax: (415) 395-8095
dan.wall@lw.com

*Attorneys for Defendant*
*Ichikoh Industries, Ltd.*

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In Re: HID BALLASTS | |
| This Document Relates to: | |
| DEALERSHIP ACTIONS END-PAYOR ACTIONS | 2:13-cv-01702-MOB-MKM 2:13-cv-01703-MOB-MKM **Oral Argument Requested** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ICHIKOH INDUSTRIES, LTD.'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINTS FOR LACK OF PERSONAL JURISDICTION**

**STATEMENT OF ISSUE**

Whether the Court should dismiss Plaintiffs' claims against Ichikoh with prejudice because the Court lacks personal jurisdiction over Ichikoh.

## <u>MOST APPROPRIATE AUTHORITIES</u>

*In re Automotive Parts Antitrust Litig.*, No. 12-md-02311, 2:12-cv-00500, 2014 WL 2999271 (E.D. Mich. July 3, 2014)

*In re Automotive Parts Antitrust Litig.*, No. 12-md-02311, 2:12-cv-00500, 2014 U.S. Dist. LEXIS 90745 (E.D. Mich. July 3, 2014)

*In re Automotive Parts Antitrust Litig.*, No. 12-md-02311, 2:12-cv-00102, 2:12-cv-00103, 2013 WL 2456611 (E.D. Mich. June 6, 2013)

*In re Automotive Parts Antitrust Litig.*, No. 12-md-02311, 2:12-cv-00102, 2:12-cv-00103, 2013 WL 2456610 (E.D. Mich. June 6, 2013)

*Humble v. Toyota Motor Co.*, 727 F.2d 709 (8th Cir. 1984)

*Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012)

Fed. R. Civ. P. 12(b)(2)

## <u>TABLE OF CONTENTS</u>

STATEMENT OF ISSUE................................................................................... ii

INTRODUCTION .............................................................................................1

BACKGROUND ...............................................................................................2

LEGAL STANDARD.........................................................................................5

ARGUMENT ....................................................................................................6

     I.     This Court Lacks General Personal Jurisdiction Over Ichikoh ..............................6

     II.    The Court Lacks Specific Personal Jurisdiction Over Ichikoh..........................11

          A.    Ichikoh Never Purposefully Availed Itself Of The Privilege Of Acting In The United States...................................................11

          B.    Plaintiffs' Claims Do Not Arise From Ichikoh's Sparse And Attenuated Indirect Contacts With The United States.............................14

          C.    Jurisdiction Over Ichikoh Would Be Unreasonable Given Ichikoh's Tenuous Connection With The United States And The Tremendous Burden On Ichikoh Of Defending Itself In The United States .......................................................15

     CONCLUSION.................................................................................16

# TABLE OF AUTHORITIES

## CASES

*Alexander Assoc., Inc. v. FCMP, Inc.*,
  No. 10-12355, 2012 WL 1033464 (E.D. Mich. Mar. 27, 2012) ............................................. 8

*Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal.*,
  480 U.S. 102 (1987) ....................................................................................................... 15

*Bird v. Parsons*,
  289 F.3d 865 (6th Cir. 2002) ......................................................................................... 14

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ....................................................................................................... 11

*Calder v. Jones*,
  465 U.S. 783 (1984) ....................................................................................................... 13

*Calphalon Corp. v. Rowlette*,
  228 F.3d 718 (6th Cir. 2000) ......................................................................................... 11

*Carrier Corp. v. Outokumpu Oyj*,
  673 F.3d 430 (6th Cir. 2012) ............................................................................... 5, 6, 7, 15

*Children's Orchard, Inc. v. Children's Orchard Store #142*,
  No. 10-10143, 2010 WL 2232440 (E.D. Mich. May 28, 2010) ............................................ 6

*Community Trust Bancorp, Inc. v. Community Trust Fin. Corp.*,
  692 F.3d 469 (6th Cir. 2012) ......................................................................................... 14

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. ----, 131 S. Ct. 2846 (2011) ............................................................................... 6

*Helicopteros Nacionales de Colombia, S. A. v. Hall*,
  466 U.S. 408 (1984) ....................................................................................................... 11

*Humble v. Toyota Motor Co.*,
  727 F.2d 709 (8th Cir. 1984) ..................................................................................... 12, 16

*In re Automotive Parts Antitrust Litig.*,
  No. 12-md-02311, 2:12-cv-00102, 2;12-cv-00103, 2013 WL 2456610 (E.D.
  Mich. June 6, 2013) ................................................................................................. passim

*In re Automotive Parts Antitrust Litig.*,
  No. 12-md-02311, 2:12-cv-00102, 2;12-cv-00103, 2013 WL 2456611 (E.D.
  Mich. June 6, 2013) ....................................................................................... 1, 12, 13, 14

## TABLE OF AUTHORITIES
(continued)

*In re Automotive Parts Antitrust Litig.*,
No. 12-md-02311, 2:12-cv-00500, 2014 WL 2999271 (E.D. Mich. July 3, 2014) ........................................................................................... passim

*In re Automotive Parts Antitrust Litig.*,
No. 12-md-02311, 2:12-cv-00500, 2014 LEXIS 90745 (E.D. Mich. July 3, 2013) ........................................................................................... passim

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945) ................................................................................. 5

*J. McIntyre Machinery, Ltd. v. Nicastro*,
131 S. Ct. 2780 (2011) ........................................................................ 5, 12

*LAK, Inc. v. Deer Creek Enter.*,
885 F.2d 1293 (6th Cir. 1989) .............................................................. 14

*Miller v. AXA Winterthur Ins. Co.*,
694 F.3d 675 (6th Cir. 2012) ................................................................ 16

*Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*,
91 F.3d 790 (6th Cir. 1996) .................................................................. 15

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980) ................................................................................. 5

### RULES

Fed. R. Civ. P. 12(b)(2) ...................................................................... 6, 16

## INDEX OF UNPUBLISHED OPINIONS

| EXHIBIT A | *Alexander Assoc., Inc. v. FCMP, Inc.*, 2012 WL 1033464 (E.D. Mich. Mar. 27, 2012) |
|---|---|
| EXHIBIT B | *In re Automotive Parts Antitrust Litig.*, 2013 WL 2456611 (E.D. Mich. June 6, 2013) |
| EXHIBIT C | *In re Automotive Parts Antitrust Litig.*, 2013 WL 2456610 (E.D. Mich. June 6, 2013) |
| EXHIBIT D | *In re Automotive Parts Antitrust Litig.*, 2014 WL 2999271 (E.D. Mich. July 3, 2014) |
| EXHIBIT E | *In re Automotive Parts Antitrust Litig.*, 2014 U.S. Dist. LEXIS 90745 (E.D. Mich. July 3, 2014) |
| EXHIBIT F | *Children's Orchard, Inc. v. Children's Orchard Store #142*, 2010 WL 2232440 (E.D. Mich. May 28, 2010) |

## INTRODUCTION

Ichikoh Industries, Ltd. has no direct contact with the United States.  Ichikoh is a Japanese automotive parts company that has never had a physical presence in the United States, has never conducted business in the United States, and has never manufactured or sold any products in the United States.  Its contacts with the United States during the relevant period were indirect, sparse, and sporadic, and not nearly so continuous and systematic as to render Ichikoh essentially at home in the United States, as required to establish general personal jurisdiction.

Plaintiffs also cannot satisfy the three-part test for specific personal jurisdiction.  First, Plaintiffs allege no facts to establish that Ichikoh purposefully availed itself of the laws and protections of the United States.  Second, Plaintiffs' claims do not arise from Ichikoh's scant contacts with the United States.  Third, jurisdiction over Ichikoh would be unreasonable given Ichikoh's tenuous connection with the United States and the tremendous burden on Ichikoh of defending itself in the United States

This Court has dismissed plaintiffs' claims against other foreign companies that similarly lacked sufficient contacts with the United States to justify the Court's exercise of personal jurisdiction over them.  *See In re Automotive Parts Antitrust Litig.*, No. 12-md-02311, 2:12-cv-00500, 2014 WL 2999271, at *4 (E.D. Mich. July 3, 2014) (as to defendant AB SKF); *In re Automotive Parts Antitrust Litig.*, No. 12-md-02311, 2:12-cv-00500, 2014 U.S. Dist. LEXIS 90745, at *85-86 (E.D. Mich. July 3, 2013) (defendant Schaeffler AG); *In re Automotive Parts Antitrust Litig.*, No. 12-md-02311, 2:12-cv-00102, 2:12-cv-00103, 2013 WL 2456611, at *4-5 (E.D. Mich. June 6, 2013) (defendant S-Y Europe); *In re Automotive Parts Antitrust Litig.*, No. 12-md-02311, 2:12-cv-00102, 2:12-cv-00103, 2013 WL 2456610, at *4 (E.D. Mich. June 6, 2013) (defendant Leoni AG).  The Court should reach the same result here, and dismiss with

1

prejudice Plaintiffs' Consolidated Amended Class Action Complaints ("CACs")[3] against Ichikoh in their entirety.

## BACKGROUND

**Ichikoh.**  Ichikoh is a Japanese company that is incorporated under the laws of Japan and has its principal place of business in Japan.  *See* Declaration of Tatsuaki Watanabe ("Watanabe Decl.") ¶ 3.  Ichikoh manufactures and sells automotive component parts, including lamps for cars (*i.e.*, exterior head lamps and rear lamps).  *Id.* ¶ 14.  Ichikoh manufactures and sells all of its lamps in Japan.  *Id.*  Ichikoh does not control, and it has never controlled, the locations where its automobile manufacturer customers sell the cars into which they install Ichikoh's lamps.  *Id.*
A small percentage of Ichikoh's lamps are head lamps that utilize high intensity discharge, or "HID," technology.  *Id.* ¶ 15.  Those head lamps contain HID ballasts, which control the amount of electrical current that flows within the head lamp.  *Id.*  None of Ichikoh's other lamps include HID ballasts as a sub-component part.  *Id.*  Ichikoh does not manufacture the HID ballasts that it installs in its HID head lamps.  *Id.* ¶ 16.  Ichikoh purchases those HID ballasts from independent third parties.  *Id.*

Ichikoh has never manufactured or sold any products in the United States, including HID ballasts.  *Id.* ¶ 13.  Ichikoh has never had a physical presence in the United States or conducted business in the United States.  *Id.*  Ichikoh has never been incorporated in or licensed to do business in the United States, and Ichikoh has never qualified as a foreign corporation in any state in the United States or had a registered agent in the United States.  *Id.* ¶¶ 4-5.  Ichikoh has never maintained an office or branch in the United States, or an address, phone number, or fax number in the United States.  *Id.* ¶ 6.  Ichikoh has never owned or leased real estate, paid taxes,

---

[3] The "CACs" are the Consolidated Amended Class Action Complaints for the Auto Dealer Actions (Doc. No. 25) ("AD Compl.") and the End-Payor Actions (Doc. No. 9) ("EP Compl.").

maintained a bank account, borrowed money, or sued any entity or individual in the United States. *Id.* ¶¶ 7, 9-11. Ichikoh has never been charged with a crime in the United States, or entered a criminal plea in the United States. *Id.* ¶ 12. Ichikoh has never conducted its directors' or officers' meetings in the United States. *Id.* ¶ 8.

**IMI and IMIC.** Ichikoh previously had two subsidiaries in the United States – Ichikoh Manufacturing Inc. ("IMI") and Ichikoh Mitsuba Inc. ("IMIC"). *Id.* ¶ 17. IMI was a wholly owned subsidiary of Ichikoh that was formed in 1987 and liquidated in 2007. *Id.* IMIC was formed in 2007 and liquidated in 2011. *Id.* Ichikoh owned 75% of IMIC and Mitsuba Corp. owned 25% from 2007 to May 2010, when Ichikoh acquired Mitsuba's share. *Id.*

IMI and IMIC each manufactured and sold automotive component parts, but neither company manufactured or sold any type of exterior automotive lamp, including any lamp that included a HID ballast as a sub-component part. *Id.* ¶ 18; Declaration of Edward T. Grenda ("Grenda Decl.") ¶¶ 7, 22. Neither company manufactured or sold HID ballasts. Watanabe Decl. ¶ 18; Grenda Decl. ¶¶ 8, 23.

Ichikoh never controlled either subsidiary. Watanabe Decl. ¶¶ 19, 21; Grenda Decl. ¶¶ 11-16, 26-31. It did not control either of their day-to-day business operations, business decisions, policies, product design or sales, or finances. Watanabe Decl. ¶¶ 19, 21; Grenda Decl. ¶¶ 11, 13, 26, 28. IMI and IMIC each developed and maintained its own human resources, informational technology, materials management, accounting, and payroll departments, without any involvement or assistance by Ichikoh. Grenda Decl. ¶¶ 12, 27. They each maintained separate corporate bylaws, stock ledgers, and financial statements from Ichikoh. *Id.*

Ichikoh also did not control IMI's or IMIC's sales of component parts to automobile manufacturers. *Id.* ¶¶ 14, 29. IMI and IMIC each received proposals directly from automobile manufacturers, and decided whether and how to respond without any involvement by Ichikoh.

3

*Id.*  IMI and IMIC each determined and negotiated pricing with automobile manufacturers without any involvement by Ichikoh, and neither IMI nor IMIC ever bid jointly for business with Ichikoh.  *Id.*  Ichikoh also never controlled IMI's or IMIC's purchases of sub-component parts that each company needed to manufacture its finished products, or required IMI or IMIC to purchase sub-component parts from Ichikoh.  *Id.* ¶¶ 15, 30.  IMI and IMIC each purchased the vast majority of its sub-component parts from independent third parties.  *Id.*

Between 2001 and 2012, on average, each of IMI's and IMIC's sales in North America represented approximately 5.8 percent of Ichikoh's total annual revenue.  Watanabe Decl. ¶ 22.  Ichikoh never shared its financial records with IMI or IMIC other than through required public disclosures.  *Id.* ¶ 23.  Ichikoh never shared offices with IMI or IMIC, and, with one exception, Ichikoh personnel never held management or executive positions with either company.  Grenda Decl. ¶¶ 10, 16, 25, 31.  In 2003, Ichikoh sent an Ichikoh employee to IMI to assist with IMI's product design and production engineering.  *Id.* ¶ 16.  This individual served as a vice-president of IMI, and then IMIC, until 2009.  *Id.* ¶¶ 16, 31.  During that time, this employee was an employee of IMI and then IMIC, and was not simultaneously an active employee of Ichikoh.  *Id.*  IMI and IMIC each paid his full salary and living allowance.  *Id.*  The individual did not control either the day-to-day business operations or the business decisions, policies, product design or sales, or finances of IMI or IMIC.  *Id.*  Generally, about half of IMI's four to six board members, and about two-thirds of IMIC's four to six board members, were Ichikoh personnel, but these individuals were not involved in IMI's or IMIC's day-to-day business operations or decisions.  *Id.* ¶¶ 17, 32.  Overall, Ichikoh provided a minority of IMI's and IMIC's capital.  *Id.* ¶¶ 18, 33.

**Valeo.**  In 2000, Ichikoh entered into a Business Alliance Agreement with Valeo, which is located in Seymour, Indiana.  Watanabe Decl. ¶ 24.  Ichikoh has never controlled any aspect of

Valeo's business in the United States, and Ichikoh has never manufactured or sold any products in the United States pursuant to the Business Alliance Agreement. *Id.* ¶¶ 25-26.

## LEGAL STANDARD

As this Court emphasized in *Wire Harness* and *Bearings*, the "Supreme Court has held that to subject a nonresident defendant to personal jurisdiction, due process requires that he must 'have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *In re Automotive Parts Antitrust Litig.*, 2014 WL 2999271, at *3 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). *See also In re Automotive Parts Antitrust Litig.*, 2013 WL 2456610, at *3. A court may exercise personal jurisdiction over a foreign defendant only if that defendant has "sufficient minimum contacts with the United States" to satisfy the due process requirements of the Fifth Amendment. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 449 (6th Cir. 2012). The defendant's "conduct and connection with the forum State" must be "such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

There are two kinds of personal jurisdiction: general and specific. *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787-89 (2011). Here, because Plaintiffs' claims arise under the Sherman Act, the relevant forum in which to apply the contacts analysis is the United States as a whole. *Carrier*, 673 F.3d at 449-50.

Plaintiffs bear the burden of establishing that personal jurisdiction exists. *Id.* at 449. Where a court relies on written submissions and affidavits to resolve a defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the plaintiff must make a prima facie showing of jurisdiction. *Children's Orchard, Inc. v. Children's Orchard Store #142, Inc.*, No. 10-10143, 2010 WL 2232440, at *3 (E.D. Mich. May 28, 2010). To do so, the plaintiff may not

rest on its pleadings but must set forth by affidavit or otherwise "specific facts showing that the court has [personal] jurisdiction." Only specific facts, not conclusory allegations, are considered in a light most favorable to plaintiffs. *Id.*

**ARGUMENT**

This Court dismissed claims against German entities, S-Y Europe and Leoni AG, in the *Wire Harness* case, and it dismissed claims against AB SKF and Schaeffler AG in the *Bearings* case. In both of those cases, the Court held that the plaintiffs had not established that the foreign defendants' contacts with the United States were sufficient to enable the Court to exercise jurisdiction over them. The Court should reach the same result here and dismiss Plaintiffs' claims against Ichikoh.

**I.      This Court Lacks General Personal Jurisdiction Over Ichikoh**

A court cannot exercise general personal jurisdiction over a foreign defendant unless the defendant's contacts with the United States are so continuous and systematic as to render it essentially at home in the United States. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. ----, 131 S. Ct. 2846, 2851 (2011). Plaintiffs cannot satisfy that standard as to Ichikoh.

Ichikoh has no direct contact with the United States. As Plaintiffs admit, Ichikoh is a Japanese corporation with its principal place of business in Japan. AD Compl. ¶ 116; EP Compl. ¶ 85; Watanabe Decl. ¶ 3. Ichikoh has never had a physical presence in the United States, has never conducted business in the United States, and has never manufactured or sold any products in the United States. Watanabe Decl. ¶ 13. Plaintiffs do not allege any facts to the contrary. They allege only that "*Defendants*" have "transacted business in the United States" and "had substantial aggregate contacts with the United States." AD Compl. ¶ 17; EP Compl. ¶ 19 (emphasis added). But those allegations are not accurate as to Ichikoh, Watanabe Decl. ¶¶ 4-14,

6

and they are not sufficient to establish personal jurisdiction over Ichikoh.[4]  *See In re Automotive Parts Antitrust Litig.*, 2013 WL 2456610, at *5 (in the face of plaintiffs' conclusory allegations, defendant's "declaration establishes there is no systematic and continuous contact with the U.S."); *In re Automotive Parts Antitrust Litig.*, 2014 U.S. Dist. LEXIS 90745, at *85-86 (E.D. Mich. July 3, 2013) (plaintiffs' conclusory allegations notwithstanding, defendant's declaration "makes it clear that Schaeffler AG has no direct contacts with the United States").

Because Plaintiffs cannot allege that Ichikoh itself had contacts with the United States, they claim that Ichikoh had a presence in the United States through its former subsidiaries, IMI and IMIC.  AD Compl. ¶ 116; EP Compl. ¶ 85.  But Plaintiffs do not, and cannot, allege the control required to impute general jurisdiction over Ichikoh through the contacts of either company.

The "alter-ego" theory of personal jurisdiction "provides that a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction."  *Carrier*, 673 F.3d at 450-51.  As this Court has recognized, a "typical corporate relationship" does not support the alter-ego theory, *In re Automotive Parts Antitrust Litig.*, 2013 WL 2456610, at *5, and "bare allegations" that a foreign parent exercises dominion over its domestic subsidiary are insufficient.  *In re Automotive Parts Antitrust Litig.*, 2014 U.S. Dist. LEXIS 90745, at *85.

As this Court has held, to establish the degree of dominion and control required to impute a subsidiary's contacts with the United States to a foreign parent, plaintiffs must present

---

[4] Ichikoh does not have continuous or systematic contacts with the United States through its Business Alliance Agreement with Valeo.  ADs mention the Business Alliance Agreement in a single sentence but do not explain its relevance.  AD Compl. ¶ 116.  Ichikoh has never manufactured or sold any products in the United States pursuant to the Business Alliance Agreement.  Watanabe Decl. ¶ 26.

evidence that (i) the parent and subsidiary share principal offices, (ii) they share board members and executives, (iii) all of the parent's revenue comes from the subsidiary's sales, (iv) the parent provides all of the subsidiary's capital, (v) the subsidiary purchases all of its supplies from the parent, (vi) the subsidiary is seriously undercapitalized, (vii) the parent regularly provides gratuitous services to the subsidiary, (viii) the parent handles the subsidiary's payroll, (ix) the parent directs the policies and decisions of the subsidiary, and (x) the parent considered the subsidiary's project to be its own.  *In re Automotive Parts Antitrust Litig.*, 2014 WL 2999271, at *4 (citing *Alexander Assoc., Inc. v. FCMP, Inc.*, No. 10-12355, 2012 WL 1033464 (E.D. Mich. Mar. 27, 2012)).

The Court applied these factors in *Bearings* and *Wire Harness*, and found in both cases that personal jurisdiction was lacking.  In *Wire Harness*, for example, the Court held that, although a foreign parent and its subsidiary had centralized research and development, purchasing, and logistical activities, the alter ego theory did not apply because there was no evidence that the parent controlled its U.S. subsidiaries – that it "supervised management, controlled the budget, rendered decisions on a subsidiary's behalf, and invaded corporate boundaries."  *In re Automotive Parts Antitrust Litig.*, 2013 WL 2456610, at *5.  Similarly, in *Bearings*, the Court held that AB SKF's U.S. subsidiary did not create jurisdiction over AB SKF because, although AB SKF issued policies for the subsidiary, it did not control the subsidiary's daily operations.  The subsidiary managed its own marketing, payroll, and budget.  *In re Automotive Parts Antitrust Litig.*, 2014 WL 2999271, at *4.  The Court in that case also dismissed another German entity, Schaeffler AG, because there was no evidence that Schaeffler and its U.S. subsidiary "share offices, budget, management, or financial records other than for regulatory purposes [and] there are no allegations that Schaeffler USA is undercapitalized or

purchases supplies only from Schaeffler AG." *In re Automotive Parts Antitrust Litig.*, 2014 U.S. Dist. LEXIS 90745, at *84-88.

As in those cases, Plaintiffs have not established, and cannot establish, the control required for the Court to exercise jurisdiction over Ichikoh based on the contacts of its former subsidiaries. In fact, Ichikoh never controlled either IMI or IMIC, despite Plaintiffs' conclusory allegations to the contrary. AD Compl. ¶ 116; EP Compl. ¶ 85. Ichikoh did not control the day-to-day business operations of IMI or IMIC. Watanabe Decl. ¶ 19; Grenda Decl. ¶¶ 11, 26. IMI and IMIC each made its own day-to-day business decisions, established its own policies, designed and sold its own products, and handled its own finances. Watanabe Decl. ¶ 21; Grenda Decl. ¶¶ 13, 28. Each developed and maintained its own human resources, informational technology, materials management, accounting, and payroll departments, without any involvement or assistance by Ichikoh. Grenda Decl. ¶¶ 12, 27. And IMI and IMIC each maintained separate corporate bylaws, stock ledgers, and financial statements from Ichikoh. *Id.*

Between 2001 and 2012, on average, IMI's and IMIC's sales in all of North America represented approximately only 5.8 percent of Ichikoh's total annual revenue, but Ichikoh did not share its financial records with IMI or IMIC, except through required public disclosures. Watanabe Decl. ¶¶ 22-23. And Ichikoh never shared offices with IMI or IMIC. Grenda Decl. ¶¶ 10, 25.

Ichikoh also did not control IMI's or IMIC's sales of component parts to automobile manufacturers. *Id.* ¶¶ 14, 29. IMI and IMIC each received proposals directly from automobile manufacturers, and decided whether and how to respond to those proposals without any involvement by Ichikoh. *Id.* IMI and IMIC each determined and negotiated pricing with automobile manufacturers without any involvement by Ichikoh, and neither IMI nor IMIC ever bid jointly for business with Ichikoh. *Id.* Ichikoh also never controlled either IMI's or IMIC's

purchases of sub-component parts that the companies needed to manufacture their finished products. *Id.* ¶¶ 15, 30. IMI and IMIC purchased the vast majority of those sub-component parts from independent third parties. *Id.*

With one exception, Ichikoh personnel never held management or executive positions with either company. *Id.* ¶¶ 16, 31. Although one former Ichikoh employee served as a vice-president of IMI and then IMIC from 2003 to 2009, the individual was not simultaneously an active employee of Ichikoh and did not control either the day-to-day business operations or the business decisions, policies, product design or sales, or finances of IMI or IMIC. *Id.* Service as an executive of a subsidiary by a former employee of the parent does not evidence control of the subsidiary by the parent, in any event, unless the individual holds both roles simultaneously. *In re Automotive Parts Antitrust Litig.*, 2014 U.S. Dist. LEXIS 90745, at \*86. Finally, although about half of IMI's four to six board members, and about two-thirds of IMIC's four to six board members, were Ichikoh personnel, these individuals were not involved in IMI's or IMIC's day-to-day business operations or decisions. Grenda Decl. ¶¶ 17, 32. And, regardless, "shared management, alone, is insufficient" to satisfy the alter-ego theory. *In re Automotive Parts Antitrust Litig.*, 2014 WL 2999271, at \*4; *In re Automotive Parts Antitrust Litig.*, 2013 WL 2456610, at \*5.

This Court thus cannot disregard the corporate form and exercise general jurisdiction over Ichikoh based on the contacts of Ichikoh's former U.S. subsidiaries, IMI and IMIC.[5]

---

[5] Ichikoh's Business Alliance Agreement with Valeo also does not support application of the alter-ego theory. ADs do not allege that Ichikoh controls Valeo, AD Compl. ¶ 116, and Ichikoh has never controlled any aspect of Valeo's business in the United States. Watanabe Decl. ¶ 25.

## II.     The Court Lacks Specific Personal Jurisdiction Over Ichikoh

Specific jurisdiction subjects a defendant to actions in the forum that arise out of or relate to the defendant's contacts with the forum.  *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414 (1984).  This Court may only assert specific personal jurisdiction over a foreign entity if the plaintiff satisfies each of three requirements:  (1) the foreign defendant purposefully availed itself of the privilege of acting in the United States; (2) the plaintiff's claims arise from the foreign defendant's activities in the United States; and (3) the exercise of jurisdiction over the foreign defendant is reasonable.  *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000).  Plaintiffs satisfy none of these requirements.

### A.     Ichikoh Never Purposefully Availed Itself Of The Privilege Of Acting In The United States

"Purposeful availment" requires that a defendant's contacts with the United States proximately resulted from its *own* actions, thus creating a substantial connection with the United States.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).  This requirement ensures that a defendant will not be hauled into a U.S. court solely as the result of random, fortuitous, or attenuated contacts with the United States, or of the unilateral activity of another entity.  *Id.*  Plaintiffs cannot satisfy this requirement because, as explained above, Ichikoh has had no direct contact with the United States.   And there are no indirect contacts that would establish purposeful availment under any theory.

*First*, Ichikoh did not purposefully avail itself of the laws of the United States by placing its products in the stream of commerce with the intent to reach the United States.  As this Court recently recognized, that theory requires that a foreign defendant targeted the United States.  *In re Automotive Parts Antitrust Litig.*, 2013 WL 2456610, at *6-7 (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. at 2788).  It is not enough that the defendant might have predicted that its goods would reach the United States.  *Id.*

11

This Court declined to apply the stream of commerce theory in *Wire Harness* and *Bearings* on that ground. *See In re Automotive Parts Antitrust Litig.*, 2013 WL 2456611, at *4-5 (defendant S-Y Europe sold its products abroad to BMW but did not control BMW's distribution decisions, and S-Y Europe at most could have predicted that its products would reach the United States, despite that S-Y Europe was created to sell its products to BMW, which sold 247,907 vehicles in the United States in 2011). *See also In re Automotive Parts Antitrust Litig.*, 2014 WL 2999271, at *6; *In re Automotive Parts Antitrust Litig.*, 2014 U.S. Dist. LEXIS 90745, at *92-93; *In re Automotive Parts Antitrust Litig.*, 2013 WL 2456610, at *6-7. The Eight Circuit did the same, in a nearly identical case. *See Humble v. Toyota Motor Co.*, 727 F.2d 709, 710-11 (8th Cir. 1984) (court lacked personal jurisdiction over Japanese manufacturer of car seats that sold its seats abroad and did not control the distribution of finished vehicles, despite that the Japanese company could have reasonably foreseen that its seats would reach the United States).

This case presents the same scenario, and the Court should reach the same result. Ichikoh manufactured and sold all of its lamps in Japan – including a small number of lamps that contained HID ballasts. Watanabe Decl. ¶¶ 14-15. As in *Humble*, Ichikoh's lamps comprise a miniscule portion of the finished automobiles into which they are installed. *Humble*, 727 F.2d at 710-11. Moreover, Plaintiffs do not, and cannot, allege that Ichikoh controls where Japanese automobile manufacturers that purchase Ichikoh's lamps in Japan later sell their vehicles that contain those lamps. Watanabe Decl. ¶ 14. The most that they allege is that Ichikoh *indirectly* sold HID ballasts in the United States. AD Compl. ¶ 116 ("Ichikoh . . . manufactured, marketed, and/or sold HID Ballasts *that were purchased* throughout the United States) (emphasis added). But this Court has repeatedly held that that is not enough. *In re Automotive Parts Antitrust Litig.*, 2013 WL 2456611, at *4-5 (E.D. Mich. June 6, 2013); *In re Automotive Parts Antitrust*

*Litig.*, 2014 WL 2999271, at *6; *In re Automotive Parts Antitrust Litig.*, 2014 U.S. Dist. LEXIS 90745, at *92-93; *In re Automotive Parts Antitrust Litig.*, 2013 WL 2456610, at *6-7.

***Second***, Plaintiffs cannot establish purposeful availment by Ichikoh via the nebulous "effects test," which "supports personal jurisdiction where a defendant 'expressly aimed' tortious conduct at the forum and the 'brunt of the harm' is felt there." *In re Automotive Parts Antitrust Litig.*, 2014 U.S. Dist. LEXIS 90745, at *89-90 (quoting *Calder v. Jones*, 465 U.S. 783 (1984)). This Court rejected the effects test in *Bearings* because, although the plaintiffs alleged there that the foreign defendant, Schaeffler AG, was involved in the conspiracy, they did not allege any specific conduct that was directly attributable to Schaeffler AG. *Id.* at *91. Here, Plaintiffs similarly do not allege that Ichikoh engaged in any specific conduct, beyond their conclusory allegation that Ichikoh and the other Defendants agreed to respect each others' customers. AD Compl ¶ 158; EP Compl. ¶ 124. Moreover, as this Court recognized in *Wire Harness* and *Bearings*, allegations of conspiratorial conduct outside the United States do not suffice where, as here, the foreign defendant has such scarce contacts with the United States. *In re Automotive Parts Antitrust Litig.*, 2014 U.S. Dist. LEXIS 90745, at *91; *In re Automotive Parts Antitrust Litig.*, 2013 WL 2456610, at *7.

***Third***, Plaintiffs also cannot establish purposeful availment by Ichikoh via the "conspiracy theory." In *Wire Harness* and *Bearings*, this Court declined to apply the theory, recognizing that "the Sixth Circuit has not endorsed the theory that sufficient minimum contacts to exercise personal jurisdiction may be based upon the acts of a co-conspirator, performed in the forum in furtherance of the conspiracy, over a nonresident that has no other contacts with the forum." *In re Automotive Parts Antitrust Litig.*, 2014 WL 2999271, at *6; *In re Automotive Parts Antitrust Litig.*, 2013 WL 2456611, at *3. The Court should reject the theory again here.

Although the Court need not consider the second and third requirements for specific jurisdiction if it finds that Plaintiffs fail to establish purposeful availment, *LAK, Inc. v. Deer Creek Enter.*, 885 F.2d 1293, 1303 (6th Cir. 1989), Plaintiffs cannot satisfy those requirements either.

### B.   Plaintiffs' Claims Do Not Arise From Ichikoh's Sparse And Attenuated Indirect Contacts With The United States

Even if Ichikoh had purposefully availed itself of the laws of the United States, Plaintiffs' claims about HID ballasts do not arise from Ichikoh's scant, indirect contacts with the United States.  To "arise from" requires a "substantial connection" between Plaintiffs' claims and a foreign defendant's in-forum activities.  *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002).  The defendant's contacts with the United States must "relate to the operative facts and nature of the controversy."  *Cmty. Trust Bancorp, Inc. v. Cmty. Trust Fin. Corp.*, 692 F.3d 469, 472 (6th Cir. 2012).  Plaintiffs cannot establish that requirement here because Ichikoh's indirect contacts with the United States have no connection to Plaintiffs' claims.

First, the contacts of Ichikoh's former U.S. subsidiaries are irrelevant, because they are not *Ichikoh's* contacts.  But even if those contacts were relevant, Plaintiffs' claims do not relate whatsoever to the former business of IMI or IMIC.  Contrary to Plaintiffs' allegations, AD Compl. ¶116, neither IMI nor IMIC ever manufactured or sold HID ballasts, or any products that contained HID ballasts.  Grenda Decl. ¶¶ 7-8, 22-23.

Second, Ichikoh's own indirect contacts with the United States are also insufficiently connected to Plaintiffs' claims.  Ichikoh manufactured and sold all of its lamps in Japan – including the small number of lamps that contained HID ballasts.  Watanabe Decl. ¶¶ 14-15.  Plaintiffs allege that Ichikoh *indirectly* sold HID ballasts in the United States, AD Compl. ¶ 116, but Plaintiffs do not, and cannot, allege that Ichikoh controls where Japanese automobile manufacturers that purchase Ichikoh's lamps in Japan later sell their vehicles that contain those

14

lamps.  Watanabe Decl. ¶ 14.  Moreover, Plaintiffs do not allege that Ichikoh's indirect sales of lamps to the United States are at all connected to Plaintiffs' claims about HID ballasts, let alone substantially connected.

      **C.**    **Jurisdiction Over Ichikoh Would Be Unreasonable Given Ichikoh's Tenuous Connection With The United States And The Tremendous Burden On Ichikoh Of Defending Itself In The United States**

Even if Ichikoh had purposefully availed itself of the laws of the United States (it did not) and Plaintiffs' claims about HID ballasts arose from Ichikoh's sparse contacts with the United States (they did not), jurisdiction over Ichikoh would be unreasonable.  Determining reasonableness requires balancing the burden on Ichikoh, the interests of the United States, and the Plaintiffs' interests in obtaining relief.  *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987).  Courts exercise "great care" and "particular caution" in determining whether jurisdiction over a foreign defendant is reasonable, and the "unique burdens placed upon one who must defend oneself in a foreign legal system" have "significant weight" in assessing the reasonableness of extending jurisdiction.  *Id.* at 114-15; *Carrier Corp.*, 673 F.3d at 451; *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 797 (6th Cir. 1996).

These considerations weight heavily against exercising jurisdiction over Ichikoh.  As explained above, Ichikoh has no direct contact with the United States.  Ichikoh is a Japanese company with no physical presence in the United States, and Ichikoh has never conducted business in the United States or manufactured or sold any products in the United States.  Ichikoh's indirect contacts with the United States have no connection to Plaintiffs' claims.  And all of the relevant evidence and witnesses in Ichikoh's possession are in Japan.  *See Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 681 (6th Cir. 2012).  Under these circumstances, it would be "manifestly unjust" to force Ichikoh to defend itself half-way-around-the-world in protracted, complex, and expensive U.S. litigation.  *Humble*, 727 F.2d at 711.  Releasing Ichikoh

15

from Plaintiffs' claws will not impair Plaintiffs' pursuit of relief, if any relief is indeed

warranted.  Plaintiffs may pursue their claims against those Defendants over whom this Court

does have jurisdiction.

## **CONCLUSION**

For the reasons stated above, Ichikoh respectfully requests that the Court dismiss with

prejudice Plaintiffs' Consolidated Amended Class Action Complaints in their entirety for lack of

personal jurisdiction, under Federal Rule of Civil Procedure 12(b)(2).


Dated: September 19, 2014                    Respectfully submitted,


                                             */s/ Marguerite M. Sullivan*
                                             Marguerite M. Sullivan
                                             William H. Rawson
                                             LATHAM & WATKINS LLP
                                             555 Eleventh Street NW, Suite 1000
                                             Washington, DC 20004-1304
                                             Tel.: (202) 637-2200
                                             Fax: (202) 637-2201
                                             marguerite.sullivan@lw.com
                                             william.h.rawson@lw.com


                                             Daniel M. Wall
                                             LATHAM & WATKINS LLP
                                             505 Montgomery Street, Suite 2000
                                             San Francisco, CA 94111-6538
                                             Tel.: (415) 391-0600
                                             Fax: (415) 395-8095
                                             dan.wall@lw.com


                                             *Attorneys for Defendant*
                                             *Ichikoh Industries, Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of September, 2014, I caused a true and correct copy of the foregoing Defendant Ichikoh Industries, Ltd.'s Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaints for Lack of Personal Jurisdiction to be served upon the parties and counsel listed on the attached service list via e-mail or electronically through the CM/ECF system which will send notification of such filing to all counsel of record.  The remaining parties and counsel were served via U.S. Mail.

*/s/ Marguerite M. Sullivan*
Marguerite M. Sullivan
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004-1304
Tel.: (202) 637-2200
Fax: (202) 637-2201
marguerite.sullivan@lw.com

*Attorney for Defendant*
*Ichikoh Industries, Ltd.*