**REDACTED**

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : | Master File No. 12-md-02311 |
| | : | Honorable Marianne O. Battani |
| | : | |
| In Re: HID Ballasts | : | 2:13-cv-01702-MOB-MKM |
| | : | 2:13-cv-01703-MOB-MKM |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| | : | |
| All Automobile Dealer Actions | : | |
| All End-Payor Actions | : | |

# END-PAYORS AND AUTO DEALER PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MELCO'S MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINTS

REDACTED

# **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................................1

II.     STATEMENT OF FACTS ............................................................................................2

      A.      The Alleged Conspiracy and Its Participants.............................................................2

      B.      The HID Ballasts Market Structure, Characteristics and Pricing ...........................3

      C.      The Automotive Parts Investigation and Defendants' Guilty Pleas Regarding HID Ballasts.........................................................................................................5

      D.      Mitsubishi's Guilty Plea, Cooperation Requirements and the Recent Indictments of its Current and Former Employees ...............................................6

      E.      Defendants' Efforts to Conceal Their Conspiratorial Activity, Destruction of Documents and Obstruction of Justice. ...............................................................8

      F.      Guilty Pleas by Mitsubishi-Related Entities. ..........................................................9

III.    THE MITSUBISHI DEFENDANTS' *TWOMBLY* MOTION SHOULD BE DENIED. ....9

      A.      Legal Standards........................................................................................................9

      B.      The Court's Prior Orders On Similar Motions to Dismiss Support Denial of the Mitsubishi Defendants' Motion ......................................................................10

      C.      The Complaints Sufficiently Allege MEC's Involvement in the HID Ballasts Conspiracy. ...........................................................................................................14

      D.      The Complaints Sufficiently Allege MEUS's and MEAA's Involvement in the HID Ballasts  Conspiracy...................................................................................17

IV.     PLAINTIFFS SUFFICIENTLY STATE A CLAIM FOR INJUNCTIVE RELIEF .........19

V.      PLAINTIFFS ADEQUATELY ALLEGE CONSTITUTIONAL STANDING................21

VI.     PLAINTIFFS ADEQUATELY ALLEGE ANTITRUST STANDING UNDER *AGC* ....21

VII.    PLAINTIFFS ADEQUATELY PLEAD THEIR STATE LAW ANTITRUST, CONSUMER PROTECTION, AND UNJUST ENRICHMENT CLAIMS.....................22

VIII.   STATE STATUTES OF LIMITATIONS DO NOT BAR PLAINTIFFS' CLAIMS .......22

IX.     CONCLUSION........................................................................................................22

i

**REDACTED**

# TABLE OF AUTHORITIES

## Federal Cases

*Associated Gen. Contractors v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983)...........................................................................................21

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................... *passim*

*Continental Ore Co. v. Union Carbide and Carbon Corp.*,
    370 U.S. 690 (1962)...........................................................................................10

*Eng'g Inc. v. Bridgestone/Firestone, Inc.*,
    140 F.3d 1228 (9th Cir. 1998) ..........................................................................19

*First Am. Title Co. v. DeVaugh*,
    480 F.3d 438 (6th Cir. 2007) ..............................................................................9

*In re Automotive Parts Antitrust Litig. In re Wire Harness Cases*,
    12-MD-02311, 2013 WL 2456584 (E.D. Mich. June 6, 2013) ..................... *passim*

*In re Automotive Parts Antitrust Litig. In re Wire Harness Cases*,
    12-MD-02311, 2013 WL 2456013 (E.D. Mich. June 6, 2013) ..................... *passim*

*In re Automotive Parts Antitrust Litig. In re Wire Harness Cases*,
    12-MD-02311, 2013 WL 2456586 (E.D. Mich. June 6, 2013) ..................... *passim*

*In re Automotive Parts Antitrust Litig. In re Wire Harness Cases*,
    12-MD-02311, 2013 WL 2456612 (E.D. Mich. June 6, 2013) ...........................20

*In re Automotive Parts Antitrust Litig. In re Bearings*,
    12-MD-02311, 2014 WL 4248430 (E.D. Mich. Aug. 27, 2014)..................... *passim*

*In re Flat Glass Antitrust Litig.*
    385 F.3d 350 (3d Cir. 2004), *cert. denied*, 544 U.S. 948 (2005)...........................16

*In re Optical Disk Drive Antitrust Litig.*,
    3:10-MD-2143 RS, 2012 WL 1366718 (N.D. Cal. Apr. 19, 2012)........................20

*In re Packaged Ice Antitrust Litig.*,
    723 F. Supp. 2d 987 (E.D. Mich. 2010)..............................................................15

*In re Southeastern Milk Antitrust Litig.*,
    555 F. Supp. 2d 934 (E.D. Tenn. 2008) .............................................................10

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    580 F.Supp.2d 896 (N.D. Cal. 2008) .................................................................15

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    264 F.R.D. 603 (N.D. Cal. 2009).......................................................................20

**REDACTED**

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  267 F.R.D. 583 (N.D. Cal. 2010) ........................................................................20

*In re Text Messaging Antitrust Litig.*,
  630 F.3d 622 (7th Cir. 2010) ..............................................................................16

*Weiner v. Klais & Co.*,
  108 F.3d 86 (6th Cir. 1997) ..................................................................................9

## Federal Rules and Statutes

Federal Rule of Civil Procedure 12(b)(6) .................................................................1, 9

15 U.S.C. § 1 ...........................................................................................................5, 6, 7

15 U.S.C. § 26 ..............................................................................................................19

**REDACTED**

## STATEMENT OF ISSUES PRESENTED

1.     Whether the End-Payor and Auto Dealer Plaintiffs' (collectively "Plaintiffs") Complaints plausibly allege, under *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), that the Defendants, including Defendants Mitsubishi Electric Corporation ("MEC"), Mitsubishi Electric US Holdings, Inc., and Mitsubishi Electric Automotive America, Inc. (collectively referred to as "Mitsubishi" or the "Mitsubishi Defendants"), were part of an antitrust conspiracy regarding automotive high intensity discharge ballasts ("HID Ballasts"), where Plaintiffs allege, *inter alia,* the following:  Multiple guilty pleas by other Defendants admitting to a long-running HID Ballasts conspiracy; continuing automotive parts antitrust investigations in the United States, Europe, Japan and elsewhere; a guilty plea by MEC pertaining to multiple automotive parts; MEC's  and its subsidiaries' agreement to cooperate in the U.S. Department of Justice's ("DOJ") automotive parts investigation, including with respect to HID Ballasts; Mitsubishi's attendance at HID Ballasts pricing meetings with other Defendants and its agreement with Defendants to allocate customers; MEC's  admission that it destroyed documents to cover up its unlawful price-fixing activity; a market structure and HID Ballasts pricing conducive to and/or indicative of collusion; opportunities to collude; and other Mitsubishi-related entities' violations of the antitrust laws.

2.     Whether Plaintiffs have stated a claim against the Mitsubishi subsidiaries in light of the totality of the allegations in the Complaints regarding the HID Ballasts conspiracy, the Mitsubishi Defendants, and the Mitsubishi subsidiaries.

3.     Whether Plaintiffs have adequately alleged a claim for injunctive relief under the Clayton Act, having alleged a plausible threat of future injury necessitating a prospective injunction.

**REDACTED**

4.      Whether Rule 8 and *Twombly* require detailed factual allegations regarding the mechanics of "pass-through" for purposes of establishing injury-in-fact and Article III constitutional standing?

5.      Whether Plaintiffs' Complaints satisfy *AGC* for those states that require such an analysis.

6.      Whether Plaintiffs have sufficiently pleaded state law antitrust, consumer protection, and unjust enrichment claims.

7.      Whether dismissal under state statutes of limitation would be appropriate on a motion to dismiss, where Plaintiffs have alleged the application of the discovery rule and Defendants have not challenged its application.

**REDACTED**

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

*In re Automotive Parts Antitrust Litig. In re Wire Harness Cases,* No. 12-md-02311, No. 2:12-cv-00101, 2013 WL 2456584 (E.D. Mich. June 6, 2013)

*In re Automotive Parts Antitrust Litig. In re Wire Harness Cases*, No. 12-md-02311, No. 2:12-cv-00100, 2013 WL 2456013 (E.D. Mich. June 6, 2013)

*In re Automotive Parts Antitrust Litig. In re Wire Harness Cases*, No. 12-md-02311, Nos. 2:12-cv-00102, 2:12-cv-00103, 2013 WL 2456586 (E.D. Mich. June 6, 2013)

*In re Automotive Parts Antitrust Litig. In re Bearings*, No. 12-MD-02311, Nos. 2:12-cv-00502, 2:12-cv-00503, 2014 WL 4248430 (E.D. Mich. Aug. 27, 2014)

*In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987 (E.D. Mich. 2010)

REDACTED

# I.   INTRODUCTION

Defendants Mitsubishi Electric Corporation ("MEC"), Mitsubishi Electric US Holdings, Inc. ("MEUS"), and Mitsubishi Electric Automotive America, Inc. ("MEAA") have filed an individual motion to dismiss the End-Payors' and Auto Dealers' Consolidated Amended Class Action Complaints under Federal Rule of Civil Procedure 12(b)(6).[1]  They argue that Plaintiffs have failed to allege adequately the Mitsubishi Defendants' participation in the HID Ballasts conspiracy.  The Mitsubishi Defendants' motion is without merit.

Plaintiffs allege that Defendants engaged in an overarching HID Ballasts price-fixing conspiracy from 1998 to at least the date of Plaintiffs' complaint filings.  Three defendants have pleaded guilty to engaging in the HID Ballasts conspiracy from 1998 to 2010, in connection with their sales to multiple vehicle original equipment manufacturers ("OEMs").  Plaintiffs allege that the HID Ballasts market characteristics facilitate collusion and that HID Ballasts market pricing during the alleged conspiracy period supports its existence.  Plaintiffs allege that MEC has pleaded guilty to price fixing of other automotive parts over a similarly lengthy time period and that MEC has admitted to destroying documents to conceal its illegal activity.  Plaintiffs further allege that MEC's guilty plea requires MEC *and its subsidiaries* to cooperate with the DOJ investigation into the HID Ballasts and other parts conspiracies and provides for a release of criminal liability for MEC *and its subsidiaries* regarding those conspiracies.

As described in more detail below, the totality of the allegations regarding the HID Ballasts conspiracy and the Mitsubishi Defendants easily satisfy the requirements of *Twombly*.  The Mitsubishi Defendants' tactic of disaggregating Plaintiffs' Complaints allegations and

---

[1] MELCO's Motion to Dismiss The End-Payors' and Auto Dealers' Consolidated Amended Class Action Complaints ("MELCO Mtn."), filed September 19, 2014, Case Nos. 2:13-cv-1702-MOB and 2:13-cv-1703.

REDACTED

attacking them individually has previously been rejected by this Court. The Complaints' allegations clearly allow a reasonable inference that all three Mitsubishi Defendants were part of the alleged HID Ballasts conspiracy, and their motion should be denied.

## II.   STATEMENT OF FACTS

### A.   The Alleged Conspiracy and Its Participants

On June 13 and 21, 2014, respectively, the End-Payor ("EP") Plaintiffs and Auto Dealer ("AD") Plaintiffs filed their Consolidated Amended Class Action Complaints alleging that the Defendants conspired to inflate, fix, raise, maintain, or artificially stabilize prices for automotive HID Ballasts sold in the United States in violation of federal and state laws.[2] Plaintiffs allege that the Defendants, directly or through their owned or controlled subsidiaries or affiliates, manufactured, marketed or sold HID Ballasts that were incorporated into new automobiles and purchased indirectly by EPs and ADs in the United States. EP CAC ¶¶ 2, 4, 83-95; AD CAC ¶¶ 1, 4, 113-126. The Plaintiffs' Complaints further alleged that the Defendants' conspiracy commenced as early as July 1998, and continued at least until the filing of Plaintiffs' Complaints. EP CAC ¶ 214; AD CAC ¶ 253.

Defendant MEC is a Japanese corporation with its principal place of business in Tokyo, Japan. Through its U.S.-based wholly-owned or -controlled subsidiaries—namely, defendants MEUS and MEAA—MEC manufactured, marketed and/or sold HID Ballasts that were purchased throughout the United States during the Class Period. EP CAC ¶ 93; AD CAC ¶124.[3]

---

[2] *See* EP Consolidated Amended Class Action Complaint filed June 13, 2014 in Case No. 2:13-cv-01703-MOB, Doc. #9 ("EP CAC") ¶ 1; AD Consolidated Amended Class Action Complaint filed June 21, 2014 in Case No. 2:13-cv-01703-MOB, Doc. #25 ("AD CAC") ¶ 1.

[3] The End-Payors' Complaint defines the Class Period as the "period from and including July 1, 1998 through such time as the anticompetitive effects of the Defendants' conduct ceased." EP CAC ¶ 2. The Auto Dealers' Complaint defines the Class Period as "the period from and including July 1, 1998 through the present." AD CAC ¶ 2.

REDACTED

Both MEUS and MEAA directly or indirectly manufactured, marketed and/or sold HID Ballasts that were purchased throughout the United States during the Class Period.  EP CAC ¶ 94-95; AD CAC ¶¶ 125-126.  At all times during the Class Period, the activities of MEUS and MEAA were under the control and direction of MEC, which controlled their policies, sales, and finances.  AD CAC ¶¶ 125-126.

The other defendant groups that are alleged to have participated in the HID Ballasts conspiracy are as follows:

- **DENSO Defendants**:  DENSO Corporation, a Japanese corporation based in Kariya, Japan; and DENSO International America, Inc. a Delaware corporation based in Southfield, Michigan.

- **Defendant Ichikoh**, a Japanese corporation based in Kanagawa-ken, Japan.

- **Panasonic Defendants**:  Panasonic Corporation, a Japanese company based in Osaka, Japan ("Panasonic"); Panasonic Corporation of North America, a Delaware corporation based in Secaucus, New Jersey that sold HID Ballasts through Georgia-based Panasonic Automotive Systems Company of America;

- **Stanley Electric Defendants**:  Stanley Electric Co., Ltd., a Japanese corporation based in Tokyo, Japan ("Stanley Electric"); Stanley Electric U.S. Co., Inc., an Ohio corporation based in Ohio; and II Stanley Co., Inc., a Michigan corporation based in Michigan.

- **Koito Defendants**:  Koito Manufacturing Co., Ltd., a Japanese corporation based in Tokyo, Japan ("Koito"); and North American Lighting, Inc., a Michigan corporation based in Illinois.

*See* EP CAC ¶¶ 83-92; AD CAC ¶¶ 113-123.

## B.    The HID Ballasts Market Structure, Characteristics and Pricing

A HID Ballast is an electrical device that limits the amount of electrical current flowing to an HID headlamp, which would otherwise rise to destructive levels due to the HID headlamp's negative resistance.  EP CAC ¶ 99; AD CAC ¶ 130.  Large automotive manufacturers such as Toyota, Mazda and Nissan, purchase HID Ballasts directly or indirectly from Defendants and incorporate them into new vehicles.  EP CAC ¶ 101; AD CAC ¶ 133.

**REDACTED**

Plaintiffs allege that the market for HID Ballasts has high barriers to entry, such as multi-million dollar start-up costs associated with manufacturing plants and equipment, energy, transportation, distribution infrastructure, and long-standing customer relationships. EP CAC ¶¶ 111-112; AD CAC ¶¶ 144-145. New competitor entry is difficult because OEMs design the features of their vehicles so that HID Ballasts they purchase for a vehicle are integrated with the electronics, mechanics and other features of the particular vehicle model. As a result, it is difficult for an OEM to switch to a new entrant supplier. EP CAC ¶ 114; AD CAC ¶ 147. The market is also characterized by inelastic pricing, allowing participants in the market to raise prices without incurring a significant decrease in sales. These features of the market make it susceptible to successful collusion. EP CAC ¶¶ 115-117; AD CAC ¶¶ 148-150.

The Complaints also allege that during the Class Period, the Defendants were able to increase the prices for HID Ballasts in the face of declining demand for automotive vehicles. EP CAC ¶¶ 105-109; AD CAC ¶¶ 138-142. For example, during the Class Period, the Producer Price Index ("PPI") for vehicular lighting equipment—which includes HID Ballasts—generally held steady or increased. EP CAC ¶¶ 105-106; AD CAC ¶¶ 138-139. Meanwhile, demand for automobiles in the United States generally decreased during the same period. For example, while the auto industry experienced a 35% drop in demand from 2007 to 2009, during the same period, prices for HID Ballasts increased. The law of supply and demand dictates that prices during this period should have fallen. EP CAC ¶ 107; AD CAC ¶¶ 140. In a competitive market, falling or steady demand should not have resulted in rising prices for HID Ballasts. EP CAC ¶¶ 108-109; AD CAC ¶¶ 141-42.

REDACTED

### C.   The Automotive Parts Investigation and Defendants' Guilty Pleas Regarding HID Ballasts

The DOJ's Antitrust Division is currently conducting a broad criminal investigation into illegal price-fixing and bid-rigging in the automotive parts industry.  EP CAC ¶ 5; AD CAC ¶ 5. The ongoing cartel investigation of price-fixing and bid-rigging in the automotive parts industry has yielded approximately $2.3 billion in criminal fines.  *Id.*

In connection with that investigation, on July 18, 2013, the DOJ announced that Panasonic agreed to plead guilty and pay a $45.8 million criminal fine for its role in a conspiracy to fix prices of automotive parts, including HID Ballasts, sold to Honda Motor Company, Ltd. and American Honda Motor Company, Inc. (collectively "Honda"), Mazda Motor Corporation and Mazda Motor of America, Inc. (collectively "Mazda"), and Nissan Motor Company Ltd. and Nissan North America, Inc. (collectively "Nissan") for installation in vehicles manufactured and sold in the United States and elsewhere from at least as early as July 1998 and continuing until at least February 2010, in violation of the Sherman Act, 15 U.S.C. § 1.  EP CAC ¶¶ 6, 127; AD CAC ¶¶ 6, 161.

On November 27, 2013, the DOJ announced that Stanley Electric agreed to pay a $1.44 million criminal fine and plead guilty to a one-count criminal information charging it with participating in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of HID Ballasts sold to automobile manufacturers in the United States and elsewhere, from at least as early as July 1998 and continuing until at least February 2010, in violation of the Sherman Act, 15 U.S.C. § 1.  Stanley Electric participated in an agreement to allocate the supply of, rig bids for, and to fix, stabilize, and maintain the prices, including coordinating price adjustments requested by purchasers, of HID Ballasts sold to Toyota Motor Corporation, Honda Motor Company, Ltd., Nissan Motor Co., Ltd., Fuji Heavy Industries, Ltd. (Subaru), Mazda Motor

5

REDACTED

Corporation, and/or certain of their United States subsidiaries in the United States and elsewhere. EP CAC ¶¶ 9, 132-134; AD CAC ¶¶ 9, 168-170.

On January 16, 2014, the DOJ announced that Koito agreed to pay a $56.6 million criminal fine and to plead guilty to a two-count criminal information charging it with participating in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of automotive parts, including HID Ballasts, sold to automobile manufacturers in the United States and elsewhere, from at least as early as July 1998 and continuing until at least February 2010, in violation of the Sherman Act, 15 U.S.C. § 1.  EP CAC ¶¶ 10, 135-136; AD CAC ¶¶ 10, 171-172.



Plaintiffs further allege that Defendants (including the Mitsubishi Defendants) participated in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of HID Ballasts sold to automobile manufacturers and others in the United States.  EP CAC ¶ 12; AD CAC ¶ 12.

### D. Mitsubishi's Guilty Plea, Cooperation Requirements and the Recent Indictments of its Current and Former Employees

On September 26, 2013 the DOJ announced that MEC had agreed to plead guilty and to pay a $190 million criminal fine for its role in a conspiracy to rig bids for, and to fix, stabilize

6

REDACTED

and maintain prices of certain automotive parts installed in automobiles manufactured and sold to automobile manufacturers, including Ford Motor Company, General Motors LLC, Chrysler Group LLC, Fuji Heavy Industries Ltd., Nissan Motor Company Ltd., Honda Motor Company Ltd., and certain of their subsidiaries, in the United States and elsewhere from at least as early as January 2000 to and continuing to at least February 2010, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.  EP CAC ¶¶ 7, 129; AD CAC ¶¶ 7, 165.  According to the Information, MEC participated in meetings, conversations, and communications in the United States and elsewhere to discuss the bids and price quotations to be submitted to automobile manufacturers in the United States and elsewhere.  EP CAC ¶ 130; AD CAC ¶ 166.

MEC's plea agreement requires MEC *and its subsidiaries* to cooperate in the DOJ's automotive parts investigation, including with respect to HID Ballasts.  MEC's guilty plea further provides that in exchange for it and its subsidiaries' cooperation in the DOJ's automotive parts investigation, including with respect to HID Ballasts, the DOJ will refrain from criminally prosecuting MEC and its subsidiaries for price-fixing certain automotive parts, including HID Ballasts.  EP CAC ¶¶ 8, 131; AD CAC ¶¶ 8, 167.

Recently, a three-count indictment was filed on September 18, 2014 in the U.S. District Court for the Eastern District of Michigan against several current or former MEC employees. *See* Declaration of Steven N. Williams in Support of End-Payor and Auto-Dealer Plaintiffs' Request for Judicial Notice and in Support of Joint Opposition to Defendant MELCO's Motion to Dismiss the Consolidated Amended Class Action Complaints ("Williams Decl."), Exs. 1 & 2. Count I charges Atsushi Ueda ("Ueda"), Minoru Kurisaki ("Kurisaki"), and Hideyuki Saito ("Saito") of MEC with conspiring to fix the prices of certain automotive products, including starter motors, alternators and ignition coils, sold to Ford Motor Company, General Motors LLC,

REDACTED

Chrysler Group LLC, Fuji Heavy Industries Ltd., Nissan Motor Company Ltd., and Honda Motor Company Ltd., in the United States and elsewhere. *Id.* at 4-7. The Indictment charges that the MEC employees participated in the conspiracy from January 2000 to February 2010; that one of the MEC employees, Minoru Kurisaki, served as a Vice President of Sales and later as President of MEC's U.S. subsidiary, Defendant MEAA, during that time period; that the conspiracy was carried out in the U.S. and in Japan; and that the Federal Bureau of Investigation ("FBI") raided MEAA's offices in Michigan in July 2011. *Id.* ¶¶ 5, 16-19, 26.

### E. Defendants' Efforts to Conceal Their Conspiratorial Activity, Destruction of Documents and Obstruction of Justice

Plaintiffs allege that Panasonic, Stanley Electric and Koito employed "measures to keep their conduct secret, including using code names and choosing meeting places and times to avoid detection" and that, as stated in the Information filed against MEC, the Defendants and their co-conspirators employed "measures to keep their conduct secret, including, but not limited to, using code names and meeting at remote locations." EP CAC ¶ 204; AD CAC ¶ 242. Additionally, MEC has admitted to destroying and/or altering documents in an effort to cover up its unlawful activity. See EP CAC ¶ 205; AD CAC ¶ 244. According to MEC's plea agreement, in February 2010, MEC's employees became aware of the criminal investigation into the price-fixing of automotive parts and took steps to destroy evidence of their criminal activity—including files and documents in the U.S. and Japan—which was approved by their senior managers in Japan. EP CAC ¶ 206; AD CAC ¶ 245.

Count II of the recently-filed indictment against MEC employees charges Kurisaki and Saito with knowingly conspiring to obstruct justice by destroying documents and persuading others to do so. Williams Decl., Ex. 1, at 8-15. Count III charges Saito with knowingly and

REDACTED

corruptly persuading executives to destroy documents and delete electronic data that may contain evidence of antitrust crimes in the United States and elsewhere. *Id.*, at 16.

### F.    Guilty Pleas by Mitsubishi-Related Entities

In addition to the above guilty pleas, on September 26, 2013, Mitsubishi Heavy Industries Ltd. agreed to plead guilty and to pay a $14.5 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of compressors and condensers sold to automobile manufacturers in the United States and elsewhere. EP CAC ¶ 158(d); AD CAC ¶¶ 191, 200.

## III.    THE MITSUBISHI DEFENDANTS' *TWOMBLY* MOTION SHOULD BE DENIED

### A.    Legal Standards

The standard for reviewing the sufficiency of a complaint was initially set forth by this Court in *In re Automotive Parts Antitrust Litigation (Wire Harnesses Cases)*, No. 12-md-02311, 2013 WL 2456584, at *3 (E.D. Mich. June 6, 2013). Plaintiffs must show that their Complaints "allege facts which, if proved, would entitle [them] to relief." *Id.* (citing *First Am. Title Co. v. DeVaugh*, 480 F.3d 438, 443 (6th Cir. 2007)). "[D]irect or inferential allegations respecting all the material elements" will sustain the sufficiency of the complaint. *Id.* (quoting *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997)). Furthermore, on a Rule 12(b)(6) motion to dismiss, "the Court 'must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

Specifically, the Complaints "must contain 'enough factual matter (taken as true) to suggest' the existence of an agreement." *Wire Harness*, 2013 WL 2456584, at *3 (quoting *Twombly*, 550 U.S. at 556). A "heightened fact pleading of specifics" is not needed to sustain an antitrust conspiracy claim. *Id.* (citing *Twombly*, 550 U.S. at 570). "[A]llegations as to who,

REDACTED

what, when, and where are not the litmus test for determining whether a defendant is on notice of the claims." *Id.*, at *4 (citing *In re Southeastern Milk Antitrust Litig.*, 555 F. Supp. 2d 934 (E.D. Tenn. 2008) (citing *Continental Ore Co. v. Union Carbide and Carbon Corp.*, 370 U.S. 690, 699 (1962)). As this Court concluded, "assessing the sufficiency of the CAC boils down to consideration as to . . . whether the allegations in the CAC enable Collective Defendants to respond." *Wire Harness*, 2013 WL 2456584, at *5 (citations omitted). The same holds true here with respect to Mitsubishi Defendants.

###### B.    The Court's Prior Orders On Similar Motions to Dismiss Support Denial of the Mitsubishi Defendants' Motion

The Complaints at issue here set forth many of the same types of allegations regarding the Defendants' conspiracy to fix prices for HID Ballasts that this Court has previously held sufficient in the *Wire Harness Cases* and *Bearings Cases*. *See, e.g.*, *In re Automotive Parts Antitrust Litig. (Wire Harness Cases)*, 2013 WL 2456013, at *2-3 (E.D. Mich. June 6, 2013) (Opinion and Order Denying Tram, Inc. and Tokai Rika Co., Ltd.'s Motions to Dismiss all Actions) ("*Tokai Rika Opinion*"); *In re Automotive Parts Antitrust Litig. (Wire Harness Cases)*, 2013 WL 2456586, at *3-4 (E.D. Mich. June 6, 2013) (Opinion and Order Denying Kyungshin-Lear's Motions to Dismiss all Complaints) ("*K-L Opinion*"); *In re Automotive Parts Antitrust Litig. (Bearings Cases)*, 2014 WL 4248430, at *3-4 (E.D. Mich. August 27, 2014) (Opinion and Order Denying Defendant's Motion to Dismiss the Consolidated Amended Complaints) ("*SKF USA Opinion*"). Like the complaint allegations that were scrutinized and upheld in prior orders in these *Auto Parts* cases, the Complaints here contain "'enough factual matter (taken as true) to suggest' the existence of an agreement." *Wire Harness*, 2013 WL 2456584, at *4 (quoting *Twombly*, 550 U.S. at 556).

Here, the Complaints include, among others, the following allegations:

10

REDACTED

- **An Overarching Conspiracy Supported By Co-Defendant/Conspirator Guilty Pleas.**
  The Mitsubishi Defendants participated in an overarching HID Ballasts conspiracy
  that is supported by $104 million in fines and guilty pleas of co-Defendants
  Panasonic, Stanley Electric and Koito regarding price-fixing of HID Ballasts and
  other parts from 1998 to 2010. ███████████████████████████████████
  ████████████████████████████████████████████████████████████████
  ██████████████████████████████████████████████████████████████

- **Mitsubishi Guilty Plea and Fine.**  MEC agreed to plead guilty and to pay a $190
  million criminal fine for its role in a conspiracy to fix prices of automotive parts sold
  to Ford, General Motors, Chrysler, Fuji, Nissan, Honda and other OEMs in the United
  States and elsewhere from 2000 to at least 2010.  *See* § II.D., *supra*.

- **Recent Indictment of Current or Former MEC and MEAA employees.**  Several
  current or former MEC employees were recently indicted for conspiring to fix the
  prices of starter motors, alternators and ignition coils, sold to automotive OEMs in the
  United States and elsewhere.  One of the former MEC employees, Kurisaki, was
  indicted for alleged price-fixing activities during his tenure at the MEC subsidiary,
  MEAA.  *See* § II.D., *supra*.

- **Mitsubishi's and Its Subsidiaries' Agreement to Cooperate as to HID Ballasts.**
  MEC and its subsidiaries are required to cooperate in the DOJ's automotive parts
  investigation, including with respect to HID Ballasts; in exchange for that
  cooperation, the DOJ will refrain from criminally prosecuting MEC and its
  subsidiaries for price-fixing HID Ballasts and other parts.  *See* § II.D., *supra*.

- **Defendants' Efforts to Conceal Their Conspiratorial Conduct.**  Panasonic, Stanley
  Electric and Koito all employed "measures to keep their HID Ballasts-related conduct
  secret, including using code names and choosing meeting places and times to avoid
  detection."  *See* § II.E., *supra*.

- **Mitsubishi's  Efforts to Conceal Conspiratorial Conduct and Obstruction of
  Justice.**  MEC and its co-conspirators, similarly, employed "measures to keep their
  conduct secret;" MEC admitted to destroying and/or altering documents in an effort
  to cover up its unlawful activity; and MEC employees were recently charged with
  persuading executives to destroy documents and data that may contain evidence of
  antitrust crimes in the United States.  *See* § II.E., *supra*.

- **Market Structure, Characteristics and Product Pricing.**  The structure of the HID
  Ballasts market, such as substantial barriers to entry and inelastic demand and pricing,
  facilitates collusion.  Also, Defendants were able to increase prices for HID Ballasts
  in the face of declining demand for automotive vehicles during the class period,
  thereby supporting the existence of an anti-competitive market.  *See* § II.B., *supra*.

- **Opportunities to Conspire.**  Representatives from Defendants DENSO, Ichikoh,
  Panasonic, Stanley, Koito, and Mitsubishi attended and participated in at least six

**REDACTED**

meetings together in which they discussed pricing of HID Ballasts.  *See* § II.C., *supra*.

These are the types of allegations that this Court deemed sufficient in denying multiple prior motions to dismiss in the *Auto Parts Cases*.

In the *Wire Harness Cases*, for example, in addition to denying the "Collective Defendants" motions to dismiss, the Court denied motions to dismiss filed by TRAM and Tokai Rika, the latter of which had pleaded guilty, not to fixing wire harness prices, but to fixing prices of another motor vehicle product (along with obstructing justice). *Tokai Rika Opinion*, 2013 WL 2456013, at *2-3.  Like the Mitsubishi Defendants here, TRAM and Tokai Rika argued that there was a paucity of allegations in the complaints specifically mentioning them.  In denying their motion, the Court "reject[ed] Defendants' efforts to isolate each allegation for separate analysis rather than considering the complaints as a whole" and found that the allegations of guilty pleas by other defendants, market conditions, and opportunities to conspire "satisfy *Twombly*."  *Id*. at *2.  In addition, like the Mitsubishi Defendants here, Toka Rika pleaded guilty to price fixing other automotive parts and admitted to destruction of electronic and other documents.  *Id*. at *3.  Finally, the Court held that plaintiffs' allegations that the U.S. subsidiary, TRAM, was under the "direction and control of defendant Toka Rika," "sufficiently allege an agency relationship" and met plaintiffs' "pleading burden."  *Id*. at *3.  Here, similarly, Plaintiffs allege that MEC "wholly owned or controlled" and/or directed MEUS and MEAA (EP CAC ¶¶ 94 – 95; AD CAC ¶¶ 125 – 126), and a former MEC employee has been indicted for participation in an automotive parts price fixing conspiracy while he served as a Vice President and President of the MEC subsidiary, MEAA.

Similarly, Kyungshin-Lear argued that it should be dismissed because it was "a peripheral outlier" merely lumped in with the other defendants.  *K-L Opinion*, 2013 WL

REDACTED

2456586, at *3.   Kyungshin-Lear claimed there, as the Mitsubishi Defendants do here, that such allegations against it were inadequate to state a claim.   The Court denied Kyungshin-Lear's motion, observing that "[d]ismissal is not required merely because Plaintiffs did not name each Defendant in the allegations pleaded in support of their Sherman Act claim." *Id*.   Also, the lack of a guilty plea by Kyungshin-Lear or Lear was not dispositive.   The Court concluded that the Plaintiffs adequately advanced a claim against Kyungshin-Lear, where   "[M]ultiple Defendants have pleaded guilty and admitted to meeting and agreeing to . . . fix prices in the United States"; multiple defendants "admitted to carrying out those agreements"; "[t]he structure of the wire harness industry renders it susceptible to collusion, and the complaints contain allegations demonstrating Defendants' opportunity to meet and collude"; and "government investigations are ongoing." *Id*.   Plaintiffs' Complaints make the same allegations here.

In the *SKF USA Opinion*, defendant SKF USA sought dismissal of the plaintiffs' complaints on the grounds that plaintiffs "made no allegations regarding its involvement in the alleged [bearings] conspiracy."   2014 WL 4248430, at *2.   SKF USA's argued that neither it nor its foreign parent (AB SKF, which had been dismissed for lack of personal jurisdiction) had pleaded guilty to price fixing of automotive bearings or any other product and that the limited scope of the bearings-related guilty pleas by other defendants did not adequately support plaintiffs' claims against SKF USA. *Id*. at *4.   This Court rejected that argument, reasoning that, "viewed in their entirety, the [complaint] allegations support an inference that SKF USA participated in a price-fixing conspiracy aimed at the United States under the direction of AB SKF." *Id*. at *4.   The complaint allegations relied upon by the Court included that the following: Two named defendants pleaded guilty to fixing price of automotive bearings; "the structure of the Bearings market is conducive to price-fixing and collusion given the high barriers to entry,

13

REDACTED

inelasticity of demand, high concentration, and numerous opportunities to conspire"; and, "prices for Bearings increased even as auto sales remained flat or sluggish." *Id*. at *1. Plaintiffs make essentially the same allegations here.

In light of the above orders by the Court on individual motions to dismiss in the *Auto Parts Cases*, the Mitsubishi Defendants' motion should be denied.

### C. The Complaints Sufficiently Allege MEC's Involvement in the HID Ballasts Conspiracy

In its Motion, MEC attempts to dismember the Complaints' allegations pertaining to it and asserts that each allegation is insufficient to state a claim. *See* MELCO Mtn. at 8-9. MEC further claims that the Plaintiffs' Complaints "are devoid of any facts" showing a "larger picture from which inferences of a wider conspiracy can be drawn . . .." MELCO Mtn. at 8. This assertion is untrue. As detailed above, Plaintiffs allege a broad HID Ballast conspiracy to which three Defendants have pleaded guilty and that admittedly affected sales to major OEMs such as Honda, Mazda, Nissan, Toyota and Subaru, over a lengthy 11-12 year conspiracy period. The broad conspiracy supported by these guilty pleas is buttressed by allegations that Defendants,

███████████████████████████████████████████; that the HID Ballasts market structure and characteristics facilitate collusion; and that the Defendants were able to increase HID Ballasts prices in the face of declining demand for automotive vehicles.[4]

Courts in this and other districts have considered the use of plea agreements when pleading in civil cases, finding that "taken as part of the larger picture . . . these guilty pleas do

---

[4] The Mitsubishi Defendants quibble with Plaintiffs' allegations that in a competitive market, prices for HID Ballasts would not have increased in the face of declining demand for vehicles containing them. MELCO Mtn. at 9. But it is undisputed that HID Ballasts are included in the "vehicular lighting equipment" PPI Plaintiffs discuss. And, on a motion to dismiss, all reasonable inferences should be drawn in the non-moving party's favor, and any factual dispute regarding the propriety of Plaintiffs' market analysis is not properly resolved. *Wire Harness*, 2013 WL 2456584, at *3.

**REDACTED**

enhance the expectation that discovery might lead to evidence of [the more expansive conspiracy pled in the complaint] among these same actors." *In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987, 1011 (E.D. Mich. 2010).  Moreover, a guilty plea to price fixing one product in an industry has been found to support the plausibility of price fixing of another product in that same industry.  *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F.Supp.2d 896, 903 (N.D. Cal. 2008) (guilty pleas to fixing prices of DRAM [dynamic random access memory] supported inference of conspiracy to fix prices of SRAM); *accord Wire Harness*, 2013 WL 2456584, at *7.  In sum, as this Court explained in the *Tokai Rika Opinion*, a "guilty plea does not establish immutable boundaries within which antitrust claims alleged by [private plaintiffs] must remain."  2013 WL 2456013, at *3.  The larger picture painted by Plaintiffs' allegations is clearly one from which inferences of involvement by the Mitsubishi Defendants may be drawn.

In any event, Plaintiffs' MEC-specific allegations easily satisfy *Twombly* here.



Although MEC characterizes these allegations as "threadbare" (MELCO Mtn. at 9),

Second, Plaintiffs' allegations directly tie MEC to the HID Ballasts conspiracy by virtue of the MEC guilty plea that contains a criminal release and cooperation obligation as to any HID Ballasts conspiracy, among others.

Even assuming Plaintiffs made no allegations directly tying MEC to the conspiracy, "[d]irect evidence of conspiracy is not a sine qua non … circumstantial evidence can establish an

**REDACTED**

antitrust conspiracy." *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 629 (7th Cir. 2010). Plaintiffs' other allegations pertaining to MEC provide further support from which its involvement in the HID Ballasts conspiracy can be inferred.  First, Plaintiffs allege that MEC has pleaded guilty to similar antitrust conspiracies related to multiple other automotive parts. Second, the conspiracies to which MEC has pleaded guilty covered the time period 2000 to 2010 and therefore substantially overlap with the admitted HID Ballasts conspiracy (1998 to 2010). Third, the conspiracies in which MEC has admitted involvement targeted OEMs that overlap with those victimized by the HID Ballasts conspiracy (*e.g.*, Honda, Nissan, Subaru).  Fourth, MEC has admitted to destroying or altering documents in an effort to cover up its unlawful activity, which conduct was approved by senior MEC personnel in Japan, and several current and former MEC employees were recently indicted for obstruction of justice.  Finally, related Mitsubishi entities have pleaded guilty to price fixing of compressors and condensers sold to automobile manufacturers in the U.S. and elsewhere.

In light of the above allegations, which must be "viewed collectively and holistically", Plaintiffs have adequately pleaded their claims against MEC.  *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 368 (3d Cir. 2004), *cert. denied*, 544 U.S. 948 (2005); *see also Tokai Rika Opinion*, 2013 WL 2456013, at *2-3; *K-L Opinion*, 2013 WL 2456586, at *3; *SKF USA Opinion*, 2014 WL 4248430, at *4.

Finally, though Plaintiffs do not believe that factual issues outside the pleadings are properly raised on a motion to dismiss and believe such issues are properly addressed on a motion for summary judgment, Plaintiffs note that Defendants' argument that HID Ballasts are included in a small number of cars is erroneous. Exhibit A, for example, states that in 2005, HID headlamps, which require HID ballasts, were found in 95 models, including those made by Audi,

REDACTED

BMW, Cadillac, DaimlerChrysler, Ford, GMC, Honda, Jaguar, Lexus, Lincoln, Mercedes, Mitsubishi, Nissan, Porsche, Toyota and Volkswagen, and Volvo.

### D.     The Complaints Sufficiently Allege MEUS's and MEAA's Involvement in the HID Ballasts Conspiracy

This Court has recognized that "detailed allegations about the involvement of each Defendant are not needed" to defeat a motion to dismiss. *Wire Harness*, 2013 WL 2456584, at *7; *see also id.* at *4 (surviving a motion to dismiss "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement") (quoting *Twombly*, 550 U.S. at 556).  This Court has also acknowledged that "dismissal is not required merely because [plaintiffs] failed to allege an overt act against each individual Defendant." *Wire Harness*, 2013 WL 2456584, at *6.

As detailed above, Plaintiffs have adequately pleaded MEC's involvement in the HID Ballasts conspiracy.  The same is true with regard to MEC's U.S. subsidiaries, MEUS and MEAA.  First, Plaintiffs have expressly alleged that MEUS and MEAA "engag[ed] in a long-running conspiracy to unlawfully fix, artificially raise, maintain and/or stabilize prices, rig bids for, and allocate the market and customers in the United States for HID Ballasts."  EP CAC ¶ 1; AD CAC ¶1.  Second, Plaintiffs allege that MEC manufactured, marketed and sold HID Ballasts through MEUS and MEAA, and that MEC wholly-owned, controlled and/or directed the activities of its U.S. subsidiaries.  *See* EP CAC ¶ 93; AD CAC ¶ 124.  Third, MEUS and MEAA sold HID Ballasts within a market structure that allegedly facilitates and/or is susceptible to collusion.  Fourth, the Defendants that pleaded guilty to price-fixing HID Ballasts admitted doing so with regard to HID Ballasts sold to U.S. OEMs and for installation in vehicles manufactured in the U.S.  Fifth, MEC's plea agreement requires MEC *and its subsidiaries* to cooperate in the DOJ's investigation of HID Ballasts and other parts and that, in exchange, the

17

**REDACTED**

DOJ will refrain from criminally prosecuting MEC *and its subsidiaries* for price-fixing of HID Ballasts and other parts.  *See* § II.D., *supra*.  Sixth, the recently-filed indictment of several current and former MEC employees expressly charges that the MEC employees participated in an auto parts conspiracy from January 2000 to February 2010; that one of the MEC employees, served as a Vice President and President of MEUS's subsidiary, MEAA, during that time period; that the conspiracy was carried out, in part, in the U.S.; and that the FBI raided MEAA's sales offices in Michigan in July 2011.  *See* § II.D., *supra*.  Thus, MEC and MEAA have at least one common executive that is charged with price-fixing in the automotive parts industry.  Lastly, MEC has admitted to destruction of files and paper documents in the U.S. in an effort to cover up its unlawful activity.  *See* § II.E., *supra*.

The foregoing allegations, "viewed in their entirety" and in conjunction with the allegations detailed above pertaining to MEC, "support an inference that [MEUS and MEAA] participated in a price-fixing conspiracy aimed at the United States under the direction of [MEC]."  *SKF USA Opinion*, 2014 WL 4248430 at *4 (rejecting motion to dismiss by U.S. subsidiary); *see also Tokai Rika Opinion*, 2013 WL 2456013, at *2-3.  Indeed, as detailed above (*see* § III.B., *supra*), in the *Tokai Rika* and *SKF USA* Opinions, this Court upheld claims against U.S. subsidiaries based on allegations that are very similar to those asserted here.

The Mitsubishi Defendants' effort to distinguish this Court's ruling in the *Tokai Rika Opinion* (Motion, at 11-12) is unavailing.  For example, they claim that the foreign parent, Tokai Rika, pleaded guilty to antitrust violations (*id.*); nevertheless, so did MEC here.  The Mitsubishi Defendants assert that the U.S. government had raided TRAM's office and that Toka Rika pleaded guilty to conduct that occurred at TRAM.  *Id.*  That conduct, however, did not pertain to the wire harness parts conspiracy at issue in the motion, but instead pertained to heater control

REDACTED

panels.  *See Toka Rika Opinion*, 2013 WL 2456013, at *2.  Indeed, the Court expressly noted that Toka Rika employees, like MEC employees here, destroyed documents and electronic data and that there was no indication that the documents destroyed related only to heater control panels.  *Id*. at *3.

The Mitsubishi Defendants' further assertion that "Plaintiffs have alleged nothing against the [MEC] Subsidiaries except that they were owned and controlled by [MEC]" (MELCO Mtn. at 12) is untrue.  Plaintiffs' broader allegations of an overarching HID Ballasts conspiracy, their allegations regarding the market and product pricing characteristics that facilitate and/or are indicative of collusion, among others, apply with equal force to MEC, MEUS and MEAA, all of which participate in the HID Ballasts market.  Plaintiffs also specifically allege that MEC's guilty plea expressly implicates its U.S. subsidiaries by virtue of their cooperation obligations and release from criminal liability vis-à-vis HID Ballasts and other parts.  Finally, the recent indictment of a former MEC employee for unlawful price-fixing conduct while employed by MEAA and the indictment's reference to FBI raids of MEAA's Michigan office directly tie MEC's U.S. subsidiaries to MEC's efforts to fix prices in the automotive parts industry.  Thus, Plaintiffs' allegations and additional proofs here go beyond that which the Court relied upon in denying defendants' motion to dismiss TRAM in the *Wire Harness Cases*.

## IV.    PLAINTIFFS SUFFICIENTLY STATE A CLAIM FOR INJUNCTIVE RELIEF

Plaintiffs have adequately pleaded a significant risk that Defendants' unlawful pricing activities will persist or resume in the future.  Section 16 of the Clayton Act provides "[a]n antitrust plaintiff seeking injunctive relief need only show a threatened injury, not an actual one." *Eng'g Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1235 (9th Cir. 1998). Because the Complaints establish that Plaintiffs face "threatened loss or damage by a violation of the antitrust laws," 15 U.S.C. § 26 (emphasis added), Plaintiffs are entitled to injunctive relief.

19

REDACTED

Plaintiffs allege that Defendants have engaged in a "multi-year conspiracy" to fix and artificially raise the prices of HID Ballasts.  EP CAC ¶¶ 1-15; AD CAC ¶¶ 1-15.  Moreover, despite the multiple guilty pleas described above, there have been no public disclosures of the extent or nature of Defendants' plans for antitrust compliance.  The DOJ has not filed a civil action, and thus there will not be a government-imposed injunction.  Further, the Plaintiffs will continue to be exposed to harm from collusive input price increases in the future given long-standing supply relationships.  This Court held in *Wire Harness* that such allegations are sufficient to sustain a nationwide injunctive relief claim.  2013 WL 2456584, at * 13-15; *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 595-97 (N.D. Cal. 2010); *SRAM*, 264 F.R.D. 603, 610-11 (N.D. Cal. 2009); *In re Optical Disk Drive Antitrust Litig.*, 3:10-MD-2143 RS, 2012 WL 1366718, at *8 (N.D. Cal. Apr. 19, 2012).  The same holding is warranted here.

Defendants argue that because Plaintiffs alleged that the conspiracy was self-concealing, the fact that the alleged conspiracies are now public "means that they can no longer continue." MELCO Mtn. at 13.  This argument is unavailing.  Numerous Defendants have not pleaded guilty and deny involvement in the conspiracy.  Moreover, in *Wire Harness* this Court reasoned that "[s]peculation by Collective Defendants that the orders, pleas, and publicity will prevent further misconduct fails to demonstrate the threat of future injury is implausible, particularly in light of the length of the conspiracy alleged and the market conditions." *In re Automotive Parts Antitrust Litig. In re Wire Harness Cases*, No. 12-md-02311, Nos. 2:12-cv-00102, 2:12-cv-00103, 2013 WL 2456612, at *31 (E.D. Mich. June 6, 2013); *see also LCD*, 267 F.R.D. at 597.

Courts have also recognized that the presence of finite time periods in criminal pleas or class periods do not preclude a claim for injunctive relief.  *SRAM*, 264 F.R.D. at 611. Without

**REDACTED**

injunctive relief, Defendants could readily continue to sell and/or resume selling their products at supra-competitive prices, forcing repeat litigation by Plaintiffs. The Mitsubishi Defendants' motion to dismiss Plaintiffs' claims for injunctive relief should be denied.

## V.   PLAINTIFFS ADEQUATELY ALLEGE CONSTITUTIONAL STANDING

All the Defendants have filed a "Collective Motion to Dismiss End-Payors' and Auto Dealers' Consolidated Amended Class Action Complaints" in the HID Ballasts cases and in multiple other cases, setting forth their arguments in an "Omnibus Memorandum" (Doc. # 70).[5] The Collective Motion is the subject of a separate response by Plaintiffs.

The Mitsubishi Defendants assert that Plaintiffs' Complaints fail to allege that Plaintiffs have standing under Article III to assert their claims. Pursuant to the Stipulation and Order entered by the Court (ECF No. 19) (the "Stipulation"), the Plaintiffs incorporate by reference the arguments as to constitutional standing made in Plaintiffs' response to the Collective Motion filed contemporaneously herewith.

## VI.   PLAINTIFFS ADEQUATELY ALLEGE ANTITRUST STANDING UNDER *AGC*

The Mitsubishi Defendants assert that Plaintiffs fail to allege that they have antitrust standing under the principles announced in *Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983), and adopted by certain states under their antitrust statutes. Pursuant to the Stipulation, Plaintiffs incorporate by reference the arguments as to antitrust standing made in Plaintiffs' response to the Collective Motion.

---

[5] The Defendants' Collective Motion to Dismiss was filed in Case No. 12-md-2311, Nos. 2:13-cv-00802, 803, 1002, 1003, 1302, 1303, 1502, 1503, 1702, 1703, 1902, 1903, 2102, 2103, 2302, 2303, 2802, 2803 (E.D. Mich. Sept. 19, 2014).

**REDACTED**

## VII. PLAINTIFFS ADEQUATELY PLEAD THEIR STATE LAW ANTITRUST, CONSUMER PROTECTION, AND UNJUST ENRICHMENT CLAIMS

The Mitsubishi Defendants assert that, for a variety of reasons, Plaintiffs may not pursue their claims under state antitrust or consumer protection statutes or their state common law unjust enrichment claims. Pursuant to the Stipulation, Plaintiffs incorporate by reference the arguments as to the validity of Plaintiffs' state-law claims made in their response to the Collective Motion.

## VIII. STATE STATUTES OF LIMITATIONS DO NOT BAR PLAINTIFFS' CLAIMS

The Mitsubishi Defendants assert that many of Plaintiffs' claims are barred in whole or in part by the statutes of limitations applicable to their various claims. Pursuant to the Stipulation, Plaintiffs incorporate by reference the arguments as to state statutes of limitation made in their response to the Collective Motion.

## IX. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Mitsubishi Defendants' motion to dismiss be denied in its entirety.

Date:  November 3, 2014                      Respectfully submitted,

                                             */s/ Steven N. Williams*
                                             Frank C. Damrell
                                             Steven N. Williams
                                             Adam J. Zapala
                                             Elizabeth Tran
                                             **COTCHETT, PITRE & McCARTHY, LLP**
                                             San Francisco Airport Office Center
                                             840 Malcolm Road, Suite 200
                                             Burlingame, CA 94010
                                             Telephone: (650) 697-6000
                                             Facsimile: (650) 697-0577
                                             fdamrell@cpmlegal.com
                                             swilliams@cpmlegal.com
                                             azapala@cpmlegal.com
                                             etran@cpmlegal.com

                                             *s/ Hollis Salzman*

22

**REDACTED**

Hollis Salzman
Bernard Persky
William V. Reiss
**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
hsalzman@rkmc.com
bpersky@rkmc.com
wvreiss@rkmc.com

*s/ Marc M. Seltzer*
Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Warren T. Burns
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, Texas 75202
Telephone: (214) 754-1900
Facsimile: (214)754-1933
toxford@susmangodfrey.com
wburns@susmangodfrey.com

*Interim Co-Lead Class Counsel for the Proposed
End-Payor Plaintiffs Classes*

**REDACTED**

*/s/ E. Powell Miller*
E. Powell Miller
Adam T. Schnatz
**THE MILLER LAW FIRM, P.C.**
The Miller Law Firm, P.C.
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
epm@millerlawpc.com
ats@millerlawpc.com

*Interim Liaison Counsel for the Proposed End-Payor Plaintiffs Classes*

*/s/ Jonathan W. Cuneo*
Jonathan W. Cuneo
Joel Davidow
Victoria Romanenko
**CUNEO GILBERT & LADUCA, LLP**
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
jonc@cuneolaw.com
joel@cuneolaw.com
vicky@cuneolaw.com

*s/ Shawn M. Raiter*
Shawn M. Raiter
**LARSON • KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN  55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

*/s/ Don Barrett*
Don Barrett
David McMullan
Brian Herrington
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662) 834-2628

24

**REDACTED**

dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

*Interim Co-Lead Class Counsel for the Proposed
Automobile Dealer Plaintiff Classes*

*/s/ Gerard V. Mantese*
Gerard V. Mantese
David Hansma
Brendan Frey
Joshua Lushnat
**MANTESE HONIGMAN ROSSMAN AND
WILLIAMSON, P.C.**
1361 E. Big Beaver Road
Troy, MI 48083
Phone: (248) 457-9200 ext. 203
Fax: (248) 457-9201
gmantese@manteselaw.com
dhansma@manteselaw.com
bfrey@manteselaw.com
jlushnat@manteselaw.com

*Interim Liaison Counsel for the Proposed
Automobile Dealer Plaintiff Classes*