**REDACTED**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : Master File No. 12-md-02311 <br> : Honorable Marianne O. Battani <br> : |
| | : |
| In Re: HID BALLASTS | : <br> : <br> : |
| | : |
| This Document Relates to: | : 2:13-cv-01702-MOB-MKM <br> : 2:13-cv-01703-MOB-MKM |
| | : |
| All Automobile Dealer Actions <br> All End-Payor Actions | : <br> : **Oral Argument Requested** |

**END-PAYOR AND AUTO-DEALER PLAINTIFFS' JOINT OPPOSITION TO DEFENDANT ICHIKOH INDUSTRIES, LTD.'S MOTION TO DISMISS END-PAYOR AND AUTO DEALER PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION <u>COMPLAINTS</u>**

REDACTED

## TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ........................................................................... 1

II.  FACTUAL BACKGROUND............................................................................. 2

    A.  ICHIKOH PARTICIPATED IN CONSPIRATORIAL MEETINGS AND
        TARGETED THE UNITED STATES ........................................................2

    B.  ICHIKOH HAD DIRECT CONTACTS WITH THE U.S. ..............................................3

III.  ARGUMENT .................................................................................................. 4

    A.  LEGAL STANDARDS ..............................................................................4

    B.  THE COURT HAS SPECIFIC PERSONAL JURISDICTION OVER ICHIKOH..........6

        1.  Ichikoh Purposefully Availed Itself of the Privileges of Acting in the U.S.
            Because It Directly Participated in the Conspiracy to Fix the Price of HID
            Ballasts Sold in the U.S. ......................................................7

            a.  Ichikoh's Distribution Activities through the Stream of Commerce
               Satisfy the Purposeful Availment Requirement .............................7

            b.  Ichikoh's International Tortious Conduct Enhances Its Other Contacts
               with the U.S. ..................................................................8

            c.  Plaintiffs Have Stated Sufficient Facts to Satisfy the Conspiracy Theory
               of Jurisdiction ................................................................9

        2.  This Action Arises Out Of and Relates to Ichikoh's Contact ...............................11

        3.  Ichikoh Fails to Prove that the Exercise of Jurisdiction Over It is
            Unreasonable...................................................................12

    C.  ALTERNATIVELY, THE COURT SHOULD PERMIT PLAINTIFFS TO
        CONDUCT JURISDICTIONAL DISCOVERY ...........................................14

IV.  CONCLUSION ........................................................................................ 145

**REDACTED**

# TABLE OF AUTHORITIES

## Federal Cases

*Air Products and Controls, Inc. v. Safetech Intern., Inc.*,
  503 F.3d 544 (6th Cir. 2007) ..................................................................6

*Am. Greetings Corp. v. Cohn*,
  839 F.2d 1164 (6th Cir. 1988) ................................................................5

*Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano Cnty.*,
  480 U.S. 102 (1987)................................................................................7

*Bradford Co. v. Afco Mfg.*,
  No. 1:05-CV-449, 2006 WL 143343 (S.D. Ohio Jan. 19, 2006)............14

*Bridgeport Music, Inc. v. Still N The Water Pub.*,
  327 F.3d 472 (6th Cir. 2003) ..................................................................7

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)..........................................................................6, 13

*Calder v. Jones*,
  465 U.S. 783 (1984)................................................................................8

*Carrier Corp. v. Outokumpu Oyj*,
  673 F.3d 430 (6th Cir. 2012) ................................................................14

*Chrysler Corp. v. Fedders*,
  643 F. 2d 1229 (6th Cir. 1981) ..............................................................9

*Conti v. Pneumatic Products Corp.*,
  977 F.2d 978 (6th Cir. 1992) ..................................................................6

*Dean v. Motel 6 Operating L.P.*,
  134 F.3d 1269 (6th Cir.1998) ................................................................4

*Drexel Chem. Co. v. SGS Depauw & Stokoe*,
  59 F.3d 170 (6th Cir. 1995) ..................................................................14

*Eeelesiastical Order of the ISM. AM v. Chasin*,
  845 F.2d 113 (6th Cir. 1988) ..................................................................9

*Flagstar Bank, FSB v. Wounderberg*,
  No. 09-13437, 2010 WL 1027860 (E.D. Mich. Mar. 17, 2010) ............12

*General Motors Corp. v. Ignacio Lopez de Arriortua*,
  948 F.Supp. 656 (E.D. Mich. 1996)..................................................10, 11

*Helicopteros Nacionales de Columbia, S.A. v. Hall*,
  466 U.S. 408 (1984)................................................................................6

**REDACTED**

*Humble v. Toyota Motor Co.*,
727 F.2d 709 (8th Cir. 1984) ................................................................13

*In re Auto. Parts Antitrust Litig.*,
12-MD-02311, 2013 WL 2456611 (E.D. Mich. June 6, 2013) .......................................10, 11

*In re Auto. Parts Antitrust Litig.*,
12-MD-02311, 2013 WL 2456610 (E.D. Mich. June 6, 2013) .............................................11

*In re Auto. Parts Antitrust Litig.*,
12-MD-02311, 2014 WL 2999271 (E.D. Mich. July 3, 2014) .......................................10, 11

*In re Packaged Ice Antitrust Litig.*,
723 F.Supp.2d 987 (E.D. Mich. 2010)..................................................................5, 14

*IMO Indus., Inc. v. Kiekert AG*,
155 F.3d 254 (3d Cir.1998)........................................................................9

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945)................................................................................5

*Med. Mut. Of Ohio v. deSoto*,
245 F.3d 561 (6th Cir. 2001) ......................................................................5

*Miller v. AXA Winterthur Ins. Co.*,
694 F.3d 675 (6th Cir. 2012) .....................................................................13

*Recaro N. Am., Inc. v. Holmbergs Childsafety Co.*,
No. 09-12256, 2010 WL 1658033 (E.D. Mich. Apr. 23, 2010) .................................11, 12, 13

*Serras v. First Tennessee Bank Nat'l Ass'n*,
875 F.2d 1212 (6th Cir.1989) .....................................................................5

*Southern Machine Co. v. Mohasco Industries, Inc.*,
401 F.2d 374 (6th Cir. 1968) .....................................................................6

*Technology & Servs., Inc. v. TACS Automation, LLC*,
No. 2:09-cv-1113, 2010 WL 2640047 (S.D. Ohio June 29, 2010)......................................14

*Theunissen v. Matthews*,
935 F.2d 1454 (6th Cir. 1991) ..................................................................5, 14

*Thompson Trading Ltd. v. Allied Lyons PLC*,
124 F.R.D. 534 (D.R.I. 1989) ....................................................................11

*Weather Underground, Inc. v. Navigation Catalyst Sys., Inc.*,
688 F. Supp. 2d 693 (E.D. Mich. 2009)............................................................10

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980)................................................................................7

**REDACTED**

**<u>Federal Rules and Statutes</u>**

Fed. R. Civ. P 12(b)(2)................................................................................1, 4

15 U.S.C. § 1................................................................................................5

15 U.S.C. § 22..............................................................................................5

**REDACTED**

## <u>STATEMENT OF ISSUE PRESENTED</u>

Whether the allegations in Auto Dealer and End-Payor Plaintiffs' ("Plaintiffs") Complaints and other facts of record are sufficient to allow the Court to exercise specific personal jurisdiction over Ichikoh Industries, Ltd. ("Ichikoh"), where (i) Ichikoh intentionally entered into the U.S. automobile market by placing its products in the stream of commerce with the intent to target U.S. customers; (ii) Ichikoh directly participated in a price-fixing and bid-rigging conspiracy intending to affect the price of High Intensity Discharge ("HID") Ballasts sold in the U.S; and (iii) Ichikoh expressly aimed tortious conduct at the United States and caused harm in the United States.

**REDACTED**

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

Fed. R. Civ. P 12(b)(2)

*Air Products and Controls, Inc. v. Safetech Intern., Inc.,* 503 F.3d 544 (6th Cir. 2007)

*Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472 (6th Cir. 2003).

*Calder v. Jones,* 465 U.S. 783 (1984)

*Carrier Corp. v. Outokumpu Oyj,* 673 F.3d 430 (6th Cir. 2012)

*General Motors Corp. v. Ignacio Lopez de Arriortua,* 948 F.Supp. 656 (E.D. Mich. 1996)

*In re Packaged Ice Antitrust Litig.*, 723 F.Supp.2d 987 (E.D. Mich. 2010)

*Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968)

*Theunissen v. Matthews,* 935 F.2d 1454 (6th Cir. 1991)

REDACTED

## I.      INTRODUCTION

The End-Payor and Automobile Dealership Plaintiffs ("Plaintiffs") submit this brief in Opposition to Defendant Ichikoh Industries, Ltd.'s ("Ichikoh") motion under Rule 12(b)(2) to dismiss Plaintiffs' Consolidated Amended Class Action Complaints (the "CACs").

Defendant Ichikoh is a Japanese company which manufactures lighting equipment and rearview mirrors for automobiles.  Plaintiffs allege that Defendant Ichikoh is a primary participant in a long-running global conspiracy to fix, maintain, and/or stabilize the prices of, rig bids for, and allocate market and customers for HID Ballasts sold directly and indirectly to dealerships and consumers in the United States.  Ichikoh has been found to have violated antitrust laws by forming a cartel to fix prices of automotive lamps and was fined $13.1 million by the Japan Fair Trade Commission ("JFTC") on March 21, 2013.  Later in the same year and in early 2014, several of Ichikoh's coconspirators pled guilty for rigging bids for and fixing the prices of HID Ballasts sold to automobile manufacturers in the United States.

Despite the fact that Ichikoh has actively marketed and distributed HID Ballast products which were sold in the United States and reaped unlawful antitrust profits from its U.S. sales, Ichikoh seeks dismissal for lack of personal jurisdiction under Rule 12(b)(2).  Ichikoh submits two declarations purporting to show that it has never controlled the operations of its two former U.S. subsidiaries (Ichikoh Manufacturing Inc. ("IMI") and Ichikoh Mitsuba Inc. ("IMIC")) and its U.S. business alliance (Valeo).  Ichikoh also asserts that it has no direct U.S. contacts.  For the reasons set forth herein, Ichikoh's motion should be denied.  Plaintiffs' allegations are based on Ichikoh's direct contacts with the United States, rather than Ichikoh's indirect contacts through its subsidiaries or affiliates.   This Court's prior rulings in *Wire Harness* and *Bearings* cases are distinguishable to the extent the plaintiffs in those cases have failed to show sufficient control by a parent company defendant over its U.S. subsidiaries.  Here, Plaintiffs have established a *prima*

1

REDACTED

*facie* case of personal jurisdiction and specifically alleged Ichikoh's direct participation in the conspiracy. Alternatively, the Court should defer ruling on the motion until there is a fully-developed factual record after discovery on the jurisdiction issue.

## II.    FACTUAL BACKGROUND

### A.    ICHIKOH PARTICIPATED IN CONSPIRATORIAL MEETINGS AND TARGETED THE UNITED STATES

Plaintiffs allege that since at least 1998 major manufacturers and suppliers of automotive HID Ballasts participated in an unlawful conspiracy to rig bids for, fix, maintain, and/or stabilize the prices of HID Ballasts sold in the United States. Plaintiffs allege that Ichikoh participated directly in the unlawful conspiracy, that Ichikoh's anticompetitive conduct was directed at the U.S., and that the putative classes were injured by this conduct. The Complaints allege the following specific facts:

- Ichikoh and its coconspirators participated in meetings, conversations, and communications in the U.S. and elsewhere to discuss and agree on the bids and price quotations of HID Ballasts to be submitted to automobile manufacturers in the U.S. EP CAC ¶¶ 128, 133, 136; AD CAC, ¶¶ 162, 169, 172.

- Ichikoh and its coconspirators agreed during those meetings, conversations, and communications to allocate the supply of HID Ballasts sold to automobile manufacturers in the U.S. EP CAC ¶¶ 128, 133, 136; AD CAC ¶¶ 162, 169, 170, 172.

- Ichikoh and its coconspirators agreed during those meetings, conversations, and communications to coordinate price adjustments requested by automobile manufacturers in the U.S. AD CAC ¶¶ 170, 172.

- Ichikoh and its coconspirators held meetings and conversations in the U.S. to monitor and police the agreed-upon-bid-rigging and price-fixing scheme. AD CAC ¶ 162.

- Ichikoh and its coconspirators performed acts in furtherance of their conspiracy, including (a) participating in meetings and conversations in the U.S. to agree to HID Ballast price levels or otherwise fix the prices of HID Ballasts sold in the U.S.; (b) allocating customers and markets in the U.S. in furtherance of their agreements; (c) participating in meetings and conversations in the U.S. to implement the unlawful agreements they reached. EP CAC ¶ 226; AD CAC ¶ 269.

2

**REDACTED**

- ████████████████████████████

- Ichikoh and its coconspirators' anticompetitive acts were intentionally directed at the U.S. market and had a substantial and foreseeable effect on interstate commerce by raising and fixing prices for HID Ballasts throughout the U.S.  EP CAC ¶ 215; AD CAC ¶ 254.

Ichikoh and its coconspirators sold a substantial amount of HID Ballast products in the United States.  The sales by Ichikoh and its coconspirators of products allegedly subject to the bid-rigging, price-fixing conspiracy are acts in furtherance of the conspiracy that occurred in the United States.

### B.    ICHIKOH HAD DIRECT CONTACTS WITH THE U.S.

Based on publicly-available information, Plaintiffs demonstrate the following direct contacts by Ichikoh with the United States:

- Ichikoh maintains an English language website at http://www.ichikoh.com/english/index_e.html, which describes the company, its relationship with two U.S. subsidiaries, IMI and IMIC and business alliance Valeo, its principal clients, and OEM products.

- Ichikoh supplies HID headlamps containing HID ballasts as a component part in various OEM products, including Nissan Juke, and Subaru Impreza, which are sold in the U.S. market.  *See* Declaration of Steven N. Williams in Support of End-Payor and Auto-Dealer Plaintiffs' Request for Judicial Notice and in Support of Joint Opposition to Defendant Ichikoh Industries, Ltd.'s Motion to Dismiss the Consolidated Amended Class Action Complaints. ("Williams Decl."), Ex. 1, *Product Information – OEM Products, available at* http://www.ichikoh.com/english/products/oem.html.

- Before 2000, Ichikoh was 20.6% owned by Nissan, which has an established distribution chain that imports automobiles manufactured in Japan into the U.S., as well as Nissan's light assemblies into the U.S. for incorporation into Nissan automobiles that are sold in the U.S.  Ichikoh was an established part of Nissan's manufacturing chain doing forty percent of its total work for Nissan.  *See* Williams Decl. Ex. 2, *Globalization of the Japanese Automobile Industry and Reorganization of Keiretsu-Suppliers,* at 33 (chart showing suppliers affiliated to Nissan).

2:13-cv-01702-MOB   Doc # 86   Filed 11/04/14   Pg 11 of 24   Pg ID 1159

REDACTED

- Ichikoh sold its HID headlamps to the U.S. market at supracompetitive price levels. On March 21, 2013, the JFTC announced that it had leveled a $13.1 million fine against Ichikoh for fixing prices of automotive lamps, including headlamps which contain HID ballasts as a component part.   EP CAC ¶ 125; AD CAC ¶ 159; Williams Decl., Ex. 3, Press Release, *The JFTC Issued Cease and Desist Orders and Surcharge Payment Orders to Participants in Bid-Rigging Conspiracies for Automotive Headlamps and Rear Combination Lamps* (Mar. 22, 2013).

- A search in the U.S. Patent Database shows about 200 patent applications by Ichikoh in the U.S., almost of all which relate to automotive lighting devices, including HID headlamps. *See* http://appft.uspto.gov/netacgi/nph-Parser?Sect1=PTO2&Sect2=HITOFF&u=%2Fnetahtml%2FPTO%2Fsearch-adv.html&r=0&p=1&f=S&l=50&Query=%22Ichikoh+industries%22&d=PG01.

- Ichikoh has actively marketed and distributed its products in the U.S. In 2000, Valeo purchased Nissan's 21% interest in Ichikoh and formed a strategic partnership with Ichikoh in lighting products and systems. *See* Williams Decl., Ex. 4, Press Release, *Valeo and Ichikoh:  Strategic Alliance in Lighting Systems* (Apr. 17, 2000).   Ichikoh also formed a "capital alliance" with Valeo Sylvania in Seymour, Indiana, which is 50% owned by Valeo and sells HID Ballasts throughout the U.S.   AD CAC ¶ 116; Williams Decl., Ex. 5, *Valeo 2000 Annual Report*; Williams Decl., Ex. 6, *Ichikoh Global Business Operation Map*; Williams Decl., Ex. 7, *M&A Case Studies for "Invest Japan"* (JETRO Mar. 2004), at 28 (stating that Ichikoh "plays a role in expanding Valeo's network in North America").

- Ichikoh shipped a substantial amount of its products to the U.S. directly, including automotive lighting devices.   Williams Decl., Ex. 8 (examples of 2013-14 bills of ladings showing Ichikoh's shipments to U.S. locations).

These substantiated direct contacts demonstrate that Ichikoh has made a deliberate decision to market, sell and/or distribute its HID Ballast products in the United States.

## III.    ARGUMENT

### A.    LEGAL STANDARDS

When presented with a Rule 12(b)(2) motion to dismiss, a district court, in its discretion, has three procedural alternatives: (1) "[it] may determine the motion on the basis of affidavits alone;" (2) "it may permit discovery in aid of the motion;" or (3) "it may conduct evidentiary hearing on the merits of the motion." *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th

**REDACTED**

Cir.1998) (quoting *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir.1989)).

If the Court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than resolving the motion after either an evidentiary hearing or limited discovery, the burden on the plaintiffs is "relatively slight," *Am. Greetings Corp. v. Cohn,* 839 F.2d 1164, 1169 (6th Cir. 1988), and the plaintiffs need only present a *prima facie* case in support of the exercise of jurisdiction over a defendant. *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991); *In re Packaged Ice Antitrust Litig.,* 723 F. Supp. 2d 987, 1019 (E.D. Mich. 2010).  In that instance, the pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiffs, and the Court should not consider any controverting assertions submitted by Ichikoh. *Id.* at 1459.

Plaintiffs allege that Ichikoh, a Japanese corporation, and its coconspirators engaged in a long-running conspiracy to rig bids for and fix the price of HID Ballasts sold in the United States since 1998, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  The Court may exercise personal jurisdiction over a nonresident defendant if the defendant has minimum contacts with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (citation and quotations omitted).

Here, the relevant forum for the Court's minimum contacts analysis is the United States, because 15 U.S.C. § 22 authorizes service of process over an antitrust defendant "wherever it may be found." *Med. Mut. Of Ohio v. deSoto,* 245 F.3d 561, 566-67 (6th Cir. 2001) (where statute authorizes nationwide service of process, national contacts analysis is appropriate).

REDACTED

### B.   THE COURT HAS SPECIFIC PERSONAL JURISDICTION OVER ICHIKOH[1]

A court may exercise specific jurisdiction over a defendant where the cause of action is related to the defendant's contacts with the forum.  *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).  In performing this analysis, the Sixth Circuit applies a three-part test: "First, the [non-resident] defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."  *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968) (the "*Southern Machine* test").

Once Plaintiffs satisfy the first two prongs, the burden shifts to Ichikoh to set forth a "compelling case" that the exercise of jurisdiction would not be reasonable. *Air Products and Controls, Inc. v. Safetech Intern., Inc.,* 503 F.3d 544, 554 (6th Cir. 2007); *see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476-78 (1985).  Moreover, the Sixth Circuit has adopted a flexible approach that allows Plaintiffs to make a "lesser showing of minimum contacts" if considerations of reasonableness dictate.  *Conti v. Pneumatic Products Corp.,* 977 F.2d 978, 986 (6th Cir. 1992).

Ichikoh is subject to specific jurisdiction because it directly participated in a price-fixing and bid-rigging conspiracy intending to affect the price of HID Ballasts sold in the U.S.  Ichikoh has purposefully availed itself of acting in the United States by intentionally entering into the

---

[1]  For purpose of this motion, Plaintiffs do not argue that there is general jurisdiction over Ichikoh, or that Ichikoh was the alter ego of its U.S. subsidiaries or affiliates.  *See* Def. Br. 7-10.  However, should the court grant Plaintiff jurisdictional discovery as requested in Part III.C. of this brief, Plaintiffs specifically reserve the right to raise those issues at a later date after conducting jurisdictional discovery.

REDACTED

United States automobile market, by furthering its scheme through contacts with the U.S., and by placing its products in the stream of commerce with the intent to target U.S. customers. Ichikoh's price-fixing of HID Ballasts that were sold in the stream of commerce of the United States and to American purchasers shows that the cause of action arises from Ichikoh's activities in the United States.  It is reasonable for this Court to exercise personal jurisdiction over Ichikoh.

> **1.     Ichikoh Purposefully Availed Itself of the Privileges of Acting in the U.S. Because It Directly Participated in the Conspiracy to Fix the Price of HID Ballasts Sold in the U.S.**
>
> > **a.     *Ichikoh's Distribution Activities through the Stream of Commerce Satisfy the Purposeful Availment Requirement***

A defendant may be subject to jurisdiction without physical presence in the forum, if it places goods into the stream of commerce with the expectation that they will be purchased by consumers within the forum.  *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 298 (1980).  The plurality opinion in *Asahi* states that "placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State."  *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano Cnty.*, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)  (O'Connor, J.) (plurality opinion).  The Sixth Circuit has adopted this stream of commerce "plus" approach to analyzing purposeful availment.  *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 479 (6th Cir. 2003).

Ichikoh's corporate website touts itself as the supplier of HID headlamps in various Japanese car models, with the knowledge that some of these models are being sold in the United States.  In particular, Ichikoh's customers include Nissan, Toyota, Subrau and Honda, all of which have established distribution channels in the United States through their U.S. subsidiaries. *See* EP CAC ¶ 85; AD CAC ¶ 116.  For example, prior to 2000, Ichikoh was a Nissan subsidiary and a key supplier of lighting products to Nissan, which has a wholly-owned distributor (Nissan

REDACTED

North America, Inc.) and three production plants in the U.S.  *See* Nissan Corporate Info, *available at* http://www.nissanusa.com/about/corporate-info.html.    Ichikoh's deliberate decisions to market HID headlamps to these Japanese automobile makers with the intention for them to be sold in the U.S. is sufficient to support a finding of purposeful availment.  Ichikoh also directly distributed its lighting products to Valeo Sylvania and other business entities in the U.S.  *See, e.g.,* Williams Decl., Ex. 8 (examples of 2013-14 bills of ladings showing Ichikoh's shipments to U.S. locations).  From these commercial relationships, it can be presumed that the distribution channel formed by Ichikoh with Nissan, Valeo Sylvania and other U.S. entities was intentionally established, and that Ichikoh purposely directed its sales activities at the U.S.

### b.   *Ichikoh's Intentional Tortious Conduct Enhances Its Other Contacts with the U.S.*

A court can exercise personal jurisdiction over a defendant who has no ordinary contacts with the forum in question but who has "expressly aimed" tortious conduct at the forum and the "brunt of harm" is felt there.  *Calder v. Jones,* 465 U.S. 783 (1984).  In *Calder*, a libel case, even though the allegedly defamatory article was written and edited in Florida and one the defendants had only been to California twice, the Court explained that the defendants knew that the focal point of the article as well as the "brunt of the harm" would be in California, and, therefore, jurisdiction was proper based on the "effects" of the Florida conduct in California.  *Id.* at 789-90.  Like the libel in *Calder*, an antitrust violation is a tort-based, intentional act that has a direct effect on the plaintiff.  The fact that global price fixing is often directed at many national markets and does not have an exclusive geographic focus does not make the *Calder* test inapplicable.

Here, Plaintiffs set forth a *prima facie* case that Ichikoh and its coconspirators (both in and outside the U.S.) engaged in big rigging and price fixing specifically for the purpose of inflating the price of HID Ballasts sold in the United States.  The specific facts alleged in the

8

REDACTED

Complaints clearly demonstrate that Ichikoh and its coconspirators specifically aimed their anticompetitive conduct at the U.S. markets and succeeded in increasing the price of HID Ballasts to the damage of Plaintiffs' classes.  *See* EP CAC ¶¶ 1, 4, 9-10, 12, 85, 103, 127-128, 132-136, 156, 163, 215, 219;  AD CAC ¶¶ 1, 4, 6, 8, 9-10, 12, 116, 136, 161-162, 168-172, 188, 195, 254, 258.  ███████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████

Ichikoh and its coconspirators foresaw and clearly intended that their anticompetitive conduct would have affected the pricing of HID Ballasts sold throughout the United States. Allegations that the conspiracy targeted the United States enhance Ichikoh's other contacts in the jurisdiction analysis.  *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 260 (3d Cir.1998) ("Generally speaking, under *Calder*, an intentional tort directed at the plaintiff and having sufficient impact upon it in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied.").

c.    ***Plaintiffs Have Stated Sufficient Facts to Satisfy the Conspiracy Theory of Jurisdiction***

Specific personal jurisdiction may be exercised over a non-resident defendant based upon the forum contacts of a coconspirator.  The "conspiracy theory" of personal jurisdiction has neither been adopted nor rejected by the Sixth Circuit Court of Appeals.  *See, e.g., Chrysler Corp. v. Fedders*, 643 F. 2d 1229, 1237 (6th Cir. 1981); *Eeelesiastical Order of the ISM. AM v. Chasin*, 845 F.2d 113, 116 (6th Cir. 1988).   However, this District Court has officially recognized the "conspiracy theory" as a basis for exercising personal jurisdiction over a foreign defendant.  "Because the acts of a conspirator in furtherance of the conspiracy may be attributed

9

**REDACTED**

to the other members of the conspiracy, a nonresident coconspirator may be sued for the acts of the resident coconspirators. *General Motors Corp. v. Ignacio Lopez de Arriortua,* 948 F.Supp. 656, 664-65 (E.D. Mich. 1996) (finding personal jurisdiction over alien defendants based on conspiracy theory) (internal citations omitted).[2]

The court in *General Motors* recognized that mere unsupported claims of conspiracy do not support jurisdiction, but the court also recognized that it would not be fair to require plaintiff to plead detailed, specific facts supporting the conspiracy prior to discovery. 948 F.Supp. at 664. In *General Motors,* the court held allegations that the employees of Volkswagen had conspired with the former employees of GM to be sufficient to grant personal jurisdiction over those persons under the conspiracy theory of jurisdiction, even though the Volkswagen employees had no contact with Michigan. *Id.* at 665-66.

Here, Plaintiffs make specific allegations that coconspirators Panasonic Corporation, Stanley Electric Co. Ltd., and Koito Manufacturing Co. Ltd. have pled guilty for carrying out the HID Ballast conspiracy in the United States. *See* EP CAC ¶¶ 128, 133, 136; AD CAC ¶¶ 162, 169, 172. The plea agreements show that these coconspirators had significant contacts with the U.S. through the supply and distribution of HID Ballast products to U.S. automotive manufacturers. *See* Williams Decl., Ex. 9, Panasonic Corp. Plea Agreement, ¶¶ 2, 4; Williams Decl., Ex. 10, Stanley Electric Co. Ltd. Plea Agreement, ¶ 4; Williams Decl., Ex. 11, Koito Manufacturing Co. Ltd. Plea Agreement, ¶ 4. ███████████

---

[2] This Court has previously declined to exercise personal jurisdiction based on the conspiracy theory because the plaintiffs have advanced no binding authority. *In re Auto. Parts Antitrust Litig.,* 12-MD-02311, 2013 WL 2456611, at *3 (E.D. Mich. June 6, 2013) (citing *Weather Underground, Inc. v. Navigation Catalyst Sys., Inc.,* 688 F. Supp. 2d 693, 696 (E.D. Mich. 2009); *In re Auto. Parts Antitrust Litig.,* 12-MD-02311, 2014 WL 2999271, at *6 (E.D. Mich. July 3, 2014) (same). Plaintiffs refer this Court to the *General Motors* decision in which the Court explicitly endorsed the conspiracy theory of jurisdiction.

REDACTED

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

Ichikoh also participated in a cartel to fix prices for automotive lamps, some of which contain HID Ballasts as a component part.  *See* EP CAC ¶ 125-26; AD CAC ¶ 159-60.  At the pleading stage, such allegations are specific enough to withstand a motion to dismiss for jurisdictional purpose.  "It is not fair to require a plaintiff to plead specific facts proving conspiracy before discovery," because "[c]onspiracy is an activity which by its very nature is secretive."  *General Motors,* 948 F.Supp. at 664 (citing *Thompson Trading Ltd. v. Allied Lyons PLC,* 124 F.R.D. 534, 535 (D.R.I. 1989)).

Unlike the *Wire Harness* and *Bearings* Complaints in which the Court found insufficient allegations against the foreign defendants to establish personal jurisdiction, the HID Ballast Plaintiffs have provided a sufficient showing of Ichikoh's involvement in the conspiracy, contacts by its coconspirators in the United States, and the fact that Ichikoh benefited from its coconspirators act in the United States.  Plaintiffs thus sufficiently alleged purposeful availment under the *Southern Machine* test.  *Compare In re Auto. Parts Antitrust Litig.,* 12-MD-02311, 2014 WL 2999271, *6 (E.D. Mich. July 3, 2014); *In re Auto. Parts Antitrust Litig.*, 12-MD-02311, 2013 WL 2456611, *3 (E.D. Mich. June 6, 2013); *In re Auto. Parts Antitrust Litig.*, 12-MD-02311, 2013 WL 2456610, *7 (E.D. Mich. June 6, 2013).

2.      **This Action Arises Out Of and Relates to Ichikoh's Contact**

The requirement that Plaintiffs' causes of action arise from Ichikoh's activities in the forum state is a "lenient standard" and "should not be construed too strictly."  *Recaro N. Am., Inc. v. Holmbergs Childsafety Co.*, 09-12256, 2010 WL 1658033, at *8 (E.D. Mich. Apr. 23, 2010).  The cause of action need not "formally" arise from a defendant's contact with the forum

REDACTED

state.  All that is required is that the cause of action has "'[a] substantial connection with [a] defendant's in-state activities." *See id.* (internal citation omitted). This standard is satisfied where "Plaintiff's claims would not have occurred in absence of [the] specific targeting of Plaintiff's business." *Id.*

Here, there is a direct link between Ichikoh's actions in the United States that create personal jurisdiction and Plaintiffs' causes of action.   These actions include, but are not limited to Ichikoh's direct shipments of its HID lamp products to the U.S., Ichikoh's sales of price-fixed HID Ballast products to OEMs who are known to have comprehensive distribution channels in the United States, and Ichikoh's business transactions with its U.S. affiliates who sell HID Ballasts throughout the U.S.  In addition, to the extent that Ichikoh's big-rigging and price-fixing activity was directed at the U.S. market with intent to injure the U.S. automotive purchasers, Plaintiffs' cause of action is directly related to Ichikoh's conspiratorial conduct.   Accordingly, the present action arises both from Ichikoh's contact with the U.S. as well as actions directed at the U.S.

### 3.      Ichikoh Fails to Prove that the Exercise of Jurisdiction Over It is Unreasonable

There is an inference of reasonableness that arises when the first two due process criteria are met such that "only the unusual case will not meet this third criteria." *Flagstar Bank, FSB v. Wounderberg*, No. 09-13437, 2010 WL 1027860, *5 (E.D. Mich. Mar. 17, 2010) (Battani, J. (internal quotations omitted).  In determining whether the exercise of jurisdiction is reasonable, the court considers the burden on the defendant, the interest of the forum, the plaintiff's interest in obtaining relief, and the interests of other states in securing the most efficient resolutions of controversies.  *Recaro*, 2010 WL 1658033, at *8. "[T]he Sixth Circuit has routinely upheld specific jurisdiction in cases even when doing so forces the defendant to travel to the forum

**REDACTED**

state[.]"  *Id.* (citations omitted).  This logic flows from the Supreme Court of the United States: when a defendant directs activity at a forum, it "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

With numerous global business operations and annual net sales exceeding a billion US dollars, Ichikoh represents itself as "No. 2 in the world market share for automotive lamps" and as "No. 1 for automotive mirrors."  Williams Decl., Ex. 6, *Ichikoh Global Business Operation Map*; Williams Decl., Ex. 12, *Ichikoh 2008 Annual Report*, at 33.  Thus, the burden on Ichikoh of defending in a U.S. court is relatively small.  In addition, Ichikoh's conduct was directed at the United States and harmed U.S. automotive auto-dealers and consumers.  As such, the United States has a significant interest in adjudicating the dispute.  Moreover, this Court will be the most efficient forum and is critical to affording Plaintiffs convenient and efficient relief, especially in light of the fact that Japanese courts permit only limited discovery and no class proceedings may be brought in Japan.

Ichikoh's reliance on *Miller* and *Humble* ignores the distinguishable facts in those cases.  In *Miller*, the court found that it would not be reasonable to exercise personal jurisdiction over a defendant where the contract at issue was created under Swiss law, all the underlying events occurred in Switzerland and the insurance policy at issue included a Swiss forum selection clause and a Swiss choice of law provision.  *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 681 (6th Cir. 2012).  In *Humble*, the court found no personal jurisdiction over a Japanese company in a personal injury suit, where the Japanese defendant did not manufacture the alleged defective product.  *Humble v. Toyota Motor Co.*, 727 F.2d 709, 711 (8th Cir. 1984).

REDACTED

## C.    ALTERNATIVELY, THE COURT SHOULD PERMIT PLAINTIFFS TO CONDUCT JURISDICTIONAL DISCOVERY

Plaintiffs submit that Ichikoh's motion can and should be denied based upon the record before the Court.  Should the Court not agree that jurisdiction is appropriate as a matter of law, Plaintiffs respectively request that they be permitted to conduct jurisdictional discovery.  *Carrier Corp. v. Outokumpu Oyj,* 673 F.3d 430, 449 (court may permit discovery in aid of deciding the motion, or conduct an evidentiary hearing to resolve any apparent factual questions) (citing *Theunissen v. Matthews,* 935 F.2d 1454, 1458); *In re Packaged Ice Antitrust Litig.,* 723 F. Supp. 2d 987, 1019 (deferring ruling on motion to dismiss for lack of personal jurisdiction until plaintiffs have had an opportunity to conduct jurisdictional discovery); *Bradford Co. v. Afco Mfg*., No. 1:05-CV-449, 2006 WL 143343, at *4–5 (S.D. Ohio Jan. 19, 2006) ("Where the district court concludes that the record is insufficient to support personal jurisdiction, it may allow discovery"); *Technology & Servs., Inc. v. TACS Automation, LLC*, No. 2:09-cv-1113, 2010 WL 2640047, *3 (S.D. Ohio June 29, 2010); *Drexel Chem. Co. v. SGS Depauw & Stokoe*, 59 F.3d 170,  at *2 (6th Cir. 1995).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that they have presented a *prima facie* case establishing personal jurisdiction over Ichikoh.  Therefore, Ichikoh's motion should be denied.  If, however, the Court were to conclude that the Complaints and other jurisdictional facts are not sufficient to allow it to determine presently whether the assertion of personal jurisdiction over Ichikoh would comport with due process, Plaintiffs request that the Court defer ruling on Ichikoh's motion until after the completion of jurisdictional discovery.

**REDACTED**

Date:  November 3, 2014                    Respectfully submitted,

                                           */s/ Steven N. Williams*
                                           Frank C. Damrell
                                           Steven N. Williams
                                           Adam J. Zapala
                                           Elizabeth Tran
                                           **COTCHETT, PITRE & McCARTHY, LLP**
                                           San Francisco Airport Office Center
                                           840 Malcolm Road, Suite 200
                                           Burlingame, CA 94010
                                           Telephone: (650) 697-6000
                                           Facsimile: (650) 697-0577
                                           fdamrell@cpmlegal.com
                                           swilliams@cpmlegal.com
                                           azapala@cpmlegal.com
                                           etran@cpmlegal.com

                                           *s/ Hollis Salzman*
                                           Hollis Salzman
                                           Bernard Persky
                                           William V. Reiss
                                           **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
                                           601 Lexington Avenue, Suite 3400
                                           New York, NY 10022
                                           Telephone: (212) 980-7400
                                           Facsimile: (212) 980-7499
                                           hsalzman@rkmc.com
                                           bpersky@rkmc.com
                                           wvreiss@rkmc.com

                                           *s/ Marc M. Seltzer*
                                           Marc M. Seltzer
                                           Steven G. Sklaver
                                           **SUSMAN GODFREY L.L.P.**
                                           1901 Avenue of the Stars, Suite 950
                                           Los Angeles, CA 90067-6029
                                           Telephone: (310) 789-3100
                                           Facsimile: (310) 789-3150
                                           mseltzer@susmangodfrey.com
                                           ssklaver@susmangodfrey.com

                                           Terrell W. Oxford
                                           Warren T. Burns
                                           **SUSMAN GODFREY L.L.P.**
                                           901 Main Street, Suite 5100

15

**REDACTED**

Dallas, Texas 75202
Telephone: (214) 754-1900
Facsimile: (214)754-1933
toxford@susmangodfrey.com
wburns@susmangodfrey.com

*Interim Co-Lead Class Counsel for the Proposed End-Payor Plaintiffs Classes*

/s/ E. Powell Miller
E. Powell Miller
Adam T. Schnatz
**THE MILLER LAW FIRM, P.C.**
The Miller Law Firm, P.C.
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
epm@millerlawpc.com
ats@millerlawpc.com

*Interim Liaison Counsel for the Proposed End-Payor Plaintiffs Classes*

/s/ Jonathan W. Cuneo
Jonathan W. Cuneo
Joel Davidow
Victoria Romanenko
**CUNEO GILBERT & LADUCA, LLP**
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
jonc@cuneolaw.com
joel@cuneolaw.com
vicky@cuneolaw.com

s/ Shawn M. Raiter
Shawn M. Raiter
**LARSON • KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN  55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

/s/ Don Barrett

16

**REDACTED**

> Don Barrett
> David McMullan
> Brian Herrington
> **BARRETT LAW GROUP, P.A.**
> P.O. Box 927
> 404 Court Square
> Lexington, MS 39095
> Telephone: (662) 834-2488
> Facsimile: (662) 834-2628
> dbarrett@barrettlawgroup.com
> bherrington@barrettlawgroup.com
> dmcmullan@barrettlawgroup.com
>
> *Interim Co-Lead Class Counsel for the Proposed*
> *Automobile Dealer Plaintiff Classes*
>
> */s/ Gerard V. Mantese*
> Gerard V. Mantese
> David Hansma
> Brendan Frey
> Joshua Lushnat
> **MANTESE HONIGMAN ROSSMAN AND**
> **WILLIAMSON, P.C.**
> 1361 E. Big Beaver Road
> Troy, MI 48083
> Phone: (248) 457-9200 ext. 203
> Fax: (248) 457-9201
> gmantese@manteselaw.com
> dhansma@manteselaw.com
> bfrey@manteselaw.com
> jlushnat@manteselaw.com
>
> *Interim Liaison Counsel for the Proposed*
> *Automobile Dealer Plaintiff Classes*

17