# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : | Master File No. 12-md-02311 |
|  | : | Honorable Marianne O. Battani |
|  | : |  |
| In Re: HID Ballasts | : | 2:13-cv-01702-MOB-MKM |
|  | : | 2:13-cv-01703-MOB-MKM |
|  | : |  |
| THIS DOCUMENT RELATES TO: | : |  |
|  | : |  |
| All Automobile Dealership Actions | : |  |
| All End-Payor Actions | : |  |
|  | : |  |

**END-PAYOR AND AUTO DEALERSHIP PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO NORTH AMERICAN LIGHTING, INC.'S MOTION TO DISMISS THE DEALERSHIP AND END-PAYOR COMPLAINTS**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS ................................................................................. 2

        A.      The Alleged Conspiracy and Its Participants ......................................... 2

        B.      The HID Ballasts Market Structure, Characteristics and Pricing............ 4

        C.      The Automotive Parts Investigation and Defendants' Guilty Pleas Regarding
                HID Ballasts and Other Parts .................................................................. 5

        D.      Other Government Investigations of Koito's Conduct in the Automotive Parts
                Industry................................................................................................... 8

        E.      Defendants' Efforts to Conceal Their Conspiratorial Activity and Destruction
                of Documents .......................................................................................... 9

III.    NAL's *TWOMBLY* MOTION SHOULD BE DENIED ................................... 9

        A.      Legal Standards ....................................................................................... 9

        B.      The Court's Prior Orders On Similar Motions to Dismiss Support Denial of
                NAL's Motion ......................................................................................... 10

        C.      The Complaints Sufficiently Allege NAL's Involvement in the HID Ballasts
                Conspiracy............................................................................................... 15

IV.     CONCLUSION .................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ....................................................................................... passim

*Continental Ore Co. v. Union Carbide and Carbon Corp.,*
    370 U.S. 690 (1962) ............................................................................................... 10

*First Am. Title Co. v. DeVaugh,*
    480 F.3d 438 (6th Cir. 2007) .................................................................................. 9

*GS Electech Opinion, i.e., Carrier Corp. v. Outokumpu Oyj,*
    673 F.3d 430 (6th Cir. 2012) ................................................................................ 18

*In re Automotive Parts Antitrust Litig. (Bearings Cases),*
    2014 WL 4209588 (E.D. Mich. August 26, 2014) ................................ 10, 13, 14, 18

*In re Automotive Parts Antitrust Litig. (Bearings Cases),*
    2014 WL 4248430 (E.D. Mich. August 27, 2014) ................................ 11, 15, 17, 18

*In re Automotive Parts Antitrust Litig. (Wire Harness Cases),*
    2013 WL 2456013 (E.D. Mich. June 6, 2013) ............................................ 10, 14, 17

*In re Automotive Parts Antitrust Litig. (Wire Harness Cases),*
    2013 WL 2456613 (E.D. Mich. June 6, 2013) ...................................... 10, 12, 13, 17

*In re Automotive Parts Antitrust Litigation (Wire Harness Cases)*
    2013 WL 2456584 (E.D. Mich. June 6, 2013) ......................................................... passim

*In re Southeastern Milk Antitrust Litig.,*
    555 F. Supp. 2d 934 (E.D. Tenn. 2008) ................................................................ 10

*Weiner v. Klais & Co.,*
    108 F.3d 86 (6th Cir. 1997) ..................................................................................... 9

**Statutes**

15 U.S.C. § 1 ................................................................................................ 5, 6, 7

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................................... 1

## STATEMENT OF ISSUES PRESENTED

Whether the End-Payor and Auto Dealership Plaintiffs' (collectively "Plaintiffs") Complaints plausibly allege, under *Twombly*, that the Defendants, including Defendant North American Lighting, Inc. ("NAL"), were part of an antitrust conspiracy regarding automotive high intensity discharge ballasts ("HID Ballasts") where Plaintiffs allege, *inter alia*, the following:

- A guilty plea by NAL's parent, defendant Koito Manufacturing Co., Ltd. ("Koito"), and by several other Defendants, admitting to a long-running HID Ballasts conspiracy;

- Koito's and NAL's agreement to cooperate in the U.S. Department of Justice's ("DOJ") HID Ballasts investigation, and the DOJ's agreement to refrain from HID Ballasts-related criminal prosecution of Koito and NAL;

- Continuing automotive parts antitrust investigations in the United States, Europe, Japan and elsewhere;

- Koito's attendance at HID Ballasts pricing meetings with other Defendants and its agreement with Defendants to allocate customers;

- A defendant's admission that it destroyed documents to cover up its unlawful price-fixing activity, and efforts by multiple defendants, including Koito, to conceal their illegal activity; and

- A market structure and HID Ballasts pricing conducive to and/or indicative of collusion in that market.

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

*In re Automotive Parts Antitrust Litig. In re Wire Harness Cases,* 12-MD-02311, 2013 WL 2456584 (E.D. Mich. June 6, 2013)

*In re Automotive Parts Antitrust Litig. In re Wire Harness Cases*, 12-MD-02311, 2013 WL 2456613 (E.D. Mich. June 6, 2013)

*In re Automotive Parts Antitrust Litig. In re Wire Harness Cases*, 12-MD-02311, 2013 WL 2456013 (E.D. Mich. June 6, 2013)

*In re Automotive Parts Antitrust Litig. In re Bearings*, 12-MD-02311, 2014 WL 4209588 (E.D. Mich. August 26, 2014)

*In re Automotive Parts Antitrust Litig. In re Bearings*,12-MD-02311, 2014 WL 4248430 (E.D. Mich. Aug. 27, 2014)

I.    **INTRODUCTION**

Defendant North American Lighting, Inc. ("NAL") has filed an individual motion to dismiss the End-Payor's and Auto Dealerships' Consolidated Amended Class Action Complaints under Federal Rule of Civil Procedure 12(b)(6).[1]  NAL argues that Plaintiffs have failed to allege adequately NAL's participation in the HID Ballasts conspiracy.  NAL's motion is without merit.

Plaintiffs allege that Defendants engaged in an overarching HID Ballasts price-fixing conspiracy from 1998 to at least the date of Plaintiffs' complaint filings.  NAL's parent company, Koito, along with two other Defendants, have pleaded guilty to engaging in the HID Ballasts conspiracy from 1998 to 2010, in connection with their sales thereof to multiple vehicle original equipment manufacturers ("OEMs").  Indeed, in its guilty plea, Koito expressly agrees that *NAL* "will cooperate fully and truthfully with the [DOJ] in the prosecution of . . . the current federal investigation of violations of federal antitrust laws and related criminal laws involving the manufacture or sale of . . . automotive HID lamp ballasts."[2]  NAL's required cooperation includes, among other obligations, production of documents, wherever located, to the DOJ, and its best efforts to secure cooperation of its current or former directors, officers and employees, including interviews in the U.S.  The DOJ, in turn, has agreed not to bring further criminal charges against Koito *or NAL* for certain conduct "in furtherance of an antitrust conspiracy involving the manufacturer or sale of automotive lighting fixtures or automotive HID Ballasts."  *Id*.  Plaintiffs further allege, *inter alia*, that the HID Ballasts market characteristics facilitate

---

[1] Defendant North American Lighting, Inc.'s Motion to Dismiss the Dealership and End-Payor Complaints ("NAL Mtn."), filed September 19, 2014, Case Nos. 2:13-cv-1702-MOB and 2:13-cv-1703 (Doc # 45).

[2] *See* Declaration of Steven N. Williams in Support of End-Payor and Auto-Dealership Plaintiffs' Request for Judicial Notice And In Support Of Joint Opposition To Defendant North American Lighting, Inc.'s Motion To Dismiss The Dealership and End-Payor Complaints ("Williams Decl."), Ex. 3 (Koito Plea Agreement) ¶13.

1

collusion, and that HID Ballasts market pricing during the relevant period supports the existence of the HID Ballasts conspiracy.

As described in more detail below, the totality of the allegations and judicially noticeable facts regarding the HID Ballasts conspiracy and Koito and NAL easily satisfy the requirements of *Twombly*. NAL's argument that Plaintiffs have failed to adequately detail its involvement in the conspiracy has been repeatedly rejected by the Court in motions by similarly-situated defendants in these auto parts cases. The Complaints' allegations clearly allow a reasonable inference that NAL was part of the alleged HID Ballasts conspiracy, and this motion should be denied.

## II.   STATEMENT OF FACTS

### A.   The Alleged Conspiracy and Its Participants

On June 13 and 21, 2014, respectively, the End-Payor ("EP") Plaintiffs and Auto Dealership ("AD") Plaintiffs filed their Consolidated Amended Class Action Complaints alleging that the Defendants conspired to inflate, fix, raise, maintain, or artificially stabilize prices for automotive HID Ballasts sold in the United States in violation of federal and state laws.[3] Plaintiffs allege that the Defendants, directly or through their owned or controlled subsidiaries or affiliates, manufactured, marketed or sold HID Ballasts that were incorporated into new automobiles and purchased indirectly by EPs and ADs in the United States. EP CAC ¶¶ 2, 4, 83-95; AD CAC ¶¶ 1, 4, 113-126. Defendants' conspiracy commenced as early as July 1998, and continued at least until the filing of Plaintiffs' complaints. EP CAC ¶ 214; AD CAC ¶ 253.

---

[3] *See* EP Consolidated Amended Class Action Complaint filed June 13, 2014 in Case No. 2:13-cv-01703-MOB, Doc. #9 ("EP CAC") ¶ 1; AD Consolidated Amended Class Action Complaint filed June 21, 2014 in Case No. 2:13-cv-01703-MOB, Doc. #25 ("AD CAC") ¶ 1.

Defendant Koito is a Japanese corporation with its principal place of business in Tokyo, Japan.  Defendant NAL is Koito's U.S.-based wholly-owned and/or controlled subsidiary. Through NAL, Koito manufactured, marketed and/or sold HID Ballasts that were purchased throughout the United States, during the Class Period. EP CAC ¶¶ 91-92; AD CAC ¶¶ 122-123.[4] NAL, similarly, directly or indirectly manufactured, marketed and/or sold HID Ballasts that were purchased throughout the United States during the Class Period.  EP CAC ¶¶ 92-93; AD CAC ¶¶ 122-123.  At all times during the Class Period, the activities of NAL were under the control and direction of Koito, which controlled its policies, sales, and finances.  AD CAC ¶¶ 123.

The other defendant groups that are alleged to have participated in the HID Ballasts conspiracy are as follows:

- **DENSO Defendants**:  DENSO Corporation, a Japanese corporation based in Kariya, Japan; and DENSO International America, Inc. a Delaware corporation based in Southfield, Michigan.

- **Defendant Ichikoh**, a Japanese corporation based in Kanagawa-ken, Japan.

- **Panasonic Defendants**:  Panasonic Corporation, a Japanese company based in Osaka, Japan ("Panasonic"); Panasonic Corporation of North America, a Delaware corporation based in Secaucus, New Jersey that sold HID Ballasts through Georgia-based Panasonic Automotive Systems Company of America;

- **Stanley Electric Defendants**:  Stanley Electric Co., Ltd., a Japanese corporation based in Tokyo, Japan ("Stanley Electric"); Stanley Electric U.S. Co., Inc., an Ohio corporation based in Ohio; and II Stanley Co., Inc., a Michigan corporation based in Michigan.

- **Mitsubishi Defendants**:  Mitsubishi Electric Corporation, a Japanese corporation based in Tokyo, Japan ("MEC"); Mitsubishi Electric US Holdings, Inc., a Delaware corporation based in California; and Mitsubishi Electric Automotive America, Inc., a Delaware corporation based in Ohio.

---

[4] The End-Payors' Complaint defines the Class Period as the "period from and including July 1, 1998 through such time as the anticompetitive effects of the Defendants' conduct ceased."  EP CAC ¶ 2.  The Auto Dealerships' Complaint defines the Class Period as "the period from and including July 1, 1998 through the present."  AD CAC ¶ 2.

*See* EP CAC ¶¶ 83-90, 93-95; AD CAC ¶¶ 113-121, 124-126.

### B. The HID Ballasts Market Structure, Characteristics and Pricing

A HID Ballast is an electrical device that limits the amount of electrical current flowing to an HID headlamp, which would otherwise rise to destructive levels due to the HID headlamp's negative resistance. EP CAC ¶ 99; AD CAC ¶ 130. Large automotive manufacturers such as Toyota, Mazda and Nissan, purchase HID Ballasts directly or indirectly from Defendants, and incorporate them into new vehicles. EP CAC ¶ 101; AD CAC ¶ 133.

Plaintiffs allege that the market for HID Ballasts has high barriers to entry, such as multi-million dollar start-up costs associated with manufacturing plants and equipment, energy, transportation, distribution infrastructure, and long-standing customer relationships. EP CAC ¶¶ 111-112; AD CAC ¶¶ 144-145. New competitor entry is difficult because OEMs design the features of their vehicles so that HID Ballasts they purchase for a vehicle are integrated with the electronics, mechanics and other features of the particular vehicle model. As a result, it is difficult for an OEM to switch to a new entrant supplier. EP CAC ¶ 114; AD CAC ¶ 147. The market is also characterized by inelastic pricing, allowing participants in the market to raise prices without incurring a significant decrease in sales. Vehicle OEMs must use HID Ballasts regardless of price as there are no viable substitutes. These features of the market make it susceptible to successful collusion. EP CAC ¶¶ 115-117; AD CAC ¶¶ 148-150.

The Complaints also allege that during the Class Period, the Defendants were able to increase the prices for HID Ballasts in the face of declining demand for automotive vehicles. EP CAC ¶¶ 105-109; AD CAC ¶¶ 138-142. For example, during the Class Period, the Producer Price Index ("PPI") for vehicular lighting equipment—which includes HID Ballasts—generally held steady or increased. EP CAC ¶¶ 105-106; AD CAC ¶¶ 138-139. Meanwhile, demand for automobiles in the United States generally decreased during the same period. For example,

4

while the auto industry experienced a 35% drop in demand from 2007 to 2009, during the same period, prices for HID Ballasts increased.  The law of supply and demand dictates that prices during this period should have fallen.  EP CAC ¶ 107; AD CAC ¶¶ 140.  In a competitive market, falling or steady demand should not have resulted in rising prices for HID Ballasts.  EP CAC ¶¶ 108-109; AD CAC ¶¶ 141-42.

### C.    The Automotive Parts Investigation and Defendants' Guilty Pleas Regarding HID Ballasts and Other Parts

The DOJ's Antitrust Division is currently conducting a broad criminal investigation into illegal price-fixing and bid-rigging in the automotive parts industry.  EP CAC ¶ 5; AD CAC ¶ 5. The ongoing cartel investigation of price-fixing and bid-rigging in the automotive parts industry has yielded approximately $2.3 billion in criminal fines.  *Id.*

In connection with that investigation, on January 16, 2014, the DOJ announced that Koito agreed to pay a $56.6 million criminal fine and to plead guilty to a two-count criminal information.  The information charges Koito with participating in a combination and conspiracy to suppress and eliminate competition by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of HID Ballasts sold to automobile manufacturers in the United States and elsewhere, from at least as early as July 1998 and continuing until at least February 2010, in violation of the Sherman Act, 15 U.S.C. § 1.  EP CAC ¶¶ 10, 135-136; AD CAC ¶¶ 10, 171-172; *see also* Williams Decl. Exs. 2, 4.  In its guilty plea, Koito expressly agreed that it and NAL "will cooperate fully and truthfully with the [DOJ] in the prosecution of . . . the current federal investigation of violations of federal antitrust laws and related criminal laws involving the manufacture or sale of . . . automotive HID lamp ballasts."  Williams Decl. Ex. 3, ¶ 13.

Koito and NAL's cooperation obligations related to the HID Ballasts conspiracy are extensive.  They include, among other obligations, production of documents, wherever located,

to the DOJ; their best efforts to secure cooperation of their current or former directors, officers and employees, including interviews of Koito or NAL personnel in the U.S.; and the provision of testimony in grand jury, trial or other judicial proceedings in the U.S.  *Id.* ¶¶ 13-14.  The DOJ, in turn, has agreed not to bring further criminal charges against Koito or NAL for conduct predating the plea agreement that was "in furtherance of an antitrust conspiracy involving the manufacturer or sale of automotive lighting fixtures or automotive HID Ballasts."  *Id.* ¶ 15.  The same agreement applies to any current or former directors, officers or employees of Koito and NAL— except for three individuals whose identity was filed under seal.  *Id.* ¶ 16.  The plea agreement further provides that (1) should the DOJ determine that "[Koito] or NAL has failed to provide full, truthful and continuing cooperation, . . . [Koito] and NAL will be subject to prosecution for . . . the substantive offenses relating to the [HID Ballasts] investigation;" (2) the statute of limitations will be tolled; and (3) any "evidence provided by [Koito], NAL or [their] current directors, officers, or employees . . . may be used against [Koito] or NAL" in a subsequent prosecution.  *Id.* ¶¶ 21-22.

Prior to the Koito guilty plea, on July 18, 2013, the DOJ announced that Panasonic agreed to plead guilty and pay a $45.8 million criminal fine for its role in a conspiracy to fix prices of automotive parts, including HID Ballasts, sold to Honda Motor Company, Ltd. and American Honda Motor Company, Inc. (collectively "Honda"), Mazda Motor Corporation and Mazda Motor of America, Inc. (collectively "Mazda"), and Nissan Motor Company Ltd. and Nissan North America, Inc. (collectively "Nissan") for installation in vehicles manufactured and sold in the United States and elsewhere from at least as early as July 1998 and continuing until at least February 2010, in violation of the Sherman Act, 15 U.S.C. § 1.  EP CAC ¶¶ 6, 127; AD CAC ¶¶ 6, 161.

6

On September 26, 2013 the DOJ announced that MEC had agreed to plead guilty and to pay a $190 million criminal fine for their role in a conspiracy to rig bids for, and to fix, stabilize and maintain prices of certain automotive parts installed in automobiles manufactured and sold to automobile manufacturers, including Ford Motor Company, General Motors LLC, Chrysler Group LLC, Fuji Heavy Industries Ltd., Nissan Motor Company Ltd., Honda Motor Company Ltd., and certain of their subsidiaries, in the United States and elsewhere from at least as early as January 2000 to and continuing to at least February 2010 in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.  EP CAC ¶¶ 7, 129; AD CAC ¶¶ 7, 165.  According to the Information, MEC participated in meetings, conversations, and communications in the United States and elsewhere to discuss the bids and price quotations to be submitted to automobile manufacturers in the United States and elsewhere.  EP CAC ¶ 130; AD CAC ¶ 166.

MEC's plea agreement requires MEC and its subsidiaries to cooperate in the DOJ's automotive parts investigation, including with respect to HID Ballasts.  MEC's guilty plea further provides that in exchange for it and its subsidiaries' cooperation in the DOJ's automotive parts investigation, including with respect to HID Ballasts, the DOJ will refrain from criminally prosecuting MEC and its subsidiaries for price-fixing certain automotive parts, including HID Ballasts.  EP CAC ¶¶ 8, 131; AD CAC ¶¶ 8, 167.

On November 27, 2013, the DOJ announced that Stanley Electric agreed to pay a $1.44 million criminal fine and plead guilty to a one-count criminal information charging it with participating in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of HID Ballasts sold to automobile manufacturers in the United States and elsewhere, from at least as early as July 1998 and continuing until at least February 2010, in violation of the Sherman Act, 15 U.S.C. § 1.  Stanley Electric participated in an agreement to allocate the supply of, rig bids

for, and to fix, stabilize, and maintain the prices, including coordinating price adjustments requested by purchasers, of HID Ballasts sold to Toyota Motor Corporation, Honda Motor Company, Ltd., Nissan Motor Co., Ltd., Fuji Heavy Industries, Ltd. (Subaru), Mazda Motor Corporation, and/or certain of their United States subsidiaries in the United States and elsewhere. EP CAC ¶¶ 9, 132-134; AD CAC ¶¶ 9, 168-170.

Plaintiffs allege that representatives from Defendants DENSO, Ichikoh, Panasonic, Stanley, Koito, and Mitsubishi attended and participated in at least six meetings in which they discussed pricing of HID Ballasts.  EP CAC ¶ 13; AD CAC ¶ 157.  Plaintiffs allege that during these meetings, DENSO entered into agreements with Defendants to "respect" Defendants' core customers, *i.e.*, refrain from taking their business, and that in return, Defendants pledged to "respect" DENSO's core customers, including Toyota.  EP CAC ¶ 14; AD CAC ¶ 158.  Plaintiffs further allege that Defendants (including Koito and NAL) participated in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of HID Ballasts sold to automobile manufacturers and others in the United States.  EP CAC ¶ 12; AD CAC ¶ 12.

### D.   Other Government Investigations of Koito's Conduct in the Automotive Parts Industry

Plaintiffs also allege that competition authorities in Japan and possibly elsewhere, have also been investigating a conspiracy in the market for various automotive parts since at least July 2011 and the Japanese Fair Trade Commission ("JFTC") has raided the offices of Stanley Electric and Koito.   EP CAC ¶11; AD CAC ¶11.  The European Commission Competition Authority ("EC") has also conducted dawn raids at the European offices of several automotive parts manufacturers.  *Id.*   Furthermore, in March 2013, the JFTC issued a cease and desist order and imposed a 3.43 billion yen fine on Koito for restraint of competition in the auto lamp market.

*See* Williams Decl. Ex. 1.  Like the HID Ballasts guilty pleas, the JFTC cease and desist order lists Nissan, Toyota, Fuji, Mitsubishi and Mazda as victims of the anticompetitive conduct.  *Id*.

### E.    Defendants' Efforts to Conceal Their Conspiratorial Activity and Destruction of Documents

Plaintiffs allege that Panasonic, Stanley Electric and Koito employed "measures to keep their conduct secret, including using code names and choosing meeting places and times to avoid detection;" and that, as stated in the Information filed against MEC, the Defendants and their co-conspirators employed "measures to keep their conduct secret, including, but not limited to, using code names and meeting at remote locations."  EP CAC ¶ 204; AD CAC ¶ 242.  Additionally, MEC admitted to destroying and/or altering documents in an effort to cover up its unlawful activity.  EP CAC ¶ 205; AD CAC ¶ 244.  According to MEC's plea agreement, in February 2010, MEC's employees became aware of the criminal investigation into the price-fixing of automotive parts, including Alternators, and took steps to destroy evidence of their criminal activity—including destroying files and documents in the U.S. and Japan—which was approved by their senior managers in Japan.  EP CAC ¶ 206; AD CAC ¶ 245.

### III.    NAL'S *TWOMBLY* MOTION SHOULD BE DENIED

#### A.    Legal Standards

The standard for reviewing the sufficiency of a complaint was initially set forth by this Court in *In re Automotive Parts Antitrust Litigation (Wire Harness Cases)*, No. 12-md-02311, 2013 WL 2456584, at *3 (E.D. Mich. June 6, 2013).  Plaintiffs must show that their Complaints "allege facts which, if proved, would entitle [them] to relief."  *Id*. (citing *First Am. Title Co. v. DeVaugh*, 480 F.3d 438, 443 (6th Cir. 2007)).  "[D]irect or inferential allegations respecting all the material elements" will sustain the sufficiency of the complaint.  *Id*. (quoting *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997)).  Furthermore, on a Rule 12(b)(6) motion to dismiss, "the

Court 'must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

Specifically, the Complaints "must contain 'enough factual matter (taken as true) to suggest' the existence of an agreement." *Wire Harness*, 2013 WL 2456584, at *3 (quoting *Twombly*, 550 U.S. at 556). A "heightened fact pleading of specifics" is not needed to sustain an antitrust conspiracy claim. *Id.* (citing *Twombly*, 550 U.S. at 570). "[A]llegations as to who, what, when, and where are not the litmus test for determining whether a defendant is on notice of the claims." *Id.*, at *4 (citing *In re Southeastern Milk Antitrust Litig.*, 555 F. Supp. 2d 934 (E.D. Tenn. 2008) (citing *Continental Ore Co. v. Union Carbide and Carbon Corp.*, 370 U.S. 690, 699 (1962)). As this Court concluded, "assessing the sufficiency of the CAC boils down to consideration as to . . . whether the allegations in the CAC enable Collective Defendants to respond." *Wire Harness*, 2013 WL 2456584, at *5 (citations omitted). The same holds true here with respect to Defendant NAL.

### B. The Court's Prior Orders On Similar Motions to Dismiss Support Denial of NAL's Motion

The Complaints at issue here set forth many of the same types of allegations regarding the Defendants' conspiracy to fix prices for HID Ballasts that this Court has previously held sufficient in the *Wire Harness Cases* and *Bearings Cases*.[5] Like the complaint allegations that

---

[5] *See e.g.*, *In re Automotive Parts Antitrust Litig. (Wire Harness Cases)*, 2013 WL 2456613, at *3-4 (E.D. Mich. June 6, 2013) (Opinion and Order Denying GS Electech Defendants' Motion to Dismiss the Auto-Dealership and End-Payor Complaints) ("*GS Electech Opinion*"); *In re Automotive Parts Antitrust Litig. (Bearings Cases)*, 2014 WL 4209588, at *3-4 (E.D. Mich. August 26, 2014) (Opinion and Order Denying Defendant's Motion to Dismiss Plaintiffs' Consolidated Amended Complaints) ("*NTN USA Opinion*"); *In re Automotive Parts Antitrust Litig. (Wire Harness Cases)*, 2013 WL 2456013, at *2-3 (E.D. Mich. June 6, 2013) (Opinion and Order Denying Tram, Inc. and Tokai Rika Co., Ltd.'s Motions to Dismiss all Actions) ("*Tokai Rika Opinion*"); *In re Automotive Parts Antitrust Litig. (Bearings Cases)*, 2014 WL 4248430, at

10

were scrutinized and upheld in prior orders in these *Auto Parts* cases, the Complaints here contain "'enough factual matter (taken as true) to suggest' the existence of an agreement." *Wire Harness*, 2013 WL 2456584, at *4 (quoting *Twombly*, 550 U.S. at 556).

Here, the Complaints include, among others, the following allegations:

- ***An Overarching Conspiracy Supported By Guilty Pleas By NAL's Parent Company and Co-Defendants.*** Defendant NAL participated in an overarching HID Ballasts conspiracy that is supported by $104 million in fines and guilty pleas of its Defendant parent company, Koito, and co-Defendants Panasonic and Stanley Electric regarding price-fixing of HID Ballasts and other parts from 1998 to 2010, and by MEC's agreement to plead guilty and to pay a $190 million criminal fine for its role in a conspiracy to fix prices of automotive parts sold to OEMs in the United States and elsewhere from 2000 to at least 2010. *See* §II.C., *supra*.

- ***Koito Participated in Meetings with Defendants and Sold Price-Fixed Products Through NAL in the U.S.*** Koito representatives attended and participated in at least six meetings with Panasonic, Stanley, MEC and other Defendants, at which they discussed HID Ballasts pricing and agreed to allocate customers, and sold HID Ballasts in the U.S. through its NAL subsidiary, which it controlled. *See* §§ II.A., II.C., *supra*.

- ***Koito Agreed That It and NAL will Cooperate with the DOJ HID Ballasts Investigation.*** Under the terms of Koito's guilty plea, Koito and NAL are required to cooperate in the DOJ's automotive parts investigation with respect to HID Ballasts; and, in exchange for that cooperation, the DOJ will refrain from criminally prosecuting Koito and NAL for price-fixing HID Ballasts and other parts. *See* § II.C., *supra*.

- ***Defendants' Efforts to Conceal Their Conspiratorial Conduct.*** Panasonic, Stanley Electric and Koito all employed "measures to keep their HID Ballasts-related conduct secret, including using code names and choosing meeting places and times to avoid detection;" and MEC admitted to destroying and/or altering documents in an effort to cover up its unlawful activity. *See* § II.E., *supra*.

- ***Market Structure, Characteristics and Product Pricing.*** The structure of the HID Ballasts market, such as substantial barriers to entry and inelastic demand and pricing, facilitates collusion. Also, Defendants were able to increase prices for HID Ballasts in the face of declining demand for automotive vehicles during the class period, supporting the existence of an anti-competitive market. *See* § II.B., *supra*.

---

*3-4 (E.D. Mich. August 27, 2014) (Opinion and Order Denying Defendant's Motion to Dismiss the Consolidated Amended Complaints) ("*SKF USA Opinion*").

- ***Opportunities to Conspire.*** Representatives from Defendants DENSO, Ichikoh, Panasonic, Stanley, Koito, and Mitsubishi attended and participated in at least six meetings together in which they discussed pricing of HID Ballasts. *See* § II.C., *supra*.

These are the types of allegations that this Court deemed sufficient in multiple prior motions to dismiss in the *Auto Parts Cases*.

In the *Wire Harness Cases*, for example, the Court denied motions to dismiss filed by GS Electech, Inc. ("GSE") G.S. Wiring Systems Inc. ("GS Wiring") and G.S.W. Manufacturing, Inc. ("GSW") under facts very similar to this case. *See GS Electech Opinion*, 2013 WL 2456613, at *3-4. Defendant GSE, which was the parent company of defendants and U.S. subsidiaries GS Wiring and GSW, had pled guilty to price-fixing speed-sensor wire assemblies. Like NAL here, GS Wiring and GSW argued that there was a lack of allegations in the complaint specifically mentioning them, and sought dismissal under *Twombly*. In denying their motion, the Court first noted that "GSE's guilty plea demonstrates that it entered into an express agreement that existed to fix prices and allocate customers in a market with conditions ripe for conspiratorial conduct." *Id.* at *3. The Court then held that allegations that "GSE . . . sold the price-fixed product in the United States through its two subsidiaries, which GSE is alleged to have controlled," creates "an inference that GSW and GS Wire participated in the conspiracy aimed at the United States." *Id*. The Court noted that, "in the plea agreement, the subsidiaries are required to cooperate with the Department of Justice by producing documents in their control and providing their 'directors, officers and employees . . . [for] interview and the provision of testimony in grand jury, trial, and other judicial proceedings;' and that the DOJ agreed that it would not bring 'further criminal charges against [GSE] or its subsidiaries for any act or offence committed before the date of this Plea Agreement that was taken in furtherance of an antitrust conspiracy involving the manufacture, assembly, or sale of speed sensor wire assemblies.'" *Id*. The Court further

12

reasoned that "[b]ecause the complaints must be viewed as a whole, detailed allegations about the involvement of each Defendant are not needed;" that "these allegations are sufficient to state a claim as to GS Electech Defendants;" and that "[i]n addition to the allegations that GSE coordinated and controlled the activities of GS Electech Defendants, the IPPs have pointed to portions of the plea that create an inference supporting control." *Id*. The same facts are present here.

First, not only has the parent company, Koito, pled guilty to price-fixing, but the scope of its plea covers the entirety of products at issue in this litigation (*i.e.*, HID Ballasts). Second, Plaintiffs have alleged that Koito controlled NAL, which "create[s] an inference sufficient to permit imputation of the conspiracy to the[] subsidiar[y]." *Id*. Third, like GSW and GS Wire, NAL is bound by Koito's DOJ cooperation obligations pertaining to the HID Ballasts conspiracy, must produce witnesses and documents to the DOJ related to that conspiracy, and received a release from prosecution regarding that conspiracy from the DOJ. Fourth, as in the *GS Electech Opinion* (*id*. at *1), Plaintiffs here allege that barriers to entry and other market conditions further support the existence of a conspiracy. Accordingly, as in the *GS Electech Opinion*, "[b]ecause the complaint[] must be viewed as a whole, detailed allegations about the involvement of [defendant NAL] are not needed," and the totality of the allegations made "create an inference sufficient to permit imputation of the conspiracy to [defendant NAL]." *Id*. at *4.

The Court's decision in the *Bearings Cases* involving NTN Corporation ("NTN") and NTN USA Corporation ("NTN USA") is also instructive. *See NTN USA* Opinion, 2014 WL 4209588, at *5. There, defendants asserted that plaintiffs had failed to allege adequately that defendant NTN USA is an alter ego of its parent company NTN, and that "there are no specific allegations made against it in the complaints." *Id*. The Court rejected NTN USA's arguments on

13

the grounds that, "viewed in their entirety, the allegations support an inference that NTN USA participated in a price-fixing conspiracy aimed at the United States under the direction of NTN." *Id*.  The complaint there alleged, *inter alia*, that the JFTC issued a cease and desist order against NTN regarding a bearings conspiracy; NTN admitted that it participated in the Japanese bearings conspiracy; the DOJ subpoenaed NTN USA regarding bearings transactions; NTN directed and controlled NTN USA; and the bearings market is conducive to anticompetitive conduct, including high barriers to entry.  Here, Plaintiffs allege that, in addition to facing a JFTC cease and desist order, Koito pled guilty to the HID Ballast conspiracy in the U.S.; Koito directs and controls NAL; NAL is implicated in the HID Ballasts conspiracy by virtue of its cooperation obligations and criminal release; and the HID Ballasts market is conducive to anticompetitive conduct.  For the same reasons as the Court found in the case of NTN USA, NAL's motion to dismiss should be denied.

In the Court's *Toka Rika Opinion*, 2013 WL 2456013, at *2-3, TRAM and Tokai Rika also argued that there was a paucity of allegations in the complaints specifically mentioning them.  In denying their motion, the Court found that the allegations of guilty pleas by other defendants, market conditions, and opportunities to conspire "satisfy *Twombly*."  *Id*. at *2.  The Court also held that plaintiffs' allegations that the U.S. subsidiary, TRAM, was under the "direction and control of defendant Toka Rika," "sufficiently allege an agency relationship," and met plaintiffs' "pleading burden."  *Id*. at *3.  Here, similarly, Plaintiffs allege that Koito "wholly owned or controlled" and/or directed NAL (EP CAC ¶ 92; AD CAC ¶ 123), and NAL is bound by Koito's cooperation obligations pertaining to the HID Ballast conspiracy.

Finally, in the *SKF USA Opinion*, defendant SKF USA sought dismissal of the plaintiffs' complaints on the grounds that plaintiffs "made no allegations regarding its involvement in the

14

alleged [bearings] conspiracy." 2014 WL 4248430, at *2. SKF USA argued that neither it nor its foreign parent (AB SKF – which had been dismissed for lack of personal jurisdiction) had pled guilty to price fixing of automotive bearings or any other product, and that the limited scope of the bearings-related guilty pleas by other defendants did not adequately support plaintiffs' claims against SKF USA. *Id.* at *4. This Court rejected that argument, reasoning that, "viewed in their entirety, the [complaint] allegations support an inference that SKF USA participated in a price-fixing conspiracy aimed at the United States under the direction of AB SKF." *Id.* at *4. The complaint allegations relied upon by the Court included allegations that two named defendants pleaded guilty to fixing price of automotive bearings; "the structure of the Bearings market is conducive to price-fixing and collusion given the high barriers to entry, inelasticity of demand, high concentration, and numerous opportunities to conspire;" and, "prices for Bearings increased even as auto sales remained flat or sluggish." *Id.* at *1. As detailed above, Plaintiffs make an even stronger overall showing as to Koito's and NAL's plausible participation in the HID Ballasts conspiracy here.

In light of the above orders by the Court on individual motions to dismiss in the *Auto Parts Cases*, Defendant NAL's motion should be denied.

## C.    The Complaints Sufficiently Allege NAL's Involvement in the HID Ballasts Conspiracy

In its Motion, NAL argues that the Plaintiffs' Complaints should be dismissed on the grounds that they "fail to make a single allegation of NAL's particular involvement in the alleged conspiracy." NAL Mtn. at 8. This argument is without merit.

This Court has recognized that "detailed allegations about the involvement of each Defendant are not needed" to defeat a motion to dismiss. *Wire Harness*, 2013 WL 2456584, at *7; *see also id.* at *4 (surviving a motion to dismiss "simply calls for enough fact to raise a

reasonable expectation that discovery will reveal evidence of illegal agreement") (quoting *Twombly*, 550 U.S. at 556). This Court has also acknowledged that "dismissal is not required merely because [plaintiffs] failed to allege an overt act against each individual Defendant." *Wire Harness*, 2013 WL 2456584, at *6.

As detailed above, Plaintiffs allege a broad HID Ballast conspiracy to which NAL's parent company, Koito, and two other Defendants have pled guilty, and which admittedly affected sales to major OEMs such as Honda, Mazda, Nissan, Toyota and Subaru, over a lengthy 11-12 year conspiracy period. The broad conspiracy supported by these guilty pleas is buttressed by allegations that Defendants, including Koito, met to discuss HID Ballast pricing on multiple occasions; that Koito and other Defendants sought to conceal their illegal activities; that the HID Ballasts market structure and characteristics facilitate collusion; and that the Defendants were able to increase HID Ballasts prices in the face of declining demand for automotive vehicles.

In the context of the foregoing allegations, the NAL-specific allegations in the Complaints, as well as those raised by the Koito guilty plea, more-than adequately plead NAL's involvement in the HID Ballasts conspiracy. First, Plaintiffs have expressly alleged that NAL "engag[ed] in a long-running conspiracy to unlawfully fix, artificially raise, maintain and/or stabilize prices, rig bids for, and allocate the market and customers in the United States for HID Ballasts." EP CAC ¶ 1; AD CAC ¶1. Second, NAL is directly tied to the HID Ballasts conspiracy by Koito's plea agreement, which requires Koito and NAL to cooperate in the DOJ's investigation of the HID Ballasts conspiracy, and provides that, in exchange, the DOJ will refrain from criminally prosecuting Koito and NAL for price-fixing of HID Ballasts. Third, Plaintiffs allege that Koito manufactured, marketed and sold HID Ballasts through NAL, and that Koito wholly-owned, controlled and/or directed the activities of NAL. *See* EP CAC ¶ 92; AD CAC ¶

16

123.    Fourth, NAL sold HID Ballasts within a market structure that facilitates and/or is susceptible to collusion.  And fifth, the Koito and other Defendants that pleaded guilty to price-fixing HID Ballasts admitted doing so with regard to HID Ballasts sold to U.S. OEMs and for installation in vehicles manufactured in the U.S.

The foregoing allegations, "viewed in their entirety" and in conjunction with the allegations detailed above pertaining to Koito, "support an inference that [NAL] participated in a price-fixing conspiracy aimed at the United States under the direction of [Koito]."  *SKF USA Opinion*, 2014 WL 4248430 at *4.  Indeed, as detailed above (*see* § III.B., *supra*), in the *GS Electech*, *NTN USA*, *Toka Rika* and *SKF USA Opinions*, this Court upheld claims against U.S. subsidiaries based on allegations that are very similar to those asserted here.

NAL's effort to distinguish this Court's ruling in the *Toka Rika Opinion* (NAL Mtn. at 7) is unavailing.  For example, NAL claims that the foreign parent, Toka Rika, pled guilty to antitrust violations (*id*.); but so did Koito here.  NAL further asserts that the U.S. government had raided TRAM's office and that Toka Rika pleaded guilty to conduct that occurred at TRAM. *Id*.  But that conduct did not pertain to the wire harness conspiracy at issue in the motion; rather, it pertained to heater control panels.  *See Toka Rika Opinion*, 2013 WL 2456013, at *2.  Indeed, Plaintiffs' allegations and additional proofs here go beyond that which the Court relied upon in denying TRAM's motion to dismiss, including, among others, Plaintiffs' showing that that Koito's cooperation obligations in its guilty plea expressly implicates NAL in the HID Ballasts conspiracy.

NAL also asserts that the Sixth Circuit decision upon which this Court relied in the *GS Electech Opinion*, *i.e.*, *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012), is distinguishable and inapplicable.  This argument is also unavailing.  This Court has repeatedly

17

found that its denials of defendants' motions to dismiss in various auto parts cases—under facts similar to those here—were consistent with the court's analysis in *Carrier Corp*. *See, e.g.*, *NTN USA Opinion*, 2014 WL 4209588, at *4 ("Here, Plaintiffs allege similar facts to those alleged in *Carrier Corp.*, which demonstrate the plausibility of NTN USA selling price-fixed bearings under the direction and control of its parent, NTN"); *SKF USA Opinion*, 214 WL 4248430, at *2-3 (describing the facts involved in *Carrier Corp*. and stating "That is the situation here").  NAL has provided no reason for the Court to re-visit its interpretation of *Carrier Corp.* here.

## IV.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Defendant NAL's motion to dismiss be denied in its entirety.

Date:  November 7, 2014                     Respectfully submitted,

                                            */s/ Steven N. Williams*
                                            Frank C. Damrell
                                            Steven N. Williams
                                            Adam J. Zapala
                                            Elizabeth Tran
                                            **COTCHETT, PITRE & McCARTHY, LLP**
                                            San Francisco Airport Office Center
                                            840 Malcolm Road, Suite 200
                                            Burlingame, CA 94010
                                            Telephone: (650) 697-6000
                                            Facsimile: (650) 697-0577
                                            fdamrell@cpmlegal.com
                                            swilliams@cpmlegal.com
                                            azapala@cpmlegal.com
                                            etran@cpmlegal.com

*s/ Hollis Salzman*
Hollis Salzman
Bernard Persky
William V. Reiss
**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
hsalzman@rkmc.com
bpersky@rkmc.com
wvreiss@rkmc.com

*s/ Marc M. Seltzer*
Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Warren T. Burns
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, TX 75202
Telephone: (214) 754-1900
Facsimile: (214)754-1933
toxford@susmangodfrey.com
wburns@susmangodfrey.com

*Interim Co-Lead Class Counsel for the Proposed*
*End-Payor Plaintiffs Classes*

19

*/s/ E. Powell Miller*

E. Powell Miller
Adam T. Schnatz
**THE MILLER LAW FIRM, P.C.**
The Miller Law Firm, P.C.
950 W. University Dr., Ste. 300
Rochester, MI 48307
epm@millerlawpc.com
ats@millerlawpc.com

*Interim Liaison Counsel for the Proposed End-Payor Plaintiffs Classes*

*/s/ Jonathan W. Cuneo*

Jonathan W. Cuneo
Joel Davidow
Victoria Romanenko
**CUNEO GILBERT & LADUCA, LLP**
507 C Street, N.E.
Washington, D.C. 20002
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
jonc@cuneolaw.com
joel@cuneolaw.com
vicky@cuneolaw.com

*s/ Shawn M. Raiter*

Shawn M. Raiter
**LARSON • KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN  55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

/s/ Don Barrett
Don Barrett
David McMullan
Brian Herrington
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662) 834-2628
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

*Interim Co-Lead Class Counsel for the Proposed
Automobile Dealership Plaintiff Classes*

/s/ Gerard V. Mantese
Gerard V. Mantese
David Hansma
Brendan Frey
Joshua Lushnat
**MANTESE HONIGMAN ROSSMAN AND
WILLIAMSON, P.C.**
1361 E. Big Beaver Road
Troy, MI 48083
Phone: (248) 457-9200 ext. 203
Fax: (248) 457-9201
gmantese@manteselaw.com
dhansma@manteselaw.com
bfrey@manteselaw.com
jlushnat@manteselaw.com

*Interim Liaison Counsel for the Proposed
Automobile Dealership Plaintiff Classes*

## <u>CERTIFICATE OF SERVICE</u>

I, Steven N. Williams, hereby certify that I caused a true and correct copy of the **END-PAYOR AND AUTO DEALERSHIP PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO NORTH AMERICAN LIGHTING, INC.'S MOTION TO DISMISS THE DEALERSHIP AND END-PAYOR COMPLAINTS**, to be served upon all registered counsel of record via the Court's CM/ECF system on November 7, 2014.

*/s/ Steven N. Williams*
Steven N. Williams
