UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION                                  MASTER FILE NO. 12-md-02311


_____


In re: HID Ballasts                                   HON. MARIANNE O. BATTANI


_____

THIS DOCUMENT RELATES TO:

Dealership Actions                                    2:13-cv-01702
End-Payor Actions                                     2:13-cv-01703
_____/

### OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Before the Court is Defendant Ichikoh Industries, Ltd.'s Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaints for Lack of Personal Jurisdiction. (Case No. 13-1702, Doc. No. 74; Case No. 13-1703, Doc. No. 54). The matter was set to be heard on January 28, 2015; however, the parties waived oral argument. For the reasons stated below, Defendant's motion is **GRANTED**.

### I.   RELEVANT FACTS

Automobile Dealership Plaintiffs ("ADPs") and End-Payor Plaintiffs ("EPPs") (collectively referred to as "Indirect Purchaser Plaintiffs" or "IPPs") filed separate consolidated amended class action complaints alleging several federal and state law antitrust claims against Defendants. Specifically, IPPs allege that Defendants "engag[ed] in a long-running conspiracy to unlawfully fix, artificially raise, maintain and/or stabilize prices, rig bids for, and allocate the market and customers in the United States for HID Ballasts." (Case No. 13-1702, Doc. No. 25 at ¶ 1). HID Ballasts are

defined as "electrical device[s] that limit[ ] the amount of electrical current flowing to an HID headlamp, which would otherwise rise to destructive levels due to the HID headlamp's negative resistance." (Id. at ¶ 3). IPPs seek to represent all automobile dealers and consumers who purchased a vehicle "which included one or more HID Ballast(s) as a component part, or indirectly purchased one or more HID Ballast(s) as a replacement part, which were manufactured or sold by the Defendants . . . ." (Id. at ¶ 2; Case No. 13-1703, Doc. No. 9 at ¶ 2).

Defendant Ichikoh Industries, Ltd. ("Ichikoh") is a Japanese corporation with its principal place of business in Kanagawa-ken, Japan. (Case No. 13-1703, Doc. No. 9 at ¶ 85). On March 21, 2013, the Japan Fair Trade Commission ("JFTC") fined Ichikoh $13.1 million for its role in a cartel created to "fix prices for automotive lamps." (Id. at ¶ 125). It is alleged that "[c]ertain automotive lamps, including those sold by Defendant Ichikoh, contain HID Ballasts as a component part." (Id.)

IPPs allege that "Ichikoh – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured and/or sold HID Ballasts that were purchased throughout the United States, including in this District, during the Class Period." (Id. at ¶ 85). ADPs take it a step further, claiming that Ichikoh sold HID Ballasts to "firms that sold such HID Ballasts to Plaintiffs and/or Class members." (Case No. 13-1702, Doc. No. 25 at ¶ 116). ADPs also name Ichikoh Manufacturing, Inc. ("IMI") and Ichikoh Mitsuba, Inc. ("IMIC") as two United States-based subsidiaries located in Kentucky through which Ichikoh sold HID Ballasts. (Id.) ADPs assert both subsidiaries are wholly owned and controlled by Ichikoh, "which controlled [the subsidiaries'] policies, sales, and finances." (Id.) Last, ADPs assert Ichikoh formed a business alliance with Valeo

Sylvania, a company located in Indiana that sells HID Ballasts throughout the United States.  (Id.)

IPPs also provide allegations regarding the structure and characteristics of the HID Ballasts market that render it conducive to conspiratorial anticompetitive conduct. Specifically, the HID Ballasts market has high barriers to entry evidenced by substantial start-up costs faced by a new entrant along with the Defendants' collective ownership of multiple patents related to the manufacture of HID Ballasts.  (Id. at ¶¶ 145-46).  In addition, the market has inelastic demand, which describes a market where an increase in price of a product results in a marginal decrease in sales.  (Id. at ¶ 148).  IPPs assert that inelastic demand in the HID Ballasts market allowed the cartel to profit by increasing prices above competitive levels during the Class Period.  (Id. at ¶ 149).

## II.   STANDARD OF REVIEW

Before answering a complaint, a defendant may move for dismissal based on lack of personal jurisdiction over the defendant.  Fed. R. Civ. P. 12(b)(2).  "Where personal jurisdiction is challenged in a 12(b)(2) motion, the plaintiff has the burden of establishing that jurisdiction exists."  Am. Greetings Corp. v. Cohn, 839 F. 2d 1164, 1168 (6th Cir. 1988); see also McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936) (plaintiff "must allege in his pleading the facts essential to show jurisdiction").

If a district court rules on the motion before trial, the court, in its discretion, "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989) (quoting

Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981)).  The district court is granted considerable discretion in this decision and will be reversed only for abuse of discretion.  Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991); Mich. Nat. Bank v. Quality Dinette, Inc., 888 F.2d 462, 466 (6th Cir. 1989).  The method the court selects will affect the magnitude of the burden on the plaintiff to avoid dismissal.  Serras, 875 F.2d at 1214.  Where, as is the case here, the court relies solely on the parties' affidavits to reach its decision on the motion, the burden rests on the plaintiff to establish a *prima facie* showing of jurisdiction in order to avoid dismissal, Intera Corp. v. Henderson, 428 F.3d 605, 615 (6th Cir. 2005), and the court must consider the pleadings and affidavits in the light most favorable to the plaintiff. CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1261-62 (6th Cir. 1996).

In considering 12(b)(2) motions, the court does not weigh the controverting assertions of the moving party due to its interest in "prevent[ing] non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts."  CompuServe, Inc., 89 F.3d at 1262 (quoting Theunissen, 935 F.2d at 1459).

## III.  ANALYSIS

The Supreme Court has held that to subject a nonresident defendant to personal jurisdiction, due process requires that he must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  The defendant's "conduct and connection with the forum State" must be "such that he should reasonably anticipate

4

being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction in fact exists. Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002).

When "a federal court exercises jurisdiction pursuant to a national service of process provision, it is exercising jurisdiction for the territory of the United States, and the individual liberty concern is whether the individual over which the court is exercising jurisdiction has sufficient minimum contacts with the United States." Med. Mut. v. deSoto, 245 F.3d 561, 567-68 (6th Cir. 2001). For federal antitrust claims, 15 U.S.C. § 22 authorizes service of process over an antitrust defendant "wherever it may be found." Consequently, personal jurisdiction over Ichikoh is dependent on whether it has "sufficient minimum contacts with the United States" to satisfy the due process requirements of the Fifth Amendment. Med. Mut. of Ohio, 245 F.3d at 566-67. "This inquiry parallels the more traditional personal-jurisdiction analysis under which a defendant must have minimum contacts with the forum state pursuant to the state's long-arm statute." Carrier Corp. v. Outokumpu Oyj, 673 F.3d 430, 449-50 (6th Cir. 2012) (citing Med. Mut. of Ohio, 245 F.3d at 566-67) (internal quotations omitted).

A party is subject to the personal jurisdiction of the Court through either general or specific jurisdiction. See J. McIntyre Machinery, Ltd. v. Nicastro, 131 S. Ct. 2780, 2787-89 (2011). Whether general or specific jurisdiction exists turns on the nature of the defendant's contacts with the forum. Here, IPPs limit their argument to specific personal jurisdiction.

Specific personal jurisdiction subjects a defendant to actions in the forum arising out of or relating to the defendant's contacts with the forum. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984). In determining whether the exercise of specific personal jurisdiction is proper, the Sixth Circuit follows a three-prong test originally laid out in Southern Machine Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968):

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Calphalon Corp. v. Rowlette, 228 F.3d 718, 721 (6th Cir. 2000) (citing Mohasco, 401 F.2d at 381).

In support of its motion, Ichikoh provided evidence detailing the relationships between Ichikoh, IMI, and IMIC, which IPPs did not refute. The evidence establishes that Ichikoh does not manufacture or directly sell products in the United States. (Case No. 13-1702, Doc. No. 74, Watanabe Decl. at ¶ 13). It manufactures and sells lamps for automobiles in Japan and does not control the locations where its customers sell those products. (Id. at ¶ 14). Although the lamps it sells contain HID Ballasts, Ichikoh purchases its HID Ballasts from independent third parties. (Id. at ¶ 16).

Ichikoh also has no physical contacts with the United States and has never been charged with or pleaded guilty to any criminal conduct in the United States. (Id. at ¶ 12-13). It did, however, previously own two United States-based subsidiaries – IMI and IMIC. (Id. at ¶ 17). IMI was liquidated in 2007, and IMIC was liquidated in 2011. (Id.)

6

Neither IMI nor IMIC manufactured or sold any type of automotive lamp, including any type of lamp that would have included HID Ballasts as a component part. (Id. at ¶ 18).

In addition, Ichikoh did not control the day-to-day operations, decisions, policies, product design or sales, or finances of either subsidiary. (Case No. 13-1702, Doc. No. 74, Grenda Decl. at ¶ 11, 13, 26, 28). Both companies maintained their own business units without any direction from Ichikoh. (Id. at ¶ 12, 27). Furthermore, each company maintained its own payroll records, bylaws, stock ledgers, and financial statements independent from those of Ichikoh. (Id.) The combined sales of IMI and IMIC amounted to approximately 6% of Ichikoh's overall revenue. (Case No. 13-1702, Doc. No. 74, Watanabe Decl. at ¶ 22).

Ichikoh and its subsidiaries did not share offices, employees, executives, or financial records. (Id. at ¶ 23; Case No. 13-1702, Doc. No. 74, Grenda Decl. at ¶ 10, 16, 25, 31). However, on one occasion, an employee of Ichikoh was sent to IMI to assist in product design. (Case No. 13-1702, Doc. No. 74, Grenda Decl. at ¶ 16). This employee only appeared on IMI's payroll and did not simultaneously serve as an employee for both Ichikoh and IMI. (Id. at ¶ 16, 31). Although half of IMI's board members and two-thirds of IMIC's board members were Ichikoh personnel, they were not involved in the daily operations of either subsidiary. (Id. at ¶ 17, 32). Ichikoh did, however, provide some capital to both subsidiaries. (Id. at ¶ 18, 33).

IPPs argue that Ichikoh is subject to jurisdiction under both the "stream of commerce" and "conspiracy" theories of specific jurisdiction. However, the Court has rejected these theories in other cases in this multi-district litigation with substantially similar facts. Thus, it declines to depart from its reasoning in those cases.

### A.    Stream of Commerce

IPPs assert that Ichikoh purposefully availed itself of the laws and protections of the United States by placing HID Ballasts and/or related products into the stream of commerce through its subsidiaries and/or business relationships.  This theory permits personal jurisdiction over a defendant that directs its products into a forum's market. See Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102 (1987).  The Sixth Circuit, however, has adopted a heightened version of this theory, noting that merely placing products into the stream of commerce, without more, is not a purposeful act directed at the forum.  Bridgeport Music, Inc. v. Still N The Water Pub, 327 F.3d 472, 479-80 (6th Cir. 2003) (adopting the stream of commerce "plus" approach articulated by J. O'Connor in Asahi).

The Court previously rejected this theory of purposeful availment based on similar facts in the Wire Harness case.  See In re Automotive Parts Antitrust Litig., 2013 WL 2456611, at *4-5 (E.D. Mich. June 6, 2013) (rejecting stream of commerce argument because although the defendant sold wire harnesses to auto manufacturers whose goods reached the United States, there was no evidence that the defendant controlled the distribution decisions of its customers).  The Court also rejected this theory in the Bearings case.  See In re Automotive Parts Antitrust Litig., 2014 WL 2999271, at *4 (E.D. Mich. July 3, 2014) (rejecting stream of commerce theory based on substantially similar facts in the Wire Harness case).  The case at hand is similar to both of the above-cited cases, as Ichikoh has virtually no contacts with the United States and has not pleaded guilty to criminal conduct in the United States.

8

Here, IPPs do not dispute that Ichikoh does not directly manufacture or sell products in the United States. IPPs also failed to rebut the declarations submitted by Ichikoh that establish Ichikoh did not control the sales decisions of its customers. This creates a disconnect between IPPs' claim that Ichikoh placed products into the stream of commerce, and the fact that IPPs do not challenge Ichikoh's declarations that it does not actually manufacture or sell any products. Regardless, IPPs also failed to establish the "plus" required under Sixth Circuit law. Merely placing products into the stream commerce with the potential that they may end up in a specific forum is insufficient.

The facts in this case are substantially similar to those in both the Wire Harness case and Bearings case cited above, and the Court declines to depart from its analysis. Thus, specific jurisdiction over Ichikoh is inappropriate via the stream of commerce theory.

## B.    Conspiracy Theory

IPPs also argue that Ichikoh purposefully availed itself the privilege of conducting business in the United States by engaging in a conspiracy to fix the price of HID Ballasts. IPPs specifically allege that Ichikoh conspired with Panasonic Corporation, Stanley Electric Co. Ltd., and Koito Manufacturing Co. Ltd., each of which has pleaded guilty in the United States to the alleged anticompetitive conduct. (Case No. 13-1702, Doc. No. 25 at ¶¶ 162, 168, 172). It is also alleged that Ichikoh took part in at least six meetings to discuss the objectives of the conspiracy. (Id. at ¶ 157).

The Sixth Circuit has not explicitly endorsed the theory that sufficient minimum contacts to exercise personal jurisdiction may be based upon the acts of a co-conspirator, performed in the forum in furtherance of the conspiracy, over a nonresident

that has no other contacts with the forum.   At most, in 1981, the Sixth Circuit acknowledged the existence of the theory, but has yet to adopt it.  See Chrysler Corp. v. Fedders Corp., 643 F.2d 1229, 1236 (6th Cir. 1981).

In any event, the allegations do little to bolster IPPs' argument that this Court should exercise jurisdiction over Ichikoh when it has no contacts with the United States and has not pleaded guilty to conduct in this forum.   Although it is true that Ichikoh's alleged co-conspirators had extensive contacts with the United States, those contacts cannot be imputed to Ichikoh for jurisdictional purposes, especially given the fact that the Sixth Circuit has not openly adopted such a theory.   Absent some minimum contacts with the forum, the Court simply cannot subject Ichikoh to the burden of defending itself in the United States, a place where it has never directly transacted any business.   IPPs do not argue that either IMI or IMIC are alter-egos of Ichikoh, and even if they had, the Court would reject the argument given IPPs' bare allegations of corporate dominion and control.  (See Case No. 13-1702, Doc. No. 89 at 1 ("Plaintiffs' allegations are based on Ichikoh's direct contacts with the United States, rather than Ichikoh's indirect contacts through its subsidiaries or affillitates.").   Consequently, Plaintiffs failed to demonstrate that Ichikoh purposefully availed itself the privilege of doing business in the United States, and this Court cannot exercise specific jurisdiction.

**C.     Ichikoh's Contacts are Insufficient for Personal Jurisdiction**

In sum, Ichikoh lacks sufficient minimum contacts for the Court to exercise personal jurisdiction.   Ichikoh has virtually no ties to the United States, and Plaintiffs' stream of commerce and conspiracy theories are unavailing.   In addition, the Court declines to permit jurisdictional discovery in this matter, as there is no reasonable basis

to expect that further discovery would reveal any evidence to support an exercise of jurisdiction. See Chrysler Corp. v. Fedders Corp., 643 F.2d 1229, 1240 (6th Cir. 1981). Therefore, the Court lacks personal jurisdiction over Ichikoh, and it will be dismissed from this action.

IV. **CONCLUSION**

Accordingly, Defendant's motion is **GRANTED**, and Ichikoh is **DISMISSED**.

**IT IS SO ORDERED.**

Date: February 26, 2015                         s/Marianne O. Battani
                                                MARIANNE O. BATTANI
                                                United States District Judge


CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on February 26, 2015.


                                                s/ Kay Doaks
                                                Case Manager