**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION                    MASTER FILE NO. 12-md-02311

_____

In Re: HID Ballasts                     HON. MARIANNE O. BATTANI

_____

THIS DOCUMENT RELATES TO:

Dealership Action                       2:13-cv-01702
End-Payor Action                        2:13-cv-01703

_____/

**OPINION AND ORDER DENYING MELCO DEFENDANTS' MOTION TO DISMISS THE END-PAYORS' AND THE AUTO DEALERS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINTS**

Before the Court is MELCO Defendants' Motion to Dismiss the Auto Dealer Plaintiffs' and the End-Payors Plaintiffs' Consolidated Amended Class Action Complaints (Case No. 13-1702, Doc. No. 71 (sealed), Doc. No. 73 (redacted); Case No. 13-1703, Doc. No. 51 (sealed) and 53 (redacted)). MELCO Defendants include Mitsubishi Electric Corporation ("MEC") and two subsidiaries, Mitsubishi Electric US Holdings, Inc. ("MEUSH"), and Mitsubishi Electric Automotive America, Inc. ("MEAA").

The Court scheduled a hearing on the motion for January 28, 2015; however, the parties waived oral argument. For the reasons that follow, the motion is **DENIED**.

## I. RELEVANT FACTS

### A. Parties

Automobile Dealership Plaintiffs ("ADPs"), and End-Payor Plaintiffs ("EPPs") (collectively referred to as "Indirect Purchaser Plaintiffs" or "IPPs") filed separate consolidated class action complaints advancing federal and state law claims based upon their allegations that Defendants "manufactured, marketed, and/or sold" HID Ballasts in the United States to numerous Original Equipment Manufacturers ("OEMs"), (Doc. No. 25 at ¶¶ 113-126; Doc. No. 9 at ¶¶ 83-95), and engaged in a conspiracy to "unlawfully fix, artificially raise, maintain and/or stabilize prices, rig bids for, and allocate the market and customers in the United States relative to HID Ballasts from July 1, 1998, through the present." (See Doc. No. 25 at ¶ 2; Doc. No. 9 at ¶ 2). HID Ballasts are electrical devices that limit the amount of electrical current flowing to a HID headlamp. (Doc. No. 25 at ¶¶ 3, 130; Doc. No. 9 at ¶¶ 3, 99). ADPs include automobile dealers that sell automobiles manufactured by various Original Equipment Manufacturers. (See Doc. No. 25 at ¶¶ 23-112). EPPs include individuals that purchased certain automobiles (See Doc. No. 9 at ¶¶ 25-82).

Defendants include DENSO Corporation and DENSO International America, Inc., Ichikoh Industries Ltd., Panasonic Corporation and Panasonic Corporation of North America, which have entered into a proposed settlement, Stanley Electric Co., Ltd. and Stanley Electric U.S. Co., Inc., Koito Manufacturing Co., Ltd. and its subsidiary, North American Lighting, Inc., and MELCO Defendants; however, the Court has dismissed Ichikoh Industries, Ltd. for lack of personal jurisdiction.

**B. Investigations and Guilty Pleas**

Indirect Purchaser Plaintiffs' complaints detail international government investigations that resulted in the guilty pleas of many businesses for their part in the price-fixing and bid-rigging of various automotive component parts. For example, DENSO Defendants agreed to pay a $78 million criminal fine, based on antitrust violations in the automotive component market, albeit not specifically for HID Ballasts. The Japan Fair Trade Commission ("JFTC") has raided the offices of several Defendants, Stanley Electric Co., Ltd., and Koito Manufacturing Co., Ltd. The JFTC fined Defendant Ichikoh Industries, Ltd. $13.1 million "for violating antitrust laws by forming a cartel to fix automotive lamps" some of which "contain HID Ballasts as a component part." (Doc. No. 25 at ¶ 159; Doc. No. 9 at ¶ 125).

Three of the named Defendants have agreed to plead guilty and pay fines based on their involvement in the HID Ballasts price-fixing conspiracy in the United States, including Panasonic Corporation, Stanley Electric Co., and Koito Manufacturing Co., Ltd. Specifically, in July 2013, Panasonic Corporation agreed to plead guilty and pay a $45.8 million criminal fine. (Doc. No. 25 at ¶ 6; Doc. No. 9 at ¶ 6). In November 2013, the Department of Justice ("DOJ") announced that Stanley Electric Co., Ltd. agreed to plead guilty and pay a $1.44 million criminal fine for its role in the conspiracy. (Doc. No. 25 at ¶ 9; Doc. No. 9 at ¶ 9). In January 2014, the DOJ announced that Koito Manufacturing Co., Ltd. agreed to plead guilty and pay a $56.6 million criminal fine for its role in the conspiracy. (Doc. No. 25 at ¶ 10; Doc. No. 9 at ¶ 9).

Although MEC did not plead guilty to the same conspiracy, in September 2013, it agreed to plead guilty for its role in the conspiracy to rig bids and fix prices of

alternators, starters, and ignition coils, and to pay a $190 million criminal fine. (Doc. No. 25 at ¶ 207; Doc. No. 9 at ¶ 131). In addition, MEC and its subsidiaries have pledged to cooperate in the DOJ's automotive parts investigation. Pursuant to the guilty plea, in exchange for the cooperation, the DOJ agreed to refrain from criminally prosecuting MEC and its subsidiaries for price-fixing certain automotive parts, including HID Ballasts. (Doc. No. 25 at ¶¶ 8, 167; Doc. No. 9 at ¶¶ 8, 131). MEC also admitted to destroying and/or altering documents in an effort to cover up its unlawful activity after a co-conspirator's office was searched, conduct "approved by their senior managers in Japan." (Doc. No. 25 at ¶ 245; Doc. No. 9 at ¶ 206). In addition to the facts alleged in the complaints, the Court has taken judicial notice of the September 18, 2014, Grand Jury indictment filed in United States of America v. Ueda, et al, Case No. 14-20560, and the September 18, 2013, DOJ Release entitled "Seven Mitsubishi Electric Corp. and Hitachi Automotive Supply Ltd. Executives Indicted for Role in Conspiracy to Fix Prices." (See Doc. No. 106 in 13-1702; Doc. No. 85 in 13-1703).

According to IPPs, Defendants "employ[ed] measures to keep their conduct secret, including, but not limited to, using code names and meeting at remote locations." (Doc. No. 25 at ¶ 242; Doc. No. 9 at ¶ 204); See Informations filed against Defendants Panasonic Corporation, Stanley Electric Co., Ltd., and Koito Manufacturing Co., Ltd., Mitsubishi Electric Corporation. Defendants are alleged to have met on six occasions to discuss the pricing of HID Ballasts.

4

### C. Market Conditions

IPPs allege the market for HID Ballasts has high barriers to entry and allege what those barriers are. (Doc. No. 25 at ¶¶ 144-45, 147, 148-50; Doc. No. 9 at ¶¶ 111-12, 114, 155-17). In addition, IPPs allege that despite a decrease in the demand for automobiles in the United States, Defendants increased the prices for HID Ballasts. (Doc. No. 25 at ¶¶ 138-42; Doc. No. 9 at ¶¶ 105-109). According to IPPs, in a competitive markets, falling or steady demand should not have yielded higher prices for HID Ballasts. (Id.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows district courts to dismiss a complaint which fails "to state a claim upon which relief can be granted." To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff must show that his complaint alleges facts which, if proven, would entitle him to relief. First Am. Title Co. v. DeVaugh, 480 F.3d 438, 443 (6th Cir. 2007). "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." Weiner v. Klais & Co., 108 F.3d 86, 88 (6th Cir. 1997). When reviewing a motion to dismiss, the Court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although the federal procedural rules do not require that the facts alleged in the complaint be detailed, "'a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

5

<015cv01702MOB Doc # 117 Filed 04/22/15 Pg 6 of 12 Pg ID 2402>

requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.' " Twombly, 550 U.S. at 555; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In Twombly, the Supreme Court considered the pleading requirements needed to withstand a motion to dismiss relative to a section 1 Sherman Act claim. It held that the complaint must contain enough factual matter to "plausibly suggest" an agreement:

> Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.

550 U.S. at 556.

In addition, the Court may consider those documents for which it has taken judicial notice. See Rondigo, L.L.C. v. Twp. of Richmond, 641 F.3d 673, 680-81 (6th Cir. 2011) (court may consider public records if referred to in the complaint and are central to its claims without converting a motion to dismiss into a motion for summary judgment) (citing Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008)).

### III. ANALYSIS

In their motion, MELCO Defendants advance arguments raised in the Defendants' collective motions to dismiss the IPPs' complaints, including the timeliness of the claims, the viability of the requests for injunctive relief, standing, and the

sufficiency of the allegations.  Because the Court addresses those arguments in the collective motion, it limits its discussion to the added grounds for dismissal put forth by MELCO Defendants in their motion:  whether Indirect Purchaser Plaintiffs have alleged a plausible antitrust conspiracy when no MELCO Defendant has pleaded guilty to collusion on HID Ballasts; and, whether IPPs have advanced a claim against the MELCO subsidiaries.

### A.  Participation in the Conspiracy

According to MELCO Defendants, the claims against them are based on threadbare allegations rendering the complaints deficient.  The Court addresses the sufficiency of the allegations below.

#### 1.  Participation in the Market

MELCO  Defendants contend that dismissal of MEC is appropriate because, even thought they participate in the market, mere involvement in an industry alleged to be "rife" with antitrust violations does not state a claim.  See Hinds Cnty v. Wachovia Bank N.A., 620 F. Supp. 2d 499, 515 (S.D.N.Y. 2009).  The Court agrees that a conclusory allegation about the market, standing alone, is not enough.  However, the conspiracy alleged here involves allegations beyond those found deficient in Hinds Cnty.  Notably, MELCO Defendants' alleged co-conspirators have pleaded guilty to antitrust conduct in the HID Ballast market.  Because there is concrete evidence of the existence of the conspiracy, as well as other allegations giving rise to an inference the MELCO Defendants participated, the Court finds this argument unpersuasive.

## 2. Guilty Plea

MELCO Defendants next argue that the fact that MEC entered into a plea agreement relative to different component parts does not establish liability. Doe v. Aramark Educ. Res., inc., 206 F.R.D. 458, 463 (M.D. Tenn. 2002). The Court agrees, but MEC's plea agreement likewise does not dictate the parameters of the antitrust claims alleged. See In re Packaged Ice Antitrust Litigation, 723 F. Supp. 2d 987, 1011-12 (E.D. Mich. 2010). The fact that MEC may not have pleaded guilty to price-fixing HID Ballasts does not immunize it from conduct that falls outside the plea itself. See In re Packaged Ice Antitrust Litigation, 723 F. Supp. 2d 987, 1011-12 (E.D. Mich. 2010) (observing that "civil litigation" cannot be "circumscribed or defined by the boundaries of the criminal investigations") (citing In re Vitamins Litig., No. 99-misc-197, 2000 WL 1475705 at *11 (D. D.C. May 9, 2000) (rejecting the "notion that the guilty pleas and cooperation agreements and the class settlement foreclose a broader conspiracy. Guilty pleas are negotiated instruments which take into account not only the culpability of the accused but the Justice Department's resources and other cases requiring the government's attention.").

Here, there are several guilty pleas specific to the HID Ballast market and numerous guilty pleas by market participants of other component parts. In addition, there is an overlap in the years of the HID conspiracy, and the conspiracies for which MEC pleaded guilty. There is also an overlap in the OEMs targeted by MEC and its alleged co-conspirators. Finally, the Court finds a strong inference of involvement arises from MEC's agreement to cooperate in the HID Ballasts investigation. MELCO Defendants' desire to confine any inference drawn from the guilty plea to the specific

behavior admitted by MEC ignores the wide-ranging, ongoing investigation by governmental authorities into the conspiracy and case law upholding the use of admitted conduct to support the existence of the conspiracy beyond those entities that have pleaded guilty.  The factual allegations in the complaint creates "a reasonable expectation that discovery will reveal evidence of illegal agreement" beyond those parties that have pleaded guilty and beyond the extent admitted by some Defendants. Twombly, 550 U.S. at 556. Accord In re Polyurethane Foam Antitrust Litig., 799 F. Supp. 2d 777, 782 (N.D. Ohio 2011) (relying on "specific admissions" made during a governmental investigation that supported the "existence of a conspiratorial agreement" as opposed to government investigations coupled with parallel conduct).

### 3. Economic Factors Conducive to Collusion

According to IPPs' complaints, prices for vehicular lighting equipment rose even as demand for vehicles fell in 2007-2009.  (Doc. No. 25 at ¶¶ 138-142, Doc. No. 9 at ¶¶ 105-109`).  In addition, IPPs allege there are high barriers to entry, and demand is inelastic.  (Doc. No. 25 at ¶¶144-150. Doc. No. 9 at 111-117).  The allegations create an inference that the market was conducive to collusion.  The inference is not undermined by MELCO Defendants' assertion that only a fraction of cars have HID Ballasts.

### 4. Vagueness

MELCO Defendants argue that the factual allegations tying them to the HID Ballast market are boilerplate.  Nevertheless, IPPs allege MELCO Defendants had opportunities to conspire and that their alleged co-conspirators have provided examples of meetings regarding particular customers.

In sum, the complaints, viewed in their entirety, meet IPPs' pleading obligations

relative to MEC. Therefore, the Court directs its attention to the arguments advanced relative to the subsidiaries.

### B. Participation of Subsidiaries

MELCO Defendants also argue that IPPs' complaints fail to meet pleading standards because there are no allegations regarding the involvement of MEUSH and MEAA in the alleged conspiracy. The Sixth Circuit typically expects the plaintiffs alleging a price-fixing conspiracy to "specify how [each] defendant [was] involved in the alleged conspiracy." Carrier Corp. v. Outokumpu Oyj, 673 F.3d 430, 445 (6th Cir. 2012) (quoting In re Travel Agent Comm'n Antitrust Litig., 583 F.3d 896, 905 (6th Cir. 2009)). Nevertheless, the court in Carrier Corp. found that it is not necessary for the plaintiffs to "delineate in the complaint the role each subsidiary played in the conspiracy," where the plaintiffs alleged that the parent sold the price-fixed product to the subsidiary in the United States, that the parent exercised control over the subsidiary, and that the parent held out the two companies as a single enterprise with overlapping executives. Id. at 445-46.

The Court is satisfied that the complaints comply with Carrier. IPPs allege that the subsidiaries sold HID Ballasts in the United States during the Class Period. Notably, once IPPs pleaded participation in the conspiracy, they did not need to differentiate between participating defendants relative to the overt acts. They have met their burden by alleging the subsidiaries joined the conspiracy and played a role in it, rather than relying on an allegation that the subsidiaries are liable because MEC joined the conspiracy.

This result is consistent with the Court's holding in other component part cases.

For example, in In re Automotive Parts Antitrust Litig., No. 2:12-cv-00102, 2013 WL 2456613 (E.D. Mich. June 6, 2013), the Court found that the plaintiffs' allegations regarding the parent company's control over the subsidiaries along with the parent company's guilty plea were sufficient to withstand a motion to dismiss. Id. at *3. Although the plaintiffs did not detail the specific conduct of the subsidiaries, the allegations as a whole created an inference that the subsidiaries participated in the conspiracy. Id. at *4. The same inference flows from the allegations in this case even though neither subsidiary has pleaded guilty given the other allegations supporting the existence of a conspiracy. The Court has taken judicial notice of the September 18, 2014, three-count indictment against current and former MEC employees for conspiring to fix prices of other automotive parts. One of the employees was a former Vice President of Sales for MEC and later the President of MEAA.

According to the Indictment, the FBI raided MEAA's offices in July 2011. Finally IPPs allege that senior managers in Japan approved the destruction of documents in the United States and Japan. (Doc. No. 25 at ¶ 245; Doc. No. 9 at ¶ 206). Consequently, viewed in their entirety, the allegations support an inference that the subsidiaries participated in a price-fixing conspiracy aimed at the United States under the direction of MEC.

## IV. CONCLUSION

In sum, the Court finds that the allegations contained within IPPs' complaints are substantially similar to those alleged in other cases within this multidistrict litigation,

which the Court found sufficient to defeat a Rule 12(b)(6) motion.  See e.g. In re Automotive Parts Antitrust Litig. [Bearings], 2014 WL 4209588, at *3-4 (E.D. Mich. Aug. 26, 2014); In re Automotive Parts Antitrust Litig. [Wire Harness], 2013 WL 2456013, at *2-3 (E.D. Mich. June 6, 2013).  The Court finds no reason to depart from its prior rulings.  Accordingly, MELCO Defendants' motion is **DENIED**.

    **IT IS SO ORDERED.**

Date:   April 22, 2015                         s/Marianne O. Battani
                                                MARIANNE O. BATTANI
                                                United States District Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on April 22, 2015.

                                                        s/ Kay Doaks
                                                        Case Manager